1  Richard D. McCune (SBN 132124)
   rdm@mccunewright.com
2  David C. Wright (SBN 177468)
   dcw@mccunewright.com
3  Steven A. Haskins (SBN 238865)
   sah@mccunewright.com
4  Mark I. Richards (SBN 321252)
   mir@mccunewright.com
5  **MCCUNE WRIGHT AREVALO, LLP**
   3281 Guasti Road, Suite 100
6  Ontario, California 91761
   Telephone: (909) 557-1250
7  Facsimile: (909) 557-1275

8  *Counsel for Plaintiffs and the Putative Class*

9

10

11              IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                          OAKLAND DIVISION

14

15

16  ZACHERY WILLIAMS and MICHAEL MA,        Case No.:  4:20-cv-08208-HSG
    on behalf of themselves and all others similarly
17  situated,
                                            **PLAINTIFF MICHAEL MA'S OPPOSITION**
18              Plaintiffs,                 **TO DEFENDANT TESLA, INC.'S**
                                            **AMENDED MOTION TO DISMISS**
19          v.

20  TESLA, INC. and DOES 1 through 10,      Hearing Date:    June 3, 2021
    inclusive,                             Hearing Time:    2:00 p.m.
21                                          Courtroom:       2
              Defendants.                   Judge:           Hon. Haywood S. Gilliam Jr.
22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

*Page*

I       INTRODUCTION ................................................................................................ 1

II      FACTUAL BACKGROUND ............................................................................... 2

III     LEGAL STANDARD ......................................................................................... 5

IV      ARGUMENT ...................................................................................................... 5

    A.      Ma Sufficiently Pleads the Existence of the Suspension Defect ......................... 5

    B.      The Durational Limitation of the NVLW Is Unconscionable and Unenforceable ............ 9

    C.      The FAC Alleges Tesla's Breach of Implied Warranty ...................................... 10

        1.      The Court Should Refuse to Consider "Exhibit A" of Tesla's Motion ............... 10

        2.      Tesla's Limitation of the Implied Warranty Is Inconspicuous ........................... 11

        3.      Tesla's Fraudulent Concealment Tolls the Limitation Period for Ma's Breach of Implied Warranty Claim ................................................................................... 13

    D.      Ma Alleges Facts Establishing Tesla's Breach of the Magnusson-Moss Warranty Act .. 13

    E.      Ma Properly Pleads Tesla's Fraudulent Omissions Regarding the Suspension Defect.... 14

    F.      The Economic Loss Rule Does Not Bar Ma's Fraudulent Concealment Claim ............... 16

    G.      Ma Is Entitled to Injunctive Relief ..................................................................... 22

V       CONCLUSION ................................................................................................... 23

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

1

# TABLE OF AUTHORITIES

2

*Page(s)*

3

Cases

4

*Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*,
  547 F.3d 48 (1st Cir. 2008) .................................................................................................... 22

5

6

*Andrew Smith Co. v. Paul's Pak, Inc.*,
  No. C-08-04802 RMW, 2010 WL 2465044 (N.D. Cal. June 14, 2010) ...................................... 16

7

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ............................................................................................................ 20

8

9

*Arpin v. Santa Clara Valley Transp. Agency*,
  261 F.3d 912 (9th Cir. 2001) .................................................................................................... 5

10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 5

11

12

*Ashgari v. Volkswagen Grp. of Am.*, Inc.,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................................................................. 6, 7

13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 5

14

15

*Boschma v. Home Loan Ctr., Inc.*,
  198 Cal. App. 4th 230 (2011) ................................................................................................ 20

16

*Bunn v. Ford Motor Co.*,
  No. 5:19-CV-03590-EJD, 2020 WL 991529 (N.D. Cal. Mar. 2, 2020) .................................... 13

17

18

*Burch v. CertainTeed Corp.*,
  34 Cal. App. 5th 341 (2019) .................................................................................................. 19

19

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ...................................................................................................... 5

20

21

*Centurion Properties III, LLC v. Chicago Title Ins. Co.*,
  793 F.3d 1087 (9th Cir. 2015) ............................................................................................... 22

22

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ............................................................................................... 10

23

24

*County of Santa Clara v. Atlantic Richfield Co.*,
  137 Cal. App. 4th 292 (2006) ........................................................................................... 20, 21

25

*DeCoteau v. FCA US LLC*,
  No. 2:15-CV-00020-MCE (EFB), 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015) ............. 5, 6, 7, 8

26

27

*Diamond Multimedia Sys., Inc. v. Superior Court*,
  19 Cal. 4th 1036 (1999) ......................................................................................................... 20

28

ii

**TABLE OF AUTHORITIES (cont.)**

*Page(s)*

*Dorman v. Int'l Harvester Co.*,
46 Cal.App.3d 11 (Cal. Ct. App. 1975) ................................................. 11

*Eastwood v. Horse Harbor Found., Inc.*,
170 Wash. 2d 380 (2010) ......................................................................... 18

*Erlich v. Menezes*,
21 Cal. 4th 543 (1999) ........................................ 17, 18, 19, 20, 21

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................ 9, 14, 15

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................. 10

*Freedom Transport, Inc. v. Travelers Cos., Inc.*,
No. EDCV 16-213 JGB (SPx), 2016 WL 7496731 (C.D. Cal. Mar. 24, 2016).......................... 19

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ................................. 10, 11

*Grynberg v. Citation Oil & Gas Corp.*,
573 N.W.2d 493 (S.D. 1997) ................................................................. 20

*Gutierrez v. Carmax Auto Superstores Calif.*,
19 Cal. App. 5th 1234 (2018) ................................................................. 22

*Hardt v. Chrysler Grp. LLC*,
No. SACV 14-013575 SJO (VBKx), 2015 WL 12683965 (C.D. Cal. June 15, 2015)................. 6

*Hien Bui v. Mercedes-Benz USA, LLC*,
No. 20-CV-1530-CAB-WAG, 2021 WL 242936 (S.D. Cal. Jan. 25, 2021) ...................... 18

*Hoffman v. 162 North Wolfe LLC*,
228 Cal. App. 4th 1178 (2014) ............................................................... 14

*In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*,
483 F. Supp. 3d 838 (C.D. Cal. 2020) .................................... 17, 18, 19, 20

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018) .................................... 11, 12

*In re NJOY, Inc. Consumer Class Action Litig.*,
No. CV 14-00428 MMM (RZx), 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014)...................... 16

*Jimenez v. Superior Court*,
29 Cal. 4th 473 (2002) ............................................................................ 18

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

1

**TABLE OF AUTHORITIES (cont.)**

2
*Page(s)*

3
*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ................................................................................ 10

4

*Luong v. Subaru of Am. Inc.*,
5
    No. 17-cv-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018) ........................ 16

6
*Marolda v. Symantec Corp.*,
    572 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................... 15

7
*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*,
8
    658 F.3d 1038 (9th Cir. 2011) ............................................................................... 13

9
*McWhinney Centerra Lifestyle Ctr. LLC v. Poag & McEwen Lifestyle Centers—Centerra LLC*,
    --- P.3d ---, 2021 WL 126572 (Col. Ct. App. Jan. 14, 2021) .................................. 21

10
*Mexia v. Rinker Boat Co.*,
11
    174 Cal. App. 4th 1297 (2009) .............................................................................. 13

12
*Mosqueda v. Am. Honda Motor Co.*,
    443 F. Supp. 3d 1115 (C.D. Cal. 2020) ................................................................... 6
13

14
*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013) .............................................................. 15, 16

15
*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ................................................................................. 4
16

17
*NuCal Foods, Inc. v. Quality Egg LLC*,
    918 F. Supp. 2d 1023 (E.D. Cal. 2013) ................................................................. 17

18
*Obde v. Schlemeyer*,
    56 Wash. 2d 449 (1960) ................................................................................. 18, 21
19

20
*Obertman v. Electrolux Home Care Prods., Inc.*,
    482 F. Supp. 3d 1017 (E.D. Cal. 2020) ............................................................. 15, 16

21
*Peel v. BrooksAmerica Mortg. Corp.*,
    788 F. Supp. 2d 1149 (C.D. Cal. 2011) ................................................................. 15
22

23
*Philips v. Ford Motor Co.*,
    726 F. App'x 608 (9th Cir. Jun 8, 2018) ................................................................. 22

24
*Queen's Medical Ctr. v. Kaiser Found. Health Plan, Inc.*,
    948 F. Supp. 2d 1131 (D. Hawai'i 2013) ................................................................. 8
25

26
*Robinson Helicopter v. Dana Corp.*,
    34 Cal. 4th 979 (2004) .............................................................. 17, 18, 19, 20, 21

