UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHERY WILLIAMS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TESLA, INC.,<br><br>    Defendant. | Case No. 20-cv-08208-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 36 |

On November 25, 2020, Plaintiff Zachery Williams and Plaintiff Michael Ma filed a complaint against Defendant Tesla Inc. ("Tesla"). Dkt. No. 7 ("FAC"). On March 26, 2021, the Court granted the parties' stipulation to stay Plaintiff Williams's claims until after the Court issues its order on Tesla's motion to dismiss Plaintiff Ma's claims. Dkt. No. 34. That motion is now pending. Dkt. Nos. 36 ("Mot."), 37 ("Opp."), 38 ("Reply"). For the following reasons, the Court **GRANTS** Tesla's motion to dismiss.

**I.   BACKGROUND**

Tesla designs and manufactures Tesla-branded automobiles, including the "Tesla Model S and Model X vehicles." FAC ¶ 1. Plaintiff "purchased a new 2014 Tesla Model S directly from Tesla online" and "took delivery of the vehicle on September 9, 2014." *Id.* at ¶ 14. "At the time of delivery, the vehicle had approximately 50 miles on the odometer and was covered by Tesla's 4-year/80,000-mile New Vehicle Limited Warranty ["NVLW"]." *Id.* Around October 2019, he "began to hear a rattling noise emitting from the front of his 2014 Model S when driving on rough roads at a speed of 25 mph or more." *Id.* at ¶ 48. On November 6, 2019, Plaintiff "presented the vehicle to Tesla's service center in Palo Alto, California to diagnose and redress the issue. At that time, the vehicle had 58,057 miles on the odometer." *Id.* at ¶ 49. "To remedy the rattling

problem," Tesla replaced the failed lower aft links "with a new front suspension aft link assembly." *Id.* at ¶ 50. Plaintiff paid "$1,320.12 out-of-pocket for the cost of parts and labor." *Id.* Additionally, Tesla's service technician replaced the front lower fore links and strut bolts, "cover[ing] the costs as a 'goodwill' service" under an "unidentified" technical service bulletin ("TSB"). *Id.* at ¶ 51.

According to the FAC, "Model S and Model X vehicles manufactured from September 17, 2013, to October 15, 2018, suffer from a defect in the front and rear suspension control arm assembly, causing the components of the suspension system to prematurely loosen, wear, crack, or break (the 'Suspension Defect')." *Id.* at ¶ 2. "This defect manifests in one or more of the front upper and lower control arms, front suspension aft-link, front suspension fore-link, rear suspension upper link assembly, and rear suspension lower control arm assembly." *Id.* at ¶¶ 18–19.

Plaintiff alleges that the National Highway Traffic Safety Administration ("NHTSA") has received at least "77 complaints relating to the Suspension Defect in Model S and Model X vehicles." *Id.* at ¶ 32. He further alleges that "Tesla had significant and longstanding knowledge of the Suspension Defect through records of customer complaints, dealer repair records, records from NHTSA, warranty and post-warranty claims, internal pre-sale durability testing, and other various sources." *Id.* at ¶ 28. According to Plaintiff, "Tesla has gone to great lengths to actively conceal its knowledge of the Suspension Defect" by issuing TSBs to address customer complaints that "downplay[] the dangerousness of the Suspension Defect and the scope of vehicles affected by it." *Id.* at ¶ 34. Plaintiff also details the findings of China's State Administration for Market Regulation ("SAMR") agency investigation relating to a "safety recall" in China. *Id.* at ¶¶ 20–21.

Plaintiff brings claims against Tesla for violations of the federal Magnuson-Moss Warranty Act ("MMWA"), the California Consumer Legal Remedies Act ("CLRA"), the California Unfair Competition Act ("UCL"), the California False Advertising Law ("FAL"), fraud, and breach of express and implied warranties.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Rule 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted). In short, a fraud claim must state the "who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false or misleading," *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be

3

1  alleged generally." Fed. R. Civ. P. 9(b).