27

28

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

1

**TABLE OF AUTHORITIES (cont.)**

2

*Page(s)*

3

*Sciacca v. Apple, Inc.*,
  362 F. Supp. 3d 787 (N.D. Cal. 2019) ................................................................ 7

4

*Seely v. White Motor Co.*,
  63 Cal. 2d 9 (1965) ........................................................................... 18, 22

5

6

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*,
  890 F.2d 108 (9th Cir. 1989) ............................................................... 12

7

*Sloan v. General Motors LLC*,
  No. 16-cv-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020).............. 18

8

9

*Smith v. Ford Motor Co.*, No. 19-cv-05170-CRB,
  2020 WL 609864 (N.D. Cal. Feb. 4, 2020) .......................................... 13

10

*Sonner v. Premium Nutrition Corp.*,
  971 F.3d 834, 839-44 (9th Cir. 2020) ..................................................... 22

11

12

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .................................................................. 5

13

*Stewart v. Electrolux Home Prods., Inc.*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018)..................................................... 18

14

15

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .................................................................. 10

16

*Tanner v. Ford Motor Co.*,
  424 F. Supp. 3d 666 (N.D. Cal. 2019) .................................................... 13

17

18

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................. 15

19

*Toner for Toner v. Lederle Labs., Div. of Am. Cyanamid Co.*,
  779 F.2d 1429 (9th Cir. 1986) ................................................................ 22

20

21

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................... 5

22

*Vess v. Ciba-Geigy Corp., USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................ 15

23

24

*Washington v. Baenziger*,
  673 F. Supp. 1478 (N.D. Cal. 1987)........................................................ 15

25

*Williams v. Cal. Physicians' Serv.*,
  72 Cal. App. 4th 722 (1999) ..................................................................... 9

26

27

28

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

1

**TABLE OF AUTHORITIES (cont.)**

2

*Page(s)*

3

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ................................................................................. 7

4

*Yagman v. General Motors Co.*,
    No. CV-14-4696-MWF (AGRx), 2014 WL 4177295 (C.D. Cal. Aug. 22, 2014) ........................ 7

5

6

*Zuehlsdorf v. FCA US LLC*,
    No. EDCV 18-018770-JGB, 2019 WL 2098352 (C.D. Cal. Apr. 30, 2019) ................................ 6

7

Statutes

8

15 U.S.C. §§ 1231-1233 ............................................................................................. 16

9

15 U.S.C. § 2310(a)(1) ............................................................................................... 13

10

Cal. Comm. Code § 1201(10) ..................................................................................... 11

11

Cal. Comm. Code § 2316 ............................................................................................ 11

12

Rules

13

Fed. R. Civ. Proc. 8(a)(2) ............................................................................................. 5

14

Fed. R. Civ. Proc. 9 ............................................................................................ 14, 15, 16

15

Fed. R. Civ. Proc. 12 .......................................................................................... 1, 4, 5, 9

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

# I      INTRODUCTION

Tesla's motion to dismiss carries with it the distinctive echoes of its public relations response to the emergence of the alleged Suspension Defect in the first place—deny, deny, deny. But the foundation of a motion to dismiss is not the defendant's denials; Federal Rule of Civil Procedure 12 would be rendered virtually useless by such a standard. Instead, the Court must consider whether the plaintiff has pled claims, if proven at trial, for which he can recover his alleged damages. In every case, Plaintiff Michael Ma has satisfied the required pleading standard.

Tesla's lead argument is directly in this vein, claiming that Ma failed to allege a defect in the first place. But the First Amended Complaint's ("FAC") allegations of a defect hardly could be more straightforward; not only does the FAC allege the Suspension Defect, it demonstrates that the same defect has already been discovered as evidenced by the alleged recall in China. The FAC also alleges various Tesla internal communications supporting the existence of the defect. These allegations are more than enough to permit Tesla to take notice of Ma's allegations and mount its defense.

Tesla also argues that Ma's contract and warranty claims should be dismissed on various technical grounds, but none of these arguments are compelling either. To the contrary, they merely demonstrate Tesla's lack of any substantive defense to the allegations.

With regard to Ma's fraudulent concealment claims, Tesla argues that Ma did not plead fraud with particularity and that the economic loss rule should bar those claims because they arise from fraudulent omissions, not affirmative misrepresentations. Tesla is wrong on both counts. First, Ma pleads Tesla's omissions with the required particularity, given that certain elements of omission cannot be pled with the same kind of specificity as misrepresentation. And second, the federal district court decisions Tesla cites for its premise that Ma cannot recover under California's economic loss rule have, with respect, come to the wrong legal conclusion. At least in California, the economic loss rule does not bar relief for intentionally fraudulent conduct of any sort.

Finally, Tesla claims that Ma cannot seek injunctive relief because he only has monetary damages, but this is not the case. Tesla overlooks that Ma and other class members own a defective and dangerous vehicle subject to the defect. When a vehicle suspension failure results from the defect, the failure may affect the driver's control of the vehicle and increase the risk of accidents, thereby,

1

1   constituting a safety hazard. (FAC, Dkt. No. 7, ¶ 21.) Without an injunction, these dangerous vehicles

2   continue to put Americans at risk—not only Tesla drivers and passengers, but the general public as well.

3   Because the FAC properly alleges all of Ma's claims, Tesla's motion to dismiss should be denied in its

4   entirety.

5                                    **II        FACTUAL BACKGROUND**

6          Tesla designs, manufactures, and sells Tesla-branded automobiles in the United States. (FAC,

7   ¶ 1.) Two of these vehicles are the Tesla Model S and the Tesla Model X. (*Id.*)

8          An automobile suspension system is installed between a vehicle's frame and the road, with the

9   primary purpose of maximizing the vehicle's driving performance. The suspension system absorbs

10  bumps in the road and provide a safe, smooth riding experience for the vehicle's driver and passengers.

11  But Model S and Model X vehicles manufactured from September 17, 2013, to October 15, 2018, suffer

12  from a defect in the front and rear suspension control arm assembly, causing the components of the

13  suspension system to prematurely loosen, wear, crack, or break (the "Suspension Defect"). (*Id.*, ¶ 2.)

14  This defect manifests in one or more of the front upper and lower control arms, front suspension aft-link,

15  front suspension fore-link, rear suspension upper link assembly, and rear suspension lower control arm

16  assembly. (*Id.*, ¶¶ 18-19.)

17         Signs of the Suspension Defect have been creeping into the public sphere for some time now. On

18  October 22, 2020, China's State Administration for Market Regulation ("SAMR") announced that when

19  some Tesla vehicles were subjected to a "large external impact," the "ball studs of the rear connecting

20  rod of the front suspension will have initial cracks." (*Id.*, ¶¶ 20-22.) These cracks "may extend and cause

21  the ball studs to break when the vehicle continues to be used." And in some of those cases, the SAMR

22  determined that the "ball-end cone seat may come out of the steering knuckle, affecting the control of

23  the vehicle, increasing the risk of accidents, and posing safety risks." (*Id.*, ¶ 21.) SAMR also found that a

24  "large external impact" could cause "deformation of the upper connecting rod of the rear suspension."

25  (*Id.*) Further use weakens the component, which can then break and affect control of the vehicle. (*Id.*)

26  As a result of these findings, SAMR demanded a recall of over 20,000 vehicles Tesla previously sold in

27  China.

28

1    While that was going on in China, in the United States Tesla publicized the Suspension Defect as
2    a matter of "driver abuse" uniquely caused by Chinese drivers. (*Id.*, ¶ 23.) Tesla's corporate counsel
3    stated that "driver usage and expectation for damageability is uniquely severe in the China market. If the
4    customer inputs an abuse load (e.g., curb impact, severe pothole strike, etc.), then the parts may be
5    damaged, leading either to immediate failure or delayed failure from the compounding effects of the
6    initial abuse and subsequent load input." (*Id.*) Tesla's service center technicians have followed suit,
7    following Tesla's directions to treat snapped suspension arms as indicative of driver abuse instead of as
8    a defect. (*Id.*)

9    Tesla has known about the Suspension Defect for many years but delayed discovery of its
10   existence. For example, in June 2016 Tesla published an internet post claiming that a customer's
11   complaint regarding suspension failure was "highly unusual" and must have resulted from "abnormal
12   rust." (*Id.*, ¶ 25.) But Tesla knew more than it was telling the public. As early as December 10, 2013,
13   Tesla had issued an internal Technical Service Bulletin[1] ("TSB") SB-13-31-003) explaining that the
14   front and lower rear control arm assemblies on certain 2012 and 2013 Model S vehicles were subject to
15   cracking and needed replacement with updated parts. (*Id.*, ¶ 36.) In that TSB, Tesla explained that the
16   suspension's "front lower control arm ball joints" could develop greater "free play" than expected,
17   leading to "accelerated wear" and eventually the "premature replacement of components." (*Id.*) Tesla
18   issued revisions of this TSB on March 16, 2015, and again on March 24, 2015. (FAC, Ex. 4.)