**III.  DISCUSSION**

Tesla contends that Plaintiff's claims fail for several reasons, including that (1) Plaintiff does not adequately allege a defect; (2) Plaintiff's express warranty expired and any implied warranty claim is time-barred; (3) Plaintiff's fraud-based claims do not meet the heightened pleading standards; and (4) Plaintiff fails to allege an inadequate remedy at law for his claims for equitable and injunctive relief. *See generally* Mot.

**A.  Existence of a Defect**

Tesla argues that each of Plaintiff Ma's claims fails because he has not plausibly alleged the existence of a defect. Mot. at 3–5. Plaintiff alleges that the relevant models "suffer from one or more latent defects in their suspension system that cause the front and rear suspension control arm assembly components to prematurely loosen, wear, crack, and/or break ('the Suspension Defect')." FAC ¶ 2. The "control arm assembly parts subject to failure include the front upper and lower control arms, front suspension aft-link, front suspension fore-link, rear suspension upper link assembly, and rear suspension lower control arm assembly." *Id.* ¶ 19. Plaintiff further alleges that the Suspension Defect "can manifest without warning and cause the sudden and unexpected loss of steering control." *Id.* ¶ 16. Tesla contends that Plaintiff identifies only "components of the suspension system and alleged symptoms," but must instead identify a defect by pleading "specific facts alleging what caused the components to experience the alleged symptoms." Mot. at 3.

As Plaintiff notes, and Tesla does not dispute, the Ninth Circuit has not addressed the disagreement among district courts about the level of detail required to allege an automobile defect. *See Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1126 (C.D. Cal. 2020) (noting lack of consensus among district courts). Given the "divergent district court holdings," other courts have looked to the general rule governing pleadings, namely that "[a] complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and those allegations 'must plausibly suggest an entitlement to relief.' " *Zuehlsdorf v. FCA US LLC*, No. EDCV181877JGBKKX, 2019 WL

4

2098352, at *6 (C.D. Cal. Apr. 30, 2019) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)); *Mosqueda*, 443 F. Supp. 3d at 1126 (same).

The Court agrees that Plaintiff's allegations provide fair notice of the defect at issue and allow Tesla to effectively defend itself. Plaintiff alleges that Tesla installed a defective suspension system, describes the specific affected components and symptoms, and cites various Tesla internal communications and NHSTA complaints concerning the suspension system. For example, Plaintiff alleges that Tesla raised an internal warning about potential cracking of the front control arm assemblies in 2015. *See* FAC ¶ 36, Ex. 4, TSB-13-31-003. Though Tesla contends that these internal TSBs concerned "non-safety-related condition[s]," *see* Reply at 3, at this stage, the Court must view the allegations in the light most favorable to Plaintiff. And Plaintiff alleges that the TSBs targeting various components of the suspension system have "fail[ed] to address the full scope of the vehicles affected by problems and altogether ignore[] the safety implications of the Suspension Defect." FAC ¶ 35. Under Plaintiff's theory, Tesla sought to "publicly blam[e] drivers for its own failed suspension components but internally attempt[ed] to replace defective parts as consumers complained." Opp. at 9; *see* FAC ¶ 34 (alleging that the TSBs issued were "truly aimed at addressing a uniform safety defect").

Other courts have found similar allegations sufficient to plead an automobile defect. *See, e.g.*, *Zuehlsdorf v. FCA US LLC*, No. EDCV181877JGBKKX, 2019 WL 2098352, at *6 (C.D. Cal. Apr. 30, 2019) (finding that absent a description of "how the alleged defect caused the reported symptoms . . . the identification of the particular [Continuously Variable Transmission] affected . . . and description of the problems allegedly caused by the defect [we]re sufficient to provide fair notice and allow Defendant to mount a defense"); *Hardt v. Chrysler Grp. LLC*, No. SACV1401375SJOVBKX, 2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015) (finding that the "allegation that 'the Manual Transmission contains one or more design and/or manufacturing defects,' combined with a description of the symptoms of the alleged defect . . . provides Chrysler sufficient notice of the defect at issue.").