19   In 2017, Tesla issued a second TSB explaining that the Model S and Model X vehicles may have
20   been manufactured with "front suspension fore links that may not meet Tesla's strength specifications."
21   (*Id.*, ¶ 37.) Even so, Tesla downplayed this finding, explaining that a failure would permit the "driver
22   [to] maintain control of the vehicle but the tire may contact the wheel arch liner." (*Id.*) Then in January
23   2019, Tesla issued another TSB for the 2013 and 2014 Model S, explaining that the "lower rear control
24   arm might crack, causing excessive negative camber of the rear suspension." (*Id.*, ¶ 38.) All of these
25   TSBs target various parts of the suspension system.

26

27

28   [1] TSBs are an industry-wide method for documenting recommended procedures for repairing vehicles, usually when the manufacturer has conducted an investigation and determined that there have been several occurrences of the same problem.

3

Tesla is also aware of more than six dozen complaints made to the National Highway Traffic Safety Administration's complaint database about the Class Vehicles' suspensions. (*Id.*, ¶¶ 30-33.) Most of these complaints describe circumstances similar to those Ma alleges in the FAC, including clunking, rattling, cracking, and breaking of various parts of the suspension system. (*Id.*)

Ma alleges that Tesla issued these TSBs in a piecemeal fashion to avoid an all-out recall of the Class Vehicles. (*Id.*, ¶ 39.) The financial incentives for Tesla to do so are quite high, because replacing an entire suspension would be prohibitively expensive. (*Id.*) Instead, Tesla concealed the Suspension Defect from buyers to push the costs of repair past the warranty period it offers to vehicle buyers. (*Id.*)

In October 2019, Ma began to hear a rattling sound emitting from the front of his 2014 Model S vehicle, particularly when he was driving it at moderate (or above) speeds on rougher roads. (*Id.*, ¶ 48.) Shortly thereafter, Plaintiff presented the vehicle to a Tesla service center in Palo Alto, California for a diagnosis. (*Id.*, ¶ 49.) At the time, the vehicle had 58,057 miles on it. A Tesla technician ran tests confirming the rattle and determined after a visual inspection that the "lower aft fore links were shown to not be performing as expected." (*Id.*, ¶ 50.) To remedy the problem, Tesla removed the vehicle's failed lower aft links and replaced them with a new front suspension aft link assembly, bearing the part number 1027351-00-C. (*Id.*) Ma paid $1,320 for this work. (*Id.*)

The Tesla service technician also removed and replaced both front fore links (part number 6007998-00-C) and strut bolts to "prevent premature failure of the links." (*Id.*, ¶ 51.) Tesla performed this service pursuant to TSB-13-31-003, which is discussed above and addressed premature wear in the front suspension aft link assembly, though only in 2012-2013 model year Model S vehicles. (*Id.*, ¶ 36.) TSB-13-31-003 does not mention 2014 model year vehicles. Tesla did not charge Ma for these repairs, covering them instead as a "goodwill" service. (*Id.*, ¶ 51.)

As a result of these actions, Ma has brought claims against Tesla for violations of the federal Magnuson-Moss Warranty Act, the California Consumer Legal Remedies Act, the California Unfair Competition Act, the California False Advertising Law, fraud, and breach of express and implied warranties.

4

1

### III      LEGAL STANDARD

2     A Rule 12(b)(6) motion to dismiss tests a complaint's legal sufficiency. *Navarro v. Block*, 250

3 F.3d 729, 732 (9th Cir. 2001). While plaintiffs must plead "enough facts to state a claim to relief that is

4 plausible on its face," Fed. R. Civ. Proc. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007),

5 the necessary pleading need only consist of "a short and plain statement of the claim showing that the

6 pleader is entitled to relief[.]" Fed. R. Civ. Proc. 8(a)(2). This standard ensures that a complaint contains

7 "allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend

8 itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

9     A Rule 12(b)(6) motion may be granted only if the complaint completely fails to state a claim for

10 which relief may be granted. Fed. R. Civ. Proc. 12(b)(6). The complaint need only contain sufficient

11 factual allegations necessary for stating a plausible legal claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663

12 (2009). A claim is facially plausible if a plaintiff alleges enough facts to draw a reasonable inference that

13 the defendant can be held liable for the alleged misconduct. *Id.*

14     When reviewing a complaint to determine its legal sufficiency, a court must assume the truth of

15 all factual allegations and must construe the allegations in the light most favorable to the nonmoving

16 party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The record for a Rule

17 12(b)(6) motion is limited to a complaint's four corners, absent any judicially noticeable facts. *See Arpin*

18 *v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). A court generally may not

19 look beyond the complaint for additional facts, nor should a court resolve disputed issues of fact. *See*

20 *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

21

### IV      ARGUMENT

22 **A.      Ma Sufficiently Pleads the Existence of the Suspension Defect**

23     Tesla's lead argument is that Ma has failed to allege a "defect." (Amended Motion to Dismiss,

24 Dkt. No. 36 at 3-5.) It argues that Ma identifies only the "components of the suspension system and

25 alleged symptoms" of a potential defect but claims that plaintiffs "must plead specific facts alleging

26 what caused the components to experience the alleged systems." (*Id.* at 3.) It then cherry-picks a few

27 cases where courts have ruled that defect allegations were insufficient. (*Id.* at 3-4 (citing cases).) But in

28 doing so, Tesla implies a pleading standard far higher than the law requires.

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

1     There is little direction regarding the level of detail necessary for a plaintiff to allege a product

2  defect. The Ninth Circuit has not addressed the level of detail necessary to plead an automobile defect.

3  *See DeCoteau v. FCA US LLC*, No. 2:15-CV-00020-MCE (EFB), 2015 WL 6951296, at *3 (E.D. Cal.

4  Nov. 10, 2015) ("The Ninth Circuit has not squarely addressed the level of detail necessary under these

5  circumstances."). Its district courts lack consensus as well. *Id.*; *see also Zuehlsdorf v. FCA US LLC*, No.

6  EDCV 18-018770-JGB, 2019 WL 2098352 at *6 (C.D. Cal. Apr. 30, 2019). Given the lack of uniform

7  guidelines addressing these circumstances, the Court should revert to the general rule governing

8  pleadings: "A complaint must 'contain sufficient allegations of underlying facts to give fair notice and to

9  enable the opposing party to defend itself effectively,' and those allegations 'must plausibly suggest an

10  entitlement to relief.'" *Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115, 1126 (C.D. Cal.

11  2020) (citing *Zuehlsdorf*, 2019 WL 2098352, at *6).

12     This is a far lower bar than Tesla suggests. A plaintiff need merely plead sufficient facts to give

13  Tesla "fair notice," permit it to "defend itself effectively," and "plausibly suggest an entitlement to

14  relief." The FAC satisfies all these requirements. First, Ma provides "fair notice" by alleging that Tesla

15  has installed a defective suspension system in its vehicles. (FAC, ¶¶ 2, 6, 16-21, 32-33, 35-39.) Given

16  that pleading, Tesla certainly cannot argue that it does not have enough information to "defend itself

17  effectively"—it will always be more aware of the capabilities and flaws of its vehicles than Ma will ever

18  be, at least without having the opportunity to conduct discovery. So what is left is to demonstrate that

19  Ma has plausibly suggested an entitlement to relief.

20     In *Mosqueda*, for instance, Honda argued that the plaintiffs failed to plead a claim because "they

21  allege[d] no facts as to what component(s) they think failed to work properly, let alone explain

22  why . . . ." 443 F. Supp. 3d at 1126. But the court rejected Honda's argument, noting the plaintiff's

23  allegations sufficiently had identified the particular part of the vehicle that was affected and described

24  the problems caused by the alleged defect. *Id.* at 1126-27. In support of its findings, the *Mosqueda* court

25  cited several other district courts that had reached similar conclusions based on similar pleadings. *See*

26  *Zuehlsdorf*, 2019 WL 2098352, at *6; *Hardt v. Chrysler Grp. LLC*, No. SACV 14-013575 SJO (VBKx),

27  2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015); *Ashgari v. Volkswagen Grp. of Am.*, Inc., 42 F.