Defendant's citation to various cases, including *DeCoteau v. FCA US LLC*, No. 215CV00020MCEEFB, 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015), does not change the

1  Court's conclusion. In *DeCoteau*, the plaintiffs alleged that a defective transmission caused many
2  problems that "severely affected a driver's ability to control speed, acceleration, and deceleration,"
3  including "rough and jerking transmission shifts" and causing the cars to "automatically move
4  backward" when stopped. *Id.* at *1, 3. The court explained that it did "not necessarily expect all
5  plaintiffs to have to 'plead the mechanical details' of a defect in order to state a claim," but
6  reasoned that "the level of specificity required appears to directly correlate to the complexity of
7  the machinery in question." *Id.* at *3 (citation omitted). And it noted that the "case present[ed] a
8  close question regarding the level of factual specificity necessary," but ultimately found that
9  "automatic transmissions," including the "Dual Dry-Clutch Transmissions ('DDCT')" at issue,
10 "are complicated systems that demand more detailed factual allegations in order to identify a
11 plausible defect." *Id.* at *1, 3.

12     The Court does not need to decide here whether to adopt as a general rule *DeCoteau*'s
13 approach to evaluating pleadings alleging a defect. It is enough to note that while Tesla contends
14 that specific supporting facts are necessary for cases involving "complex automotive systems," *see*
15 Mot. at 4, it does not persuasively establish that the Suspension Defect alleged is so complex as to
16 require any higher level of specificity than is pled in the complaint. It is also worth noting that the
17 court in *DeCoteau* did not appear to have before it additional allegations plausibly tending to show
18 the existence of the alleged defect, such as internal communications and NHSTA complaints about
19 the suspension system. Here, viewing the allegations as a whole and in the light most favorable to
20 Plaintiff, the Court finds that Plaintiff has adequately alleged a defect. Accordingly, the Court
21 **DENIES** Tesla's motion to dismiss the complaint on this ground.

22     **B.     Breach of Express and Implied Warranty Claims**
23          **i.     Express Warranty**
24     "The general rule is that an express warranty does not cover repairs made after the
25 applicable time or mileage periods have elapsed." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d
26 1017, 1023 (9th Cir.2008) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824,
27 830 (2006)); *Seifi v. Mercedes-Benz USA, LLC*, No. C12-5493 TEH, 2013 WL 2285339, at *3
28 (N.D. Cal. May 23, 2013) (same). Tesla contends that Plaintiff's breach of express warranty

claims fail because his NVLW expired before he presented his vehicle for repair. Mot. at 5. Plaintiff purchased his Model S in September 2014. FAC ¶ 14. Plaintiff alleges that his warranty "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla that occur under normal use for a period of 4 years or 50,000 miles (80,000 km), whichever comes first." *Id.* at ¶ 133. Plaintiff brought his Model S to the vehicle center on November 6, 2019 with "58,057 miles on the odometer." *Id.* at ¶ 48–50. Plaintiff does not appear to dispute that he sought the relevant repair nearly a year and over 8,000 miles after his warranty expired. *See* Mot. at 5.

Plaintiff instead points to its allegations that the warranty's durational limitation is unconscionable, *see* FAC ¶¶ 141–42, and notes that Tesla fails to address the alleged unconscionability. Plaintiff contends that when "a complaint alleges facts suggesting that a provision may be unconscionable, to enforce that provision, a defendant is required to establish that it is not unconscionable." Opp. at 9 (citing *Williams v. California Physicians' Serv.*, 72 Cal. App. 4th 722, 742 (Ct. App. 1999)). But the Court finds *Williams* inapposite as it discusses the burden shifting standard at the summary judgment stage. *See* 72 Cal. App. 4th at 742 (noting that "a defendant who relies on contract terms in moving for summary judgment need not establish the contract is not unconscionable, unless the plaintiff's complaint alleged facts suggesting unconscionability").