28  Supp. 3d 1306, 1326 n.72 (C.D. Cal. 2013).

*Hardt* and *Ashgari* are particularly instructive here. In *Hardt*, the plaintiffs alleged a defect in the manual transmission, describing the alleged defect's "symptoms" and the vehicle's subsequent failure to accelerate or decelerate as a result. 2015 WL 12683965, at *5. The district court found these allegations sufficient to plead the defect's existence. *Id.* Likewise, in *Ashgari*, the plaintiffs alleged that the vehicles' engines consumed excessive oil but Volkswagen argued that the plaintiffs had failed to allege what caused the oil consumption. 42 F. Supp. 3d at 1326. The court rejected Volkswagen's argument, emphasizing that it had produced no authority indicating that such facts needed to be pled to successfully allege an engine defect. *Id.* at 1326-28. Instead, the allegations sufficiently alleged that the engine was defective and that the defect manifested through excessive oil consumption. *Id.* at 1326 n.72.

On the other hand, Tesla's cases are unhelpful. In *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1139 (9th Cir. 2012), the problem with the plaintiff's pleading was not that the plaintiff had failed to allege a defect, but instead that it did not describe why the alleged defect ("the weakening or loss of the connection between the power jack and the motherboard") would cause the allegedly defective laptop computer to ignite. Instead, the plaintiff had only alleged that when he turned on his computer, the computer emitted "heavy smoke, flames, and sparks." *Id.* But the alleged defect didn't implicate the alleged effect.

Similarly, in *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 797 (N.D. Cal. 2019), the plaintiff only alleged a symptom of a defect, not a defect itself. The complaint had alleged that the screens on Apple watches were prone to "crack, shatter, or detach," but as a matter of cause only identified "various possible causes, including consumer misuse." *Id.* Indeed, the plaintiff even failed to allege what may have caused his own watch's screen to detach. As such, there was no way to establish from the plaintiff's allegations whether it was a defect, or really just consumer usage that caused the damage.

*Yagman v. General Motors Co.*, No. CV-14-4696-MWF (AGRx), 2014 WL 4177295, at *3 (C.D. Cal. Aug. 22, 2014), is no different, though it involves automobiles. In that case, the plaintiff alleged only "an injury, not a defect." *Id.* The class vehicles allegedly suffered from total electrical failure, but never alleged why they may have experienced those failures. The district court noted the possibility that a defect could have been behind the failure but noted that any number of other events and/or circumstances could have caused the failure. *Id.* And in *DeCoteau*, the district court conceded

that plaintiffs do not have to "plead the mechanical details" of a defect in order to state a claim but concluded that it was not sufficient for the plaintiff to identify the "transmission" alone as the source of the defect, because the transmission is a complicated system requiring "more detailed factual allegations in order to identify a plausible defect." 2015 WL 6951296, at *3. In other words, there was little difference between the *Yagman* and *DeCoteau* cases because, in both cases, the allegations were not sufficient to tie the alleged symptom to the alleged defect.

The FAC is more detailed and comprehensive than any of the cases Tesla cites. It alleges the existence of a suspension defect that manifests without warning and causes the sudden and unexpected loss of steering control. (FAC, ¶ 14.) The result is that the parts connecting the wheels to the Class Vehicles detach, causing one or more wheels to fold inward. (*Id.*) Indeed, the FAC describes several specific parts that are subject to failure, including "the front upper and lower control arms, front suspension aft-link, front suspension fore link, rear suspension upper link assembly, and rear suspension lower control arm assembly." (*Id.*, ¶ 16.) For instance, the FAC alleges that Tesla itself raised internal warnings about potential cracking of the front and lower rear control arm assemblies, in 2013, before Plaintiff Ma purchased his vehicle. (*Id.*) And SAMR identified deformation of both the rear connecting rod of the front suspension and the upper connecting rod of the rear suspension as potential defects needing correction. (*Id.*)

Tesla argues that SAMR's findings do not replicate in the United States because the identified suspension problems only manifest after a "large external impact," which it claims is not alleged. (Am. Mot., Dkt. No. 36 at 4.) But when Ma took his vehicle to the dealership for repair, it was Tesla who claimed the automobile must have hit a pothole or suffered some sort of impact causing the problem—either way, the defect still manifests. And in any event, a dispute over the factual reason for the defect's manifestation is not a proper issue for resolution on a motion to dismiss. *See Queen's Medical Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1159 (D. Hawai'i 2013). It is enough, for now, for Ma to have alleged the existence of the defect.

Tesla ignores other pleadings supporting Ma's allegations. For instance, Tesla acknowledged in its 2013 TSB that the front and lower rear control arm assemblies on certain 2013 and 2014 Model S vehicles could potentially crack. (FAC, ¶ 37.) In doing so, Tesla instructed its service centers to "replace

8

1   the failed components with 'updated parts.'" (*Id.*) Eager to avoid a public recall like the one China

2   forced Tesla to undertake, Tesla played a shell game—publicly blaming drivers for its own failed

3   suspension components but internally attempting to replace defective parts as consumers complained.

4   (*Id.*, ¶¶ 34-39.)

5          On top of China's recall and Tesla's own internal communications, the FAC also alleges 77

6   NHTSA complaints relating to the suspension defect, a significant number of complaints given the

7   relatively small number of cars Tesla has sold in North America. *See Falk v. Gen. Motors Corp.*, 496 F.

8   Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) ("The record of complaints to GM between 2003 and 2007

9   show that GM was clearly aware of a problem with its speedometers; the record makes it equally clear

10  that customers only became aware of the problem if they actually experienced it firsthand.").

11         And many of these complaints mirror Plaintiff's experience with his vehicle. One August 7,

12  2020, NHTSA complaint described a "clunk sound" from the front wheels caused by a failure of the

13  "upper suspension arms," and complained that Tesla lacked the parts to fix the vehicle. (FAC, ¶ 33 at 9.)

14  On September 19, 2019, another consumer explained that the "left front suspension fore link cracked

15  and fell off" while he was backing the vehicle out of the garage. (*Id.*, ¶ 33 at 14.) A May 6, 2019,

16  complaint also described that the "control arm disconnected while backing out of garage." (*Id.*, ¶ 33 at

17  15.) Consumers filed dozens of similar complaints, all describing one or more of the identified,

18  individualized parts that make up the Class Vehicles' suspension system.

19         Tesla can only argue that China's recall was somehow "uniquely severe in the China market,"

20  echoing the public claims it made after SAMR released its findings. (Am. Mot., Dkt. No. 36 at 4.) But

21  Tesla's self-serving representations do not defeat Ma's allegations on a Rule 12(b)(6) motion.

22  **B.     The Durational Limitation of the NVLW Is Unconscionable and Unenforceable**

23         Tesla asserts that Ma's breach of warranty claim fails because when he presented the vehicle for

24  repairs, its mileage and age had exceeded the warranty's 4-year or 50,000-mile time period. (Am. Mot.,

25  Dkt. No. 36 at 5.) But this argument fails because Tesla has failed to consider Ma's allegation that the

26  warranty's durational limitation is unconscionable. (*See* FAC, ¶¶ 41-42.) Where a complaint alleges

27  facts suggesting that a provision may be unconscionable, to enforce that provision, a defendant is

28  required to establish that it is not unconscionable. *See Williams v. Cal. Physicians' Serv.*, 72 Cal. App.

9

1  4th 722, 742 (1999) ("[A] defendant who relies on contract terms in moving for summary judgment
2  need not establish the contract is not unconscionable, *unless the plaintiff's complaint alleged facts*
3  *suggesting unconscionability*") (emphasis added). Here, Ma alleges that the warranty's durational
4  limitation—the very warranty provision that Tesla seeks to enforce—is unconscionable because "[Tesla]
5  knowingly sold a defective product" and Plaintiffs "had no meaningful choice in determining these time
6  limitations, the terms of which unreasonably favored Tesla." (FAC, ¶¶ 41-42.) Despite these allegations,
7  Tesla fails to address the warranty's unconscionability. Hence, the breach of express warranty claim
8  survives the motion to dismiss.

9  **C.    The FAC Alleges Tesla's Breach of Implied Warranty**

10        Tesla contends that Ma's implied warranty claim should be dismissed because the law imposes a
11  durational limitation on the implied warranty co-extensive with the limitations of Tesla's express
12  warranty. (Am. Mot., Dkt. No. 36 at 5-6.) Additionally, Tesla asserts that Plaintiff's implied warranty
13  claim is barred by a four-year statute of limitations period. (*Id.* at 6.) But these contentions are fatally
14  flawed due to a foundational evidentiary issue and Tesla's overly narrow interpretation of applicable
15  California law.