"Unconscionability is a question of law for the court." *Seifi*, 2013 WL 2285339, at *4 (citation omitted). Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *Armendariz v. Foundation Health Psychcare Svcs. Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000). Procedural and substantive unconscionability need not be present in equal amounts. *Id.* The two are evaluated on a "sliding scale," which means that the more evidence of procedural unconscionability there is, the less evidence of substantive unconscionability is needed to render the agreement unenforceable, and vice versa. *Id.* However, both forms of unconscionability must be present in some amount "for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1521 (Ct. App. 1997), *as modified* (Feb. 10,

1997).

Procedural unconscionability exists when the contract reflects "inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' " *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 808, (Ct. App. 2006) (citation omitted). Plaintiff alleges that there was "no meaningful choice in determining the[] time limitations, the terms of which unreasonably favored Tesla" and that a "gross disparity in bargaining power existed . . . because Tesla knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives." FAC ¶ 142. Plaintiff alleges that Tesla knew about the Suspension Defect when Plaintiff purchased his Model S through its own manufacturing and data-gathering processes, including "records of customer complaints, dealer repair records, records from NHTSA, warranty and post-warranty claims, internal pre-sale durability testing, and other various sources." *Id.* at ¶ 28. Plaintiff further alleges that because "Tesla sells its vehicles directly to consumers . . . Tesla can, and does, vigorously monitor and control data reflecting the replacement rate of parts on its vehicles, customer complaints, and warranty and post-warranty claims."[1] *Id.* Plaintiff contends that these allegations raise a "reasonable inference" that "Tesla knew of the Suspension Defect at the time of selling the Class Vehicles." *Id.* at ¶ 29. If Tesla "failed to disclose a known defect . . . posing a safety concern and necessitating a major repair, this failure deprived Plaintiffs of the information they needed to make a meaningful choice between the vehicles they purchased and others available on the market." *See Seifi*, 2013 WL 2285339, at *4.

But even accepting as true Plaintiff's allegation that Tesla knew about the Suspension Defect, Plaintiff has not alleged facts showing the warranty was substantively unconscionable. Substantive unconscionability "focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.' " *Aron*, 143

---

[1] Plaintiff alleges that "arguably more than any other auto manufacturer, Tesla vigorously monitors and controls the data reflecting the rate of replacement of parts of its vehicles, customer complaints, and warranty claims. Tesla has in fact bragged about its level and knowledge over such information, stating: '[s]ince we own all of our service centers, . . . we are aware of every part that gets replaced.' " *Id.* at ¶ 29 n.2.

8

1  Cal. App. 4th at 808 (citation omitted).  Nothing in the complaint suggests the warranty terms are
2  overly harsh or so one-sided as to shock the conscience, and the Court views it as somewhat
3  unlikely that a routine time-and-miles limit in a car warranty would rise to that level.  *See Seifi*,
4  2013 WL 2285339, at *5 (finding the plaintiffs failed to plead that warranty at issue "covering
5  repairs needed within 48 months or 50,000 miles of retail purchase" was substantively
6  unconscionable).  Accordingly, Plaintiff's substantive unconscionability argument fails.

7  Because Plaintiff sought repairs after the warranty expired and Plaintiff has not alleged
8  facts showing the durational limits are unconscionable, the Court **DISMISSES** Plaintiff's breach
9  of express warranty claims **WITH LEAVE TO AMEND**.  The Court urges Plaintiff to consider
10 carefully whether it can truthfully plead facts sufficient to plausibly clear the "shock the
11 conscience" bar before simply repeating this unconscionability argument in any amended
12 complaint.

### ii. Implied Warranty

#### a. Durational limitation

15 Because Tesla imposes the same durational limit for implied warranties, Tesla contends
16 that Plaintiff's implied warranty claim also fails because "any implied warranty had likewise
17 expired."  Mot. at 6.  Plaintiff does not dispute that Tesla may impose limitations on its implied
18 warranties, but argues that the Court cannot consider the NVLW booklet Tesla attached to its
19 motion as an exhibit.  *See* Dkt. No. 36-1.  Plaintiff contends that there is uncertainty about its
20 relevance because it was published in 2017 and it thus "cannot be established that the specific
21 version of the warranty Tesla has presented is the one that existed when Ma purchased his
22 vehicle."  Opp. at 11.  Given this uncertainty, the Court does not find the exhibit is an appropriate
23 subject for incorporation by reference and does not decide whether the durational limitation is
24 sufficiently "conspicuous."  *See* Opp. at 11.  However, as described below, the Court finds that the
25 implied warranty claim is nonetheless time-barred.