16        **1.    The Court Should Refuse to Consider "Exhibit A" of Tesla's Motion**

17        When ruling on a motion to dismiss, courts may not consider documents and matters beyond the
18  four corners of the complaint, provided two exceptions: (1) documents subject to judicial notice and
19  (2) documents whose contents are referenced and relied on in the complaint, and whose authenticity and
20  relevancy is not in question. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee v. City of*
21  *Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038
22  (9th Cir. 2010). With respect to the latter exception, which Tesla implicitly seems to rely on,[2] courts
23  routinely decline to consider terms, conditions, disclaimers, and limitations where uncertainty exists
24  about whether the alleged document existed during the relevant period. *See Fraley v. Facebook, Inc.*,
25  830 F. Supp. 2d 785, 794 (N.D. Cal. 2011) (on motion to dismiss, the court refusing to consider web
26  pages on a social network website as being incorporated by reference since it was unclear whether

27
28  [2] In its motion, Tesla failed to address the reason why the Court should consider Exhibit A. Because
    Tesla did not request judicial notice of Exhibit A, Ma presumes that Tesla is invoking the doctrine of
    incorporation.

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

1  certain pages existed at the time relevant to the plaintiffs' claims); *see also Gerritsen v. Warner Bros.*

2  *Entm't Inc.*, 112 F. Supp. 3d 1011, 1024-25 (C.D. Cal. 2015) ("Because the Assignment Agreement on

3  which defendants rely was signed two years later, in 2010, it is unclear that it is the agreement to which

4  [plaintiff] makes reference in the complaint.").

5        Here, Exhibit A should not be considered because it cannot be established that the specific

6  version of the warranty Tesla has presented is the one that existed when Ma purchased his vehicle. The

7  final page of Exhibit A reveals that it is an updated version of the warranty published on April 12,

8  2017—approximately three years after Ma's purchase. (*Compare* Ex. A at 15, *with* FAC at ¶ 14.) This

9  alone makes it inadmissible for the reason Tesla seeks to use it. *See Gerritsen*, 112 F. Supp. 3d at 1024-

10  25. The Court must exclude Exhibit A from consideration.

11        **2.**     **Tesla's Limitation of the Implied Warranty Is Inconspicuous**

12        Even if the Court considers Exhibit A with Tesla's motion, its argument for dismissing

13  Plaintiff's implied warranty claim is unpersuasive. Although the implied warranty of merchantability or

14  implied warranty of fitness can be excluded or modified, Tesla ignores that such limitations and

15  disclaimers are enforceable under California law only if the language expressly mentions

16  merchantability or fitness *and is conspicuous*. *See* Cal. Comm. Code § 2316. The California Commercial

17  Code provides the following statutory definition of "conspicuous":

18            (10) "Conspicuous," with reference to a term, means so written,
19            displayed, or presented that a reasonable person against whom it is to
          operate ought to have noticed it.

20  The Commercial Code also provides for two specific ways that a seller can make the terms of its

21  agreements "conspicuous" in a manner that satisfies the law:

22            (A) a heading in capitals equal to or greater in size than the surrounding
23            text, or in contrasting type, font, or color to the surrounding text of the
          same or lesser size; and

24            (B) language in the body of a record or display in larger type than the
25            surrounding text, or in contrasting type, font, or color to the surrounding
          text of the same size, or set off from surrounding text of the same size by
26            symbols or other marks that call attention to the language.

27  Cal. Comm. Code § 1201(10). These statutory requirements "protect the buyer from the situation where

28  the salesman's pitch, advertising brochures, or large print in the contract, giveth, and the disclaimer

1  clause—in fine print—taketh away." *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 951

2  (N.D. Cal. 2018) (quoting *Dorman v. Int'l Harvester Co.*, 46 Cal.App.3d 11, 18 (Cal. Ct. App. 1975)

3  (internal quotations omitted)). As such, determining "whether a disclaimer is conspicuous is not simply

4  a matter of measuring the type size or looking at the placement of the disclaimer within the contract, but

5  rather a reviewing court must ascertain that a reasonable person would not have been surprised to find

6  the warranty disclaimer in the contract." *See id.* (quoting *Sierra Diesel Injection Serv., Inc. v. Burroughs*

7  *Corp.*, 890 F.2d 108, 114 (9th Cir. 1989).

8         Within this district, courts have routinely reaffirmed the underlying purpose of the

9  conspicuousness requirement by refusing to enforce offending warranty limitations and disclaimers

10  against unsuspecting purchasers. *See MyFord Touch*, 291 F. Supp. 3d at 951 (refusing to enforce Ford's

11  warranty disclaimer where the heading stated, "Limitations and Disclaimers" and the relevant language

12  was indistinguishable from surrounding text).

13         As shown below, Tesla's modification of the implied warranty is anything but conspicuous.

14

15

16

> **Limitations and Disclaimers**
>
> THIS NEW VEHICLE LIMITED WARRANTY IS THE ONLY EXPRESS WARRANTY MADE IN CONNECTION WITH YOUR TESLA VEHICLE. Implied and express warranties and conditions arising under applicable state or provincial laws or federal statute or otherwise in law or in equity, if any, including, but not limited to, implied warranties and conditions of merchantability or merchantable quality, fitness for a particular purpose, durability, or those arising by a course of dealing or usage of trade, are disclaimed to the fullest extent allowable by law, or limited in duration to the term of this New Vehicle Limited Warranty. Some states or provinces do not allow limitations on implied warranties or conditions and/or how long an implied warranty or condition lasts, so the above limitations may not apply to you.
>
> The performance of necessary repairs and parts replacement by Tesla is the exclusive remedy under this New Vehicle Limited Warranty or any implied warranties. Tesla does not authorize any person or entity to create for it any other obligations or liability in connection with this New Vehicle Limited Warranty. The decision of whether to repair or replace a part or to use a new, reconditioned, or remanufactured part will be made by Tesla, in its sole discretion.

17

18

19

20

21

22  (*See* Am. Mot., Dkt. No. 36-1, Ex. A at 2 (emphasis added).) Although the heading is all capitals and in

23  slightly larger font, the key part of the text fails to call attention to the fact that the language below

24  intends to limit the duration of the implied warranty. And while the leading sentence is in all capitals,

25  the paragraph's most consequential language—which does not begin until the sixth line at the bottom of

26  the page—appears in normal sentence case and is the same font, color, size, and typeface as the

27  surrounding text. Because this text fails to satisfy California's statutory definition of "conspicuousness,"

28  the Court should refuse to enforce the disclaimer.

1

2

### 3. Tesla's Fraudulent Concealment Tolls the Limitation Period for Ma's Breach of Implied Warranty Claim

3    Tesla's attempt to avoid Ma's implied warranty claim based on the applicable statute of

4    limitations fares no better. While the limitation period typically accrues at the time of tender,

5    California's discovery rule tolls the accrual period until after a plaintiff discovers or has reason to

6    discover the facts that underlie the cause of action. *See, e.g., Tanner v. Ford Motor Co.*, 424 F. Supp. 3d

7    666, 669 (N.D. Cal. 2019) (citing *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1307 (2009));

8    *Smith v. Ford Motor Co.*, No. 19-cv-05170-CRB, 2020 WL 609864, at *4 (N.D. Cal. Feb. 4, 2020);

9    *Bunn v. Ford Motor Co.*, No. 5:19-CV-03590-EJD, 2020 WL 991529, at *3 (N.D. Cal. Mar. 2, 2020).

10   When the discovery rule applies, accrual of a claim begins from the time that the plaintiff discovered (or

11   reasonably should have discovered) the alleged defect. *Id.* Here, Ma pled that he did not discover and

12   could not reasonably have discovered the defect until it occurred in 2019. (*See* FAC ¶¶ 57-58.)

13   Moreover, Ma has alleged in detail Tesla's active concealment of the Suspension Defect, (*see id.* ¶¶ 34-

14   39, 41), which due to its latent nature was undiscoverable before its symptoms began to manifest in

15   October 2019. (*Id.* ¶¶ 57-59.) Therefore, Ma's implied warranty claim is not time-barred.

16   **D.    Ma Alleges Facts Establishing Tesla's Breach of the Magnusson-Moss Warranty Act**

17   Next, Tesla contends that Ma's Magnusson-Moss Warranty Act ("MMWA") should be

18   dismissed because Ma failed to plead a viable warranty claim. Additionally, Tesla argues that Ma's

19   MMWA claim should not proceed because he failed to partake in the informal dispute resolution process

20   allegedly required in the warranty. Again, both Tesla's arguments are unpersuasive.

21   As discussed above, Ma has adequately plead his warranty claims. (*See supra* §§ IV, parts B-C.)

22   Moreover, while the MMWA "encourage[s] warrantors to establish procedures whereby consumer

23   disputes are fairly and expeditiously settled through informal dispute settlement mechanisms," 15 U.S.C.