#### b. Statute of limitations

27 Tesla contends that the claim is time-barred because the statute of limitations on Plaintiff's
28 claim expired on September 6, 2018, four years after tender.  Mot. at 6 (citing Cal. Com. Code §

1  2725(2)). Plaintiff responds that his implied warranty claim is tolled under California's delayed

2  discovery rule. Opp. at 13. But this Court, among others in this district, has found that the

3  delayed discovery rule does not apply to implied warranty claims. *See*, *e.g.*, *Mandani v.*

4  *Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2020 WL 3961975, at *2–3 (N.D. Cal.

5  July 13, 2020); *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 855 (N.D. Cal. 2020).

6  Because more than four years elapsed between Plaintiff's September 2014 purchase of the car and

7  the November 2020 initiation of the present action, Plaintiff's claim is time-barred. Accordingly,

8  the Court **DISMISSES** Plaintiff's breach of implied warranty claims **WITHOUT LEAVE TO**

9  **AMEND**.

### C. MMWA Claim

Tesla contends, and Plaintiff does not dispute, that Plaintiff's MMWA claim hinges on his express and implied warranty claims. *See* Mot. at 6; Opp. at 13. Because Plaintiff fails to allege a viable warranty claim, the Court **DISMISSES** Plaintiff's MMWA claim **WITH LEAVE TO AMEND**. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) (citation omitted) ("Claims under the Magnuson–Moss Warranty Act 'stand or fall with . . . express and implied warranty claims under state law.' "). Plaintiff is granted leave to amend the MMWA claim only with respect to the express warranty.

### D. Fraud-Based Claims

Plaintiff brings fraud-based claims under the CLRA, UCL, FAL, and for fraudulent concealment. Tesla move to dismiss Plaintiff's' claims for several reasons: (1) Plaintiff fails to meet the Rule 9(b) pleading standard; (2) Plaintiff fails to plead knowledge; (3) Plaintiff fails to plead any affirmative representation; and (4) the economic loss rule bars the fraudulent concealment claim. Mot. at 8–14. Because the Court finds dismissal warranted for the first reason, the Court does not address Tesla's other arguments.

#### iii. Rule 9(b)

Tesla argues that Plaintiff fails to plead his CLRA claim, UCL claim, FAL claim, and common law fraudulent concealment claim with the required particularity. Mot. at 7. Tesla contends that "[a]verments of fraud must be accompanied by the who, what, when, where, and

10

how of the misconduct charged." Mot. at 7. Plaintiff responds that a different pleading standard applies for pleading omissions as opposed to affirmative misrepresentations.[2] Opp. at 15. With respect to the applicable pleading standard for omissions, the parties each reference the requirements set out in *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). Mot. at 8; Opp. at 15; Reply at 8. In *Marolda*, the court held that the plaintiff "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." 672 F. Supp. 2d at 1002.

With respect to the content of the omission, Plaintiff contends that "Tesla should have disclosed the nature of the [S]uspension [D]efect when he purchased his vehicle from Tesla." Opp. at 15. Tesla correctly notes that Plaintiff fails to specify the allegations underlying this assertion, but the Court has identified some. *See*, *e.g.*, FAC ¶ 99 (alleging that Tesla concealed that "the Class Vehicles suffer from the Suspension Defect"). As to the placement of the omitted information, Plaintiff contends that "Tesla could and should have disclosed the alleged defect on the 'Monroney' sticker that it placed on the vehicle, which Plaintiff reviewed before purchasing the car." Opp. at 16. According to Plaintiff, the Monroney sticker includes "standard and optional equipment, pricing, and warranty details." *Id.* Tesla contends that the Court cannot consider this argument because Plaintiff does not actually allege in the complaint that he reviewed the Monroney sticker prior to purchase. Reply at 8. The Court agrees. Moreover, Plaintiff fails to plead with particularity exactly what he claims should have been disclosed, and how.