24   § 2310(a)(1), "failure to participate in [the warrantor's] informal dispute settlement procedure is an

25   affirmative defense–subject to waiver, tolling, and estoppel, that [the warrantor] may raise," not one that

26   Ma must negate the FAC. *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1040, 1042,

27   1043 n.4 (9th Cir. 2011) (holding that § 2310(a) is a prudential, not a jurisdictional bar to filing an

28

13

1  MMWA claim). For these reasons, the Court should deny Tesla's motion to dismiss Ma's MMWA

2  claim.

3  **E.     Ma Properly Pleads Tesla's Fraudulent Omissions Regarding the Suspension Defect**

4          Tesla concedes that omissions may provide the predicate act for Ma's statutory claims but argues

5  that Ma has not pled his claims consistent with the particularity standard of Rule 9(b) of the Federal

6  Rules of Civil Procedure. (Am. Mot., Dkt. No. 36. at 7-10.) But even if Ma is held to Rule 9(b)'s

7  pleading standards, the FAC satisfies that standard.

8          To establish that an omission is actionable, a plaintiff must allege that the defendant was

9  "obliged to disclose" the potential defect. Such a failure to disclose can constitute actionable fraud in

10  four separate circumstances:

11      (1) When the defendant is in a fiduciary relationship with the plaintiff; (2) when
        the defendant had exclusive knowledge of material facts not known to the
12      plaintiff; (3) when the defendant actively conceals a material fact from the
        plaintiff; and (4) when the defendant makes partial representations but also
13      suppresses some material fact.

14  *See Hoffman v. 162 North Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014).

15          Ma alleges both that Tesla had exclusive knowledge of material facts not known to Ma and that

16  Tesla was "actively" concealing those facts. (*See, e.g.*, FAC ¶¶ 28-29.) As a threshold matter, Ma has

17  sufficiently alleged that the defect is material because it manifests in a way that is unsafe to drivers,

18  passengers, and the general public. Because it can be assumed that reasonable consumers would not

19  expect or assume such unsafe conditions, the alleged defect is material. *See Falk*, 496 F. Supp. 2d at

20  1095 (holding that disclosure of faulty speedometer would be material because it would "lead to

21  traveling at unsafe speeds and moving-violation penalties").

22          Ma has also alleged that Tesla had exclusive knowledge of the defect. For instance, Ma has

23  alleged both Tesla's issuance of the relevant internal TSBs and the reason for delaying their release.

24  (FAC ¶¶ 37-39.) Furthermore, dozens of NHTSA complaints also tend to demonstrate that Tesla was

25  aware of the potential for a suspension defect.[3] *See Falk*, 496 F. Supp. 2d at 1096. Plaintiff further

26

27

28  [3] Tesla argues that NHTSA received these complaints after Plaintiff purchased his vehicle, but given the defect's nature it is unreasonable to expect that reports would be made right away. The defect manifests over time. At this stage, it would be improper to dismiss Plaintiff's lawsuit simply because Tesla managed to delay discovery until the public became aware of the defect.

14

1   alleges that Tesla knew about the defect through its own manufacturing and data-gathering processes, all

2   of which would have tended to show that the suspension defect existed. (FAC ¶¶ 28-30.) At the end of

3   the day, of course, only Tesla could truly know whether it had exclusive knowledge of the alleged

4   defect—for now, Ma has alleged sufficient facts to establish that knowledge and should be permitted to

5   take discovery to establish it as fact.

6          Indeed, Tesla overstates the pleading standard in its attempt to avoid answering Ma's allegations.

7   Tesla argues that "averments of fraud must be accompanied by the who, what, when, where, and how"

8   of the misconduct charged. (Am. Mot., Dkt. No. 36, at 7 (citing *Vess v. Ciba-Geigy Corp.*, *USA*, 317

9   F.3d 1097, 1106 (9th Cir. 2003).) But the standard for pleading omissions is different than the standard

10  for alleging affirmative misrepresentations. A plaintiff in a fraud by omission lawsuit is unable to

11  "specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false

12  representation claim. *Falk*, 496 F. Supp. 2d at 1098-99. Indeed, a plaintiff cannot plead either "the

13  specific time of the omission or the place, as he is not alleging an act, but a failure to act." *Washington v.*

14  *Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987). What is left, then, is the "identities of the parties"

15  and the date on which they were misled. *Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149,

16  1159-60 (C.D. Cal. 2011). The plaintiff must also allege "the content of the omission and where the

17  omitted information should or could have been revealed, as well as provide representative samples of

18  advertisements, offers, or other representations that plaintiff relied on to make her purchase and that

19  failed to include the allegedly omitted information." *Marolda v. Symantec Corp.*, 572 F. Supp. 2d 992,

20  997 (N.D. Cal. 2009). But "conditions of the mind, such as knowledge and intent, may be alleged

21  generally." *Id.*; *Obertman v. Electrolux Home Care Prods., Inc.*, 482 F. Supp. 3d 1017, 1024 (E.D. Cal.

22  2020).

23         Here, Ma has satisfied Rule 9's particularity standard. First, he alleges that Tesla should have

24  disclosed the nature of the suspension defect when he purchased his vehicle from Tesla.[4] Furthermore,

25

26

27  ⁴ *See also Falk*, 496 F. Supp. 2d at 1097 (holding that plaintiffs sufficiently alleged omissions);
    *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1126 (N.D. Cal. 2010) (holding that plaintiffs sufficiently

28  alleged omissions where the information about the defect was material and known to the defendant);
    *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996-997 (N.D. Cal. 2013).

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

1    Tesla could and should have disclosed the alleged defect on the "Monroney" sticker that it placed on the

2    vehicle, which Plaintiff reviewed before purchasing the car. *See* 15 U.S.C. §§ 1231-1233. The

3    Monroney sticker includes standard and optional equipment, pricing, and warranty details, and

4    disclosure on the sticker would have provided Ma with sufficient actual or constructive notice of the

5    defect. *Id.*

6           Tesla notes that Plaintiff must plead facts demonstrating Tesla's preknowledge of the suspension

7    defect, because the omission must be "actively concealed" or the subject of "exclusive facts known or

8    reasonably accessible to the plaintiff." (Am. Mot., Dkt. No. 36, at 7-8.) But under Federal Rule 9, a

9    party's knowledge can be pled generally because the allegation is that the defendant has withheld facts

10   within its exclusive knowledge. *See In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428

11   MMM (RZx), 2014 WL 12586074, at *3 (C.D. Cal. Oct. 20, 2014).[5]

12          In *NJOY*, the plaintiff had alleged that NJOY circulated false and misleading advertisements that

13   omitted the negative side effects and health consequences associated with their use. *Id.* The plaintiff

14   alleged that these negative side effects and consequences were uniquely within NJOY's knowledge. *Id.*

15   NJOY moved to dismiss, in part because the plaintiff had allegedly failed to plead the specific facts

16   NJOY knew at the time of sale, and which facts NJOY could have discovered prior to the time of sale.

17   But the court concluded that the plaintiff could plead NJOY's knowledge because knowledge is in the

18   category of "conditions of a person's mind"—the plaintiff cannot plead what Tesla may, or may not

19   have known at any particular time, much less what it may have been reasonable for Tesla to have known

20   but failed to discover. *Id.* at *8.

21   **F.    The Economic Loss Rule Does Not Bar Ma's Fraudulent Concealment Claim**

22          Tesla argues that the economic loss rule bars Ma's fraud cause of action because its alleged fraud

23   is based on alleged omissions, not misrepresentations. To support its position, Tesla relies on several

24   federal district court cases that have analyzed the California Supreme Court's ruling in *Robinson*

25

26   ─────────────────────

27   [5] *See Andrew Smith Co. v. Paul's Pak, Inc.*, No. C-08-04802 RMW, 2010 WL 2465044, at *3 (N.D. Cal.
     June 14, 2010) ("Federal Rule of Civil Procedure Rule 9(b) requires a party to state with particularity the
     circumstances constituting fraud but permits general allegations of knowledge, intent, and other

28   conditions of a person's mind."); *Obertman*, 482 F. Supp. 3d at 1022 ("[D]efendant's knowledge need
     only be alleged generally, with non-conclusory, plausible allegations.") (citing *Luong v. Subaru of Am.
     Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646, at *5 (N.D. Cal. May 2, 2018)).

16

1   *Helicopter v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004), and determined that because the Supreme Court

2   limited *Robinson* to cases involving affirmative representations, its holding does not reach omissions.