Because Plaintiff has not alleged the omission with the required particularity, the Court **DISMISSES** Plaintiff's fraud-based claims **WITH LEAVE TO AMEND**.

### E. Equitable and Injunctive Relief Claims

Plaintiff seeks equitable and injunctive relief pursuant to his claims under the CLRA, UCL, and FAL. FAC ¶¶ 95 (CLRA), 105 (UCL), 113 (FAL). Tesla contends that because these claims

---

[2] The Court construes Plaintiff's response to represent that he is not pursuing an affirmative misrepresentation theory.

11

do not satisfy the inadequate-remedy-at-law doctrine, Plaintiff cannot seek equitable or injunctive relief, including restitution and an injunction. Tesla relies on the Ninth Circuit's recent decision in *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020), *opinion amended and superseded on denial of reh'g*, 971 F.3d 834 (9th Cir. 2020).

Plaintiff's response is brief and does not discuss *Sonner*, any of the other authorities that Tesla cites, or any case addressing the doctrine at issue. Plaintiff contends that "just because [he] alleges legal remedies does not mean he lacks other remedies." Opp. at 22. This point does little to address Tesla's argument that Plaintiff "must establish that []he lacks an adequate remedy at law before securing equitable restitution for past harm." Reply at 14 (citing *Sonner*, 971 F.3d at 844). But it appears that Plaintiff concedes that the doctrine bars any request for restitution and instead focuses his argument on his allegations relating to injunctive relief. *See* Opp. at 1, 22–23.

Plaintiff argues that he "is entitled to an injunction against Tesla's unfair business practices, including its sale of unsafe vehicles bearing the Suspension Defect."[3] *Id.* at 23. Plaintiff contends that the complaint "sufficiently alleges that the Suspension Defect poses not only a monetary harm to Ma, but a safety problem as well." *Id.* To support his contention, Plaintiff points to the single allegation describing the China State Administration for Market Regulation's ("SAMR") findings:

> When some of vehicles within the scope of the recall are subjected to a large external impact, the ball studs of the rear connecting rod of the front suspension will have initial cracks. The cracks may extend and cause the ball studs to break when the vehicle continues to be used. In extreme cases, the ball-end cone seat may come out of the steering knuckle, affecting the control of the vehicle, increasing the risk of accidents, and posing safety risks.
> . . .
> When some vehicles within the scope of this recall are subjected to a large external impact, the upper connecting rod of the rear suspension may be deformed. When the vehicle is continued to be used, the component will be further weakened. In extreme cases, it may break and affect the control of the vehicle. Increase the risk of accidents, and there are hidden safety hazards.

---

[3] In the complaint, Plaintiff requests various forms of relief, including that the Court "grant appropriate injunctive and/or declaratory relief and public injunctive relief, including, without limitation, an order that requires Tesla to repair, recall, and/or replace the defective suspension components of the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence of the Suspension Defect." FAC at 97 ("Prayer for Relief").

FAC ¶ 21. Plaintiff argues that "[w]ithout an injunction, these dangerous vehicles continue to put Americans at risk." Opp. at 2. But Plaintiff has not pointed to any allegation claiming that remedies at law are inadequate. Given that the Court is granting leave to amend some of the claims, the Court also grants Plaintiff leave to amend to allege that remedies at law are inadequate and to support his claim to any form of equitable or injunctive relief. Accordingly, the Court **DISMISSES** these claims **WITH LEAVE TO AMEND**.[4]

## IV. CONCLUSION

The Court **GRANTS** Tesla's motion to dismiss as to all claims. Dismissal is with leave to amend, except as otherwise stated above. Any amended complaint must be filed within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 6/21/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] Plaintiff also did not address Tesla's contention that Plaintiff "must plead facts showing he is likely to be harmed in the future." *See* Mot. at 13 (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)). To the extent Tesla challenges Plaintiff's standing to pursue injunctive relief, the Court also grants Plaintiff leave to amend to demonstrate that he has standing to bring a claim on behalf of the class.

13