3   But that conclusion is an overreach based on a fundamental flaw in reasoning. It is true that *Robinson*

4   involved affirmative misrepresentations. At the same time, that does not mean California law bars

5   plaintiffs from seeking the economic losses resulting from intentional fraudulent concealment. *See*

6   *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1032 (E.D. Cal. 2013) ("[*Robinson*]

7   strongly suggests no meaningful distinction exists between intentional concealment and intentional

8   misrepresentation; rather the material distinction is whether the tortious conduct was intentional or

9   negligent."). Indeed, Tesla overlooks the California Supreme Court's conclusion, in a case pre-dating

10  *Robinson*, that "an omission to perform a contract obligation is never a tort, ***unless that omission is also***

11  ***an omission of a legal duty***." *Erlich v. Menezes*, 21 Cal. 4th 543, 551-552 (1999) (emphasis added).

12  Likewise, in *Erlich*, the Supreme Court recognized that the economic loss rule does not apply in tort

13  where "the duty that [gave] rise to tort liability is either completely independent of the contract or ***arises***

14  ***from conduct which is both intentional and intended to harm***." *Id.*

15          In some sense, Tesla's misunderstanding of the law is understandable because it has been led

16  there by several federal district court decisions agreeing with its conclusion that *Robinson* constituted a

17  limited exception to the economic loss rule, including *In re Ford Motor Co. DPS6 Powershift*

18  *Transmission Products Liability Litigation*, 483 F. Supp. 3d 838, 848-849 (C.D. Cal. 2020). In *Ford*

19  *Motor*, the plaintiff argued that Ford had knowingly suppressed material facts about a defect in its

20  vehicles' transmissions. Ford defended by arguing that the economic loss rule barred recovery of any

21  economic losses caused by the alleged omissions. The court agreed with Ford, noting that the dispute

22  turned on the "scope of an exception" to the economic loss rule set forth in *Robinson*. *Id.* at 850.

23  Focusing on that "exception," the court reviewed *Robinson* and concluded that it had allowed plaintiffs

24  to pursue economic losses resulting from affirmative misrepresentations but did not discuss omissions.

25

26

27

28

---

Plaintiff's Opposition to Tesla's Amended Motion to Dismiss
Case No.: 4:20-cv-08208-HSG

1   *Id.* Thus, the court concluded that California Supreme Court had expanded an exception to California's

2   economic loss rule in a way that did not provide for omissions.[6]

3        But the error comes in assuming that *Robinson* constituted an exception to, or an expansion of,

4   the economic loss rule. Nowhere in *Robinson* did the California Supreme Court use the words

5   "exception" or "expansion" to describe its holding. To understand why this matters, a review of the

6   genesis of the economic loss rule is necessary. The economic loss rule arose out of the Supreme Court's

7   analysis of cases involving negligence and strict liability.[7] *See Seely v. White Motor Co.*, 63 Cal. 2d 9,

8   19 (1965) (holding that economic loss rule limited negligence claims to contract recoveries); *Jimenez v.*

9   *Superior Court*, 29 Cal. 4th 473, 482-83 (2002) (holding that "law of contractual warranty" governs

10  "damage to the product itself" in strict liability cases"). The crux of both these torts is foreseeability. A

11  defendant sued under either theory is liable to those plaintiffs foreseeably harmed by the defendant's

12  conduct.

13       But neither *Seely* nor *Jimenez* considered the consequences of intentional conduct—that is, fraud.

14  In *Erlich*, the California Supreme Court did. 21 Cal. 4th at 551-552. Indeed, it was in *Erlich* that the

15  Supreme Court addressed the independent duty rule, prior later applying it in *Robinson*. *Id.* at 551

16  ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty

17  independent of the contract arising from principles of tort law"). In *Erlich*, the Supreme Court

18  determined that conduct amounting to a breach of contract can be tortious so long as it "violates a duty

19  independent of the contract" and "aris[es] from the principles of tort law." *Id.*

20

21

---

22   [6] Judge Birotte is not the only judge to come mistakenly to this conclusion, as several judges have
     interpreted *Robinson*'s holding as a limitation of the rule rather than a limitation on the rule's application

23   to the underlying facts of the *Robinson* case. *See Sloan v. General Motors LLC*, No. 16-cv-07244-EMC,
     2020 WL 1955643, at *23 (N.D. Cal. Apr. 23, 2020) (determining that economic loss rule prevented

24   recovery on omissions because *Robinson* did not address whether "intentional concealment constitutes
     an independent tort"); *Hien Bui v. Mercedes-Benz USA, LLC*, No. 20-CV-1530-CAB-WAG, 2021 WL

25   242936, at *4 (S.D. Cal. Jan. 25, 2021) (citing *Sloan*); *Stewart v. Electrolux Home Prods., Inc.*, 304 F.
     Supp. 3d 894, 905 (E.D. Cal. 2018) ("The lack of an identifiable affirmative misrepresentation

26   forecloses the narrow exception envisaged by *Robinson*.").

27   [7] The Supreme Court of Washington observed that part of the problem has been the tendency of lawyers
     and judges to reference this concept as the "economic loss rule," which "proved to be a misnomer."

28   *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 387-388 (2010). The court noted that
     "economic losses are sometimes recoverable in tort, even if they arise from contractual relationships,"
     and even identified fraudulent concealment as just such a tort. *Id.* (citing *Obde*, 56 Wash. 2d at 452.)

18

1   That formulation itself should be clear enough to prevent this Court from having to guess at what
2   the California Supreme Court would decide if expressly faced with the question of whether fraudulent
3   concealment is tort that arises from the violation of an independent legal duty. Indeed, *Erlich* expressly
4   addressed the question by stating that "an omission to perform a contract obligation is never a tort,
5   ***unless that omission is also an omission of a legal duty***." *Id.* at 551-52 (emphasis added). The flipside
6   of this premise is that when there has been an omission in violation of an independent legal duty, that
7   omission is an actionable tort despite the economic loss rule.[8] Indeed, it is this formulation that resolves
8   the concerns of those courts that have suggested that *Robinson* did not speak to the independent duty
9   triggered by an actionable omission. Thus, *Erlich* had already stated the law, because it can hardly be
10  disputed that intentional concealment is a tort arising from a separate and independent legal duty. *See*
11  *Burch v. CertainTeed Corp.*, 34 Cal. App. 5th 341, 348 (2019) (alleging fraudulent concealment requires
12  demonstration that "the defendant was under a duty to disclose the fact to the plaintiff"); *Freedom*
13  *Transport, Inc. v. Travelers Cos., Inc.*, No. EDCV 16-213 JGB (SPx), 2016 WL 7496731, at *5 (C.D.
14  Cal. Mar. 24, 2016) (describing the four circumstances in which a legal duty arises to disclose known
15  facts).

16  But despite the California Supreme Court's resounding signal that actionable omissions
17  constitute an independent duty, many federal courts analyzing this issue have mistakenly focused on
18  *Robinson*'s language limiting its analysis of the law as stated in *Erlich* to the facts that existed in
19  *Robinson*, where the defendant allegedly engaged in affirmative misrepresentations. Then, as in *Ford*
20  *Motor*, these courts have held that *Robinson* intended to carve out fraudulent omissions from its
21  "exception" to the rule. 483 F. Supp. 3d at 848-849. But that is not what the Supreme Court did. In
22  *Robinson*, the Supreme Court applied the general law it had earlier discussed in *Erlich* to *Robinson*'s
23  specific facts.

24

---

25  [8] In *Erlich*, the Supreme Court ultimately held that the plaintiffs could not obtain economic loss damages
26  but that was in the context of reviewing a jury verdict that found the defendants liable only for
    negligence. The court conceded that economic loss damages had been recovered in tort cases involving
27  contracts, but that "more than mere negligence has been involved in each case where tort damages have
    been permitted." *Id.* at 553-54 ("This is a claim for negligent breach of a contract, which is not sufficient
28  to support tortious damages for violation of an independent tort duty."). That the economic loss rule
    does not bar recovery for intentional concealment of facts a defendant otherwise has an independent
    duty to disclose simply follows from that premise.

19

The common thread that links *Erlich* and *Robinson* is the law; the economic loss rule does not apply to torts arising from a duty "independent" of the defendant's contractual duties. *Erlich* confirmed that neither negligence nor strict liability create the kind of independent duty necessary to avoid application of the economic loss rule, because foreseeability does not create an independent duty. In *Erlich*'s formulation, "foreseeability is not synonymous with duty; nor is it a substitute." *Id.* at 552. But here, Ma's claim is based on Tesla's alleged concealment of facts that it had "a duty to disclose [] to the plaintiff." *See, e.g.*, *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011) ("[D]efendant had a common law duty to avoid making partial, misleading representations that effectively concealed material facts.").

The rule as stated in *Erlich* makes sense because there is no good reason to distinguish between affirmative misrepresentations and omissions for purposes of applying the economic loss rule. Certainly, none of the courts Tesla cites give one outside of the premise that *Robinson* supposedly prevents it. *See infra* n.8. Meanwhile, in *Erlich* the California Supreme Court recognized its "focus[] on intentional conduct" was what gave "substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated." 21 Cal. 4th at 554 (citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994)). And in *Robinson*, the court emphasized the very same public policy concerns, explaining that "California [] has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." 34 Cal. 4th at 992 (citing *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1064 (1999)). Indeed, the court could not have been plainer about its concern that a contract should not be "a license allowing one party to cheat or defraud the other." *Id.* (citing *Grynberg v. Citation Oil & Gas Corp.*, 573 N.W.2d 493, 501 (S.D. 1997)). And compared to all of this, there has not been a single indication that California courts should treat fraudulent omission or concealment differently than intentional misrepresentation. The Supreme Court did not make that distinction and has never intended to make that distinction. Indeed, the law does not make that distinction.

The Sixth District of the California Court of Appeal accurately analyzed the Supreme Court's jurisprudence in *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 328 (2006), a case where the plaintiff alleged various misrepresentations and omissions against the defendant. The

1   defendant attempted to avoid the plaintiff's fraud claim by applying the economic loss rule, but the court

2   disagreed. It began by noting that whether the economic loss rule applied depended on "whether the

3   California Supreme Court intended in *Robinson* to obviate the application of the economic loss rule to

4   all intentional affirmative fraud causes of action where the fraud exposes the plaintiff to liability or the

5   court intended to provide a narrow exception to the economic loss rule that applies only where that fraud

6   cause of action also accompanies, but is independent of, a breach of contract cause of action." *Id.*

7   Notable, of course, is that the Court of Appeal never discussed whether there should be a difference in

8   how to apply the economic loss rule to intentional omissions as opposed to intentional

9   misrepresentations. Instead, it resolved the question by holding that *Robinson* "precludes the application

10  of the economic loss rule to any intentional affirmative fraud action where the plaintiff can establish that

11  the fraud exposed the plaintiff to liability." *Id.* at 328.

12      *Santa Clara*'s discussion of the "structure" of the *Robinson* opinion underscores the point. *Id.* As

13  the Court of Appeal noted, the first part of the *Robinson* opinion was concerned with whether the

14  "wrongful conduct constituted tortious conduct, not whether the economic loss rule applied to it." *Id.* It

15  was only "after the court held that [the] conduct was a tort independent of [the] breach of contract that

16  the court addressed the application of the economic loss rule." *Id.* And that method of analysis led to the

17  Supreme Court's ruling that "***fraud itself is immune*** from application of the economic loss rule because

18  fraud is particularly blameworthy and therefore unlike both contract causes of action and products

19  liability causes of action." *Id.* (emphasis added). The same analysis here leads to the same result. An

20  intentional fraud—this time an omission or concealment—derives from the breach of a tort duty

21  independent of a contract, and thus the economic loss rule does not apply.[9] *Id.* Other state courts have

22  recognized that there is no reason to treat intentional misrepresentation differently from intentional

23  omission as well. *See McWhinney Centerra Lifestyle Ctr. LLC v. Poag & McEwen Lifestyle Centers—*

24  *Centerra LLC*, --- P.3d ---, 2021 WL 126572, at *13 (Col. Ct. App. Jan. 14, 2021*); Obde v. Schlemeyer*,

25  56 Wash. 2d 449, 452 (1960).

26

27  —————————————

28  [9] Notably, the Supreme Court denied the defendant's motion for review of the Court of Appeal's
decision. *County of Santa Clara v. Atlantic Richfield Co.,* 137 Cal. App. 4th 292 (2006), *review denied*
(June 21, 2006).

21

1   California law is clear. The Supreme Court's rulings—not just *Robinson*, but also *Erlich*—
2   establish that the economic loss rule does not bar fraud claims—whether they are rooted in
3   misrepresentation or omission. But even if the Court believes it must make an "informed prophecy" as
4   to how the California Supreme Court would rule, it would be error to conclude, as various other district
5   courts have done, that it would exclude intentional fraudulent concealment from those torts not subject
6   to the economic loss rule. *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st
7   Cir. 2008); *see also Centurion Properties III, LLC v. Chicago Title Ins. Co.*, 793 F.3d 1087, 1089 (9th
8   Cir. 2015) ("Certification is a means 'to obtain authoritative answers to unclear questions of state law.'")
9   (quoting *Toner for Toner v. Lederle Labs., Div. of Am. Cyanamid Co.*, 779 F.2d 1429, 1432 (9th Cir.
10  1986)). In sum, this Court has every reason to conduct its own independent analysis of California law
11  and thereby reach a different conclusion than previous courts have reached.

12      Notably, the distinction also matters because the economic losses Ma alleges are not fully
13  captured by a contractual recovery. While Ma may recover the amount he spent on replacing the brakes
14  by pursuing his warranty claim, he is also entitled to the difference between the value of the automobile
15  he believed he was purchasing and the value of the automobile as afflicted by the defect. Because this is
16  true, Ma may pursue his fraud claim even though his damages are limited to economic losses.

17  **G.    Ma Is Entitled to Injunctive Relief**

18      Tesla argues that Ma's claims must be dismissed because he "fails to plead facts that, if proven,
19  would show legal remedies would be inadequate." (Am. Mot., Dkt. No. 36, at 11 (citing *Sonner v.
20  Premium Nutrition Corp.*, 971 F.3d 834, 839-44 (9th Cir. 2020); *Philips v. Ford Motor Co.*, 726 F.
21  App'x 608, 609 (9th Cir. Jun 8, 2018)).) Tesla reviews the FAC and argues that "assuming Ma
22  prevailed, the legal remedies he requests—benefits-of-the-bargain and contract-like damages"—will be
23  adequate to resolve his claims. (Dkt. No. 36 at 12.) But just because Ma alleges legal remedies does not
24  mean he lacks other remedies. For example, regardless of his monetary remedies he is still stuck with a
25  vehicle that is dangerous for drivers, passengers, and the general public. Indeed, "injunctions are the
26  primary form of relief available under the UCL to protect consumers from unfair business practices,"
27  whereas "restitution is a type of ancillary relief." *See Gutierrez v. Carmax Auto Superstores Calif.*, 19
28  Cal. App. 5th 1234, 1265 (2018). Even replacement does not negate "damage" that a consumer might

1   have experienced and thus preclude the consumer from pursuing either "an injunction or restitution"

2   pursuant to the relevant statutory provisions. *Id.*

3       Tesla reads the FAC far too narrowly. Even if there is an adequate legal remedy for Ma to obtain

4   his monetary damages, rendering the "ancillary relief" of restitution unnecessary, Ma is still entitled to

5   an injunction against Tesla's unfair business practices, including its sale of unsafe vehicles bearing the

6   Suspension Defect. The FAC sufficiently alleges that the Suspension Defect poses not only a monetary

7   harm to Ma, but a safety problem as well. For example, SAMR concluded that if the ball-end cone seat

8   comes out of the steering knuckle, it can increase the risk of accidents, and pose safety risks. (FAC,

9   ¶ 21.) The same is true if the upper connecting rod of the rear suspension breaks as a result of

10  deformation. (*Id.*) And it is not enough for Tesla to argue that it has supposedly "fixed" the Suspension

11  Defect by working on Ma's automobile. Not only is it unknown whether Tesla's replacement parts even

12  resolved the defect, the potential defect expands to numerous potential parts of the Suspension,

13  including parts Tesla has not yet replaced. Further operation of the Class Vehicles without a complete

14  resolution for the Suspension Defect remains an issue that monetary damages alone will not settle.

## V      CONCLUSION

16      For obvious reasons, Tesla wants to leave the Suspension Defect in China, where it need not face

17  the high-profile media scrutiny it will undoubtedly face in the United States. But its technical objections

18  to Ma's claims are not based in law or the FAC's allegations. On this basis, the Court should deny

19  Tesla's motion to dismiss in its entirety.

20  Dated:  April 28, 2021                    Respectfully submitted,

21                                  By:  /s/ *David C. Wright*
                                        David C. Wright

23                                      Richard D. McCune, State Bar No. 132124
                                        rdm@mccunewright.com
24                                      David C. Wright, State Bar No. 177468
                                        dcw@mccunewright.com
25                                      Steven A. Haskins, State Bar No. 238865
                                        sah@mccunewright.com
26                                      Mark I. Richards, State Bar No. 321252
                                        mir@mccunewright.com
27                                      MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ LLP
                                        3281 Guasti Road, Suite 100
                                        Ontario, California 91761

                                        *Counsel for Plaintiffs and the Putative Class*