Michael L. Mallow (SBN 188745)
mmallow@shb.com
Rachel A. Straus (SBN 268836)
rstraus@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, CA 90067-3204
Tel: (424) 285-8330 | Fax:  (424) 204-9093

Amir Nassihi (SBN 235936)
anassihi@shb.com
Nalani Crisologo (SBN 313402)
ncrisologo@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant
TESLA INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZACHERY WILLIAMS and MICHAEL MA, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TESLA, INC. and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 4:20-cv-08208-HSG<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF MICHAEL MA'S CLAIMS ALLEGED IN THE SECOND AMENDED COMPLAINT**<br><br>Date:  November 18, 2021<br>Time:  2:00 p.m.<br>Courtroom:  2 |

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 18, 2021 at 2:00 p.m., before the Honorable Haywood S. Gilliam Jr. in Courtroom 2 of the United States District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, CA 94612, Defendant Tesla, Inc., will and hereby does move the Court for an order granting Tesla's Motion to Dismiss Plaintiff Michael Ma's Claims Alleged in the Second Amended Complaint, pursuant to Rule 12(b)(6).

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, all pleadings and papers on file in this action, and such further evidence and argument as may be presented at or before the hearing on this matter.

Dated:  August 23, 2021

SHOOK HARDY & BACON L.L.P.

By:     */s/ Rachel A. Straus*
        Amir Nassihi
        Michael L. Mallow
        Rachel A. Straus
        Nalani Crisologo

Attorneys for Defendant
TESLA, INC.

Michael L. Mallow (SBN 188745)
mmallow@shb.com
Rachel A. Straus (SBN 268836)
rstraus@shb.com
SHOOK, HARDY & BACON L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, CA 90067-3204
Tel: (424) 285-8330 | Fax: (424) 204-9093

Amir Nassihi (SBN 235936)
anassihi@shb.com
Jason M. Richardson (SBN 250916)
jmrichardson@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendant
TESLA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZACHERY WILLIAMS, MICHAEL MA, and JOHN DITEMAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>TESLA, INC. and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 4:20-cv-08208-HSG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TESLA, INC.'S MOTION TO DISMISS PLAINTIFF MICHAEL MA'S CLAIMS ALLEGED IN THE SECOND AMENDED COMPLAINT**<br><br>Date:  November 18, 2021<br>Time:  2:00 p.m.<br>Courtroom:  2 |

1

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

INTRODUCTION ............................................................................................................... 1

FACTS AND PROCEDURAL HISTORY ........................................................................... 2

STANDARDS GOVERNING THIS MOTION .................................................................... 2

ARGUMENT ...................................................................................................................... 3

    I. Ma's CLRA (Count I), UCL (Count II), FAL (Count III), and Fraudulent Concealment (Count IV) Claims Should be Dismissed.................................................................... 3

        A. Ma Does Not Allege An Actionable Affirmative Misrepresentation................................ 3

        B. Ma Does Not Allege a Plausible Concealment or Omission-Based Claim. ..................... 4

            1. Ma Alleges No Partial Representation with Particularity................................................ 4

            2. Ma's "Active Concealment" Theory Fails for the Same Reason. ................................ 5

            3. Ma's "Pure Omission" Claim is Inadequate. ................................................................. 5

                a. Ma Still Fails to Allege with Particularity Exactly what Tesla Should Have Disclosed and How. ................................................................................................. 5

                b. Ma Fails to Adequately Allege Tesla's Pre-Sale Knowledge of the Alleged Defect. 7

        C. The Economic Loss Rule Bars Ma's Fraudulent Concealment Claim (Count IV). ........... 9

    II. Ma's Claims for Equitable Relief Fail. ........................................................................... 13

        A. Ma Does Not Plausibly Allege Legal Remedies Would be Inadequate so as to Justify His Claim for Injunctive Relief or any other Equitable Relief.......................................... 13

        B. Ma Also Fails to Establish Standing for His Injunctive Relief Claim............................. 17

CONCLUSION.................................................................................................................... 19

i

### TABLE OF AUTHORITIES

**Cases** ................................................................................................................ **Page(s)**

*Aguila v. Gen. Motors LLC,*
No. 1:13-CV-00437-LJO, 2013 WL 3872502 (E.D. Cal. July 25, 2013) ...................................8

*Ahern v. Apple Inc.,*
411 F. Supp. 3d 541 (N.D. Cal. Oct. 11, 2019) ...............................................3

*Ajetunmobi v. Clarion Mortg. Capital, Inc.,*
595 F. App'x 680 (9th Cir. Dec. 12, 2014) ...............................................4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...............................................2

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................2

*Blissard v. FCA US LLC,*
No. LA CV18-02765 JAK (JEMx), 2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ...................9

*Brand v. Nissan North America, Inc.,*
No. CV 16-07378-BRO, 2017 WL 11610901 (C.D. Cal. Feb. 24, 2017) ...............................16

*Browning v. Am. Honda Motor Co.,*
No. 20-CV-05417-BLF, -- F.Supp.3d --, 2021 WL 3022007 (N.D. Cal. July 16,
2021) ...............................................6

*Bui v. Mercedes-Benz USA, LLC,*
No. 20-cv-1530-CAB, 2021 WL 242936 (S.D. Cal. Jan. 25, 2021) ...............................12

*Burdt v. Whirlpool Corp.,*
No. C 15–01563 JSW, 2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) ...............................9

*Cal. Chamber of Commerce, v. Xavier Becerra,*
No. 2:19-cv-02019-KJM-EFB, 2021 WL 1193829 (E.D. Cal. March 30, 2021) .....................17

*Clark v. American Honda Motor Co., Inc.,*
CV 20-03147 AB, -- F.Supp.3d --, 2021 WL 1186338 (C.D. Cal. Mar. 25, 2021) ..........14, 15, 16

*Consumer Advocs. v. DaimlerChrysler Corp.,*
No. G029811, 2005 WL 327053 (Cal. Ct. App. Jan. 31, 2005) (unpub.) ...............................16

*Crystal Springs Upland School v. Fieldturf USA,*
Inc., 219 F. Supp. 3d 962 (N.D. Cal. Nov. 7, 2016) ...............................12

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018) ...............................17

*Depot, Inc. v. Caring for Montanans, Inc.*,
 915 F.3d 643 (9th Cir. 2019) .......................................................................................3

*Drake v. Toyota Motor Co.*,
 No. 2:20-cv-01421-SB, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ........................16

*Durkee v. Ford Motor Co.*,
 2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ...............................................................16

*Eisen v. Porsche Cars N. Am., Inc.*,
 No. CV 11-9405 CAS, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) .........................4, 5

*Espineli v. Toyota Motor Sales, U.S.A., Inc.*,
 No. 2:17-cv-00698-KJM-CKD, 2019 WL 2249605 (E.D. Cal. May 24, 2019) .........3, 4

*Gibson v. Jaguar Land Rover N. Am., LLC*,
 No. CV 20-00769-CJC-GJSX, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) .........14, 16

*Gomez v. Carmax Auto Superstores Cal., LLC*,
 No. 2:14-CV-09019-CAS, 2015 WL 350219 (C.D. Cal. Jan. 22, 2015) .........................4

*Gonzalez v. Ford Motor Co.*,
 No. CV 19-652 PA (ASX), 2019 WL 1364976 (C.D. Cal. Mar. 22, 2019) ...................16

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
 525 Fed. Appx. 94 (3d Cir. 2013) .................................................................................9

*Great Pac. Secur. v. Barclays PLC*,
 No. CV 14-1210, 2016 WL 11502178 (C.D. Cal. Oct. 19, 2016) .................................4

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
 No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) .................8

*Hawyuan Yu v. Dr Pepper Snapple Group, Inc.*,
 No. 18-cv-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ...........................18

*Herron v. Best Buy Co., Inc.*,
 924 F. Supp. 2d 1161 (E.D. Cal. 2013) .........................................................................5

*Hsieh v. FAC US LLC*,
 No. 19-cv-01691-W-AHG, 2020 WL 835310 (S.D. Cal. Feb. 20, 2020) .....................12

*In re Apple Inc. Device Perf. Litig*,
 347 F. Supp. 3d 434 (N.D. Cal. 2018) ...........................................................................4

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
 295 F. Supp. 3d 927 (N.D. Cal. 2018) .......................................................................3, 4

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp.
 3d 838 (C.D. Cal. 2020) ...............................................................................................12

*In re MacBook Keyboard Litig.*,
    No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .....................................14

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. Mar. 5, 2018) ............................................................................7

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ....................................................................................................3, 5

*Klaehn v. Cali Bamboo, LLC*,
    No. 19CV1498-LAB (KSC), 2020 WL 3971518 (S.D. Cal. July 13, 2020) ...............................14

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) .......................................................................................................4, 5

*Loo v. Toyota Motor Sales, USA, Inc.*,
    No. 8:19-cv-00750-VAP, 2020 WL 4187918 (C.D. Cal. Apr. 10, 2020).....................................16

*Loo v. Toyota Motor Sales, USA, Inc.*,
    No. 819CV00750VAPADSX, 2019 WL 7753448 (C.D. Cal. Dec. 20, 2019)...............................16

*Macias v. Fiat Chrysler*,
    ED CV 17-511, 2020 WL 4723976 (C.D. Cal. Aug. 13, 2020) ....................................................11

*Mandani v. Volkswagen*,
    17-cv-07287-HSG, 2019 WL 652867 (N.D. Feb. 15, 2019) ......................................................8, 9

*Mosqueda v. Am. Honda Motor Co., Inc.*,
    No. SACV 19839-MWF-MAAX, 2020 WL 1698710 (C.D. Cal. Mar. 6, 2020).........................12

*Nafisi v. Mercedes-Benz USA, LLC*,
    CV 20-9309 PA, 2021 WL 2525454 (C.D. Cal. Mar. 31, 2021)..................................................12

*Nguyen v. Nissan N. Am., Inc.*,
    No. 16-CV-05591-LHK, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ......................................16

*North Am. Chem. Co. v. Superior Court*,
    59 Cal. App. 4th 764 (1997) ........................................................................................................10

*Pelayo v. Hyundai Motor Am., Inc.*,
    No. 820CV01503JLSADS, 2021 WL 1808628 (C.D. Cal. May 5, 2021)..............................6, 16

*Philips v. Ford Motor Co.*,
    No. 14–CV–02989–LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015), *aff'd*, 726
    F. Appx. 608 (9th Cir. 2018)........................................................................................................16

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ......................................................................................................9, 10, 11

*Roe v. Ford Motor Co.*,
  2:18-cv-12528-LJM-APP, 2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) ....................................7

*Rubenstein v. The Gap, Inc.*,
  14 Cal. App. 5th 870 (2017) ........................................................................................................4

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
  No. CV 15-8629 FMO (EX), 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016) .............................17

*Seely v. White Motor Co.*,
  63 Cal. 2d 9 (1965) .............................................................................................................10, 11

*Shamamyan v. FCA US LLC*,
  No. CV 19-5422-DMG, 2020 WL 3643481 (C.D. Cal. Apr. 1, 2020) ......................................6, 7

*Shanks v. Jarrow Formulas, Inc.*,
  No. LA CV 18-09437, 2019 WL 7905745 (C.D. Cal. Dec. 27, 2019) .........................................18

*Sloan v. Gen. Motors LLC*,
  No. 16-cv-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) .......................................12

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...............................................................................................13, 14

*Stewart v. Electrolux Home Prods., Inc.*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018) .......................................................................................5, 12

*Stockinger v. Toyota Motor Sales USA Inc.*,
  No. LACV1700035VAPKLSX, 2017 WL 10574372 (C.D. Cal. July 7, 2017) ...........................16

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .......................................................................................................3

*Thompson v. BMW of N. Am., LLC*,
  No. SACV 17-01912-CJC, 2019 WL 988694 (C.D. Cal. Jan. 10, 2019) ....................................12

*Traba v. Ford Motor Co.*,
  No. 2:18-cv-00808-SVW-GJS, 2018 WL 6038302 (C.D. Cal. June 27, 2018) ..........................12

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................................................................17

*Vess v. Ciba-Geigy Corp., USA*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................................................................3

*Victorino v. FCA US LLC*,
  No. 16CV1617-GPC(JLB), 2018 WL 1083395 (S.D. Cal. Feb. 27, 2018) ...................................8

*Watkins v. MGA Ent., Inc.*,
No. 21-CV-00617-JCS, -- F.Supp.3d --, 2021 WL 3141218 (N.D. Cal. July 26, 2021) ..........................................................................................................15, 18

*Williams v. Tesla, Inc.*,
20-cv-08208-HSG, 2021 WL 2531177 (N.D. Cal. June 21, 2012) ..................................... *passim*

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) ............................................................................................7

*Yothers v. JFC International, Inc.*,
Case No. 20-cv-01657-RS, 2020 WL 5015262 (N.D Cal. May 14, 2020)...................................18

*Zagarian v. BMW of N. Am., LLC*,
No. CV 18-4857-RSWL, 2019 WL 6111731 (C.D. Cal. Oct. 23, 2019) ......................................12

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................................2, 3

Fed. R. Civ. P. 9(b) ...................................................................................................................3, 6

Fed. R. Civ. P. 12(b)(6).................................................................................................................1

Fed. R. Civ. P. 65(d) ....................................................................................................................17

**STATEMENT OF ISSUES TO BE DECIDED**

**(Civil Local Rule 7-4(a)(3))**

Tesla, Inc. seeks to have Plaintiff Michael Ma's claims as pled in the Second Amended Complaint ("SAC") dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1]

**INTRODUCTION**

On June 21, 2021, this Court dismissed with leave to amend all of Michael Ma's claims alleging that his 2014 Model S suffered from "one or more latent defects" in its suspension system that could cause seven different components to allegedly "prematurely loosen, wear, crack and/or break" ("Alleged Defect"). In response to the Court's strong suggestion that Ma could not pursue warranty claims against Tesla for an alleged "rattling noise," Ma is no longer pursuing any warranty claims.

Unable to assert a viable warranty claim, Ma improperly attempts to shift responsibility for the post warranty repair to fix the alleged rattling noise to Tesla by resorting to accusations of fraud and asserting Tesla violated various California consumer protection statutes by misrepresenting or omitting information about the Alleged Defect. Not only is there no factual or legal basis to force Tesla to cover the repair cost that is, and should be, Ma's responsibility as a vehicle owner, but – despite the Court providing Ma a roadmap for pleading viable fraud and California Consumer Protection claims—the same deficiencies remain, along with a host of others. Ma's pleading deficiencies include: (1) failure to plead his claims with the specificity required by Rule 9(b), (2) failure to allege a misrepresentation, (3) failure to allege a legal duty to disclose any allegedly omitted information, (4) failure to allege presale knowledge of the Alleged Defect; and (5) ignoring the economic loss rule that bars his fraudulent concealment claim. Additionally, despite the Court's clear instructions to Ma that in order to pursue equitable and injunctive relief claims, he must "allege that remedies at law are inadequate and support his claim to any form of equitable or injunctive relief," Ma (once again) fails to properly allege those claims.

---

[1] Per the Court's August 11, 2021 order of the parties' August 6, 2021 stipulation (Dkt. No. 57), the claims of Zachery Williams and John Diteman, the other named plaintiffs, are stayed until after the Court's decision on Tesla's Motion to Dismiss Ma's claims.

1   In short, Ma's claims should again be dismissed in their entirety, and this time, without

2   further leave to amend.

3   ### FACTS AND PROCEDURAL HISTORY

4   After purchasing a new 2014 Model S from Tesla online, Ma took delivery of the vehicle on

5   September 9, 2014. SAC ¶ 14. Ma's vehicle came with a NVLW that expired the earlier of 4 years or

6   50,000 miles after purchase. *Id*.[2]

7   Beginning in October 2019—more than five years after he purchased his Model S—Ma

8   alleges he heard a rattling noise from the front of his vehicle when driving on rough roads at speeds

9   of 25 mph or more. *Id*. at ¶ 62. On November 6, 2019—more than a year after his warranty

10  expired—Ma took his vehicle to a Tesla service center. *Id*. at ¶ 63. Tesla replaced the front lower

11  fore links and strut bolts pursuant to "goodwill" and at no charge to Ma. *Id*. at ¶ 65. Ma also paid

12  $1,320.12 to replace the lower aft fore links. *Id*. at ¶ 64. Ma does not allege the repair failed to

13  remedy the alleged rattling noise.

14  In the SAC, Ma alleges claims for violating: (1) California's Consumers Legal Remedies Act

15  ("CLRA"), (2) Unfair Competition Law ("UCL"), and (3) False Advertising Law ("FAL"), along

16  with a fraudulent concealment claim. SAC ¶¶ 94-129. Ma seeks to represent "all persons or entities

17  in the state of California who are current and former owners and/or lessees of a Class Vehicle."[3]

18  SAC ¶ 86.

19  ### STANDARDS GOVERNING THIS MOTION

20  A complaint must allege enough facts to state a claim that is plausible on its face. *Ashcroft v.*

21  *Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R.

22  Civ. P. 8. Labels, conclusions, and mere assertions are not "facts" entitled to the presumption of

23  truth. *Iqbal*, 556 U.S. at 678–79. If "the well-pleaded facts do not permit the court to infer more than

24

25

---

26  [2] Ma erroneously stated that the NVLW is 4 years/80,000 miles. Ma subsequently conceded, it is 4
    years/50,000 miles. Dkt. 37 at 9.

27

28  [3] Ma defines "Class Vehicles" as Model S (sedan) and Model X (SUV) vehicles produced between
    September 17, 2013 and October 15, 2018. SAC ¶ 1.

1    the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the

2    pleader is entitled to relief." *Id.* at 678–79 (quoting Rule 8).

3         In addition to meeting Rule 8, all of Ma's claims whether they are premised on an alleged

4    misrepresentation or omission are subject to the heightened pleading requirements of Rule 9(b), and

5    thus, must be pled with the requisite particularity. *See Williams v. Tesla, Inc.*, 20-cv-08208-HSG,

6    2021 WL 2531177 at * 7 (N.D. Cal. June 21, 2012) ("*Williams* I").

7                                              **ARGUMENT**

8    **I.    Ma's CLRA (Count I), UCL (Count II), FAL (Count III), and Fraudulent Concealment**

9          **(Count IV) Claims Should be Dismissed.**

10        **A.    Ma Does Not Allege An Actionable Affirmative Misrepresentation.**

11        Although still unclear, it appears Ma may be attempting to assert an affirmative

12   misrepresentation claim. *See*, *e.g.*, SAC ¶ 89(c). Rule 9(b) requires the "who, what, when, where,

13   and how" of the alleged fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

14   2009) (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). The rule

15   requires "an account of the 'time, place, and specific content of the false representations as well as

16   the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764

17   (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). It

18   requires specific facts showing "what is false or misleading about a statement, and why it is

19   false." *Vess*, 317 F.3d at 1106.

20        To the extent Ma's allegations could be construed as attempting to allege any affirmative

21   misrepresentation, his claims fall decidedly short. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915

22   F.3d 643, 667–68 (9th Cir. 2019). Nowhere does Ma identify any specific misrepresentation from

23   Tesla concerning the Alleged Defect. Nor does he allege that he actually saw or heard any allegedly

24   misleading statements or relied on them prior to making his purchase. *Ahern v. Apple Inc.*, 411 F.

25   Supp. 3d 541, 578–79 (N.D. Cal. Oct. 11, 2019) (dismissing misrepresentation claim for this

26   reason); *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00698-KJM-CKD, 2019 WL

27   2249605, at *5 (E.D. Cal. May 24, 2019) (same); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales*

28   *Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 987–88 (N.D. Cal. 2018) (dismissing plaintiffs'

3

1  claims based on a misrepresentation because plaintiffs did not identify with sufficient specificity the

2  misrepresentation and did not allege any named plaintiff actually saw the alleged misrepresentation).

3  Thus, to the extent any of Ma's claims are premised on an alleged misrepresentation, they must be

4  dismissed.

5  **B.    Ma Does Not Allege a Plausible Concealment or Omission-Based Claim.**

6  To state plausible omission or concealment-based claims, Ma must, among other things,

7  sufficiently allege Tesla had a duty to disclose the allegedly missing information. Under California

8  law, such a duty can exist only in four situations: (1) the defendant was plaintiffs' fiduciary; (2) the

9  defendant made a partial representation to the plaintiff that was misleading because it omitted a

10  material fact; (3) the defendant actively concealed a material fact from the plaintiff; or (4) the

11  defendant had exclusive (or at least superior) knowledge of material facts it knew the plaintiff did

12  not have. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997); *see Rubenstein v. The Gap, Inc.*, 14

13  Cal. App. 5th 870, 877, 879 (2017) (reaffirming *LiMandri* framework and reiterating importance of

14  establishing a duty to disclose). Ma does not allege (nor can he) that Tesla was his fiduciary. He also

15  fails to allege facts supporting the other theories.

16  **1.    Ma Alleges No Partial Representation with Particularity.**

17  As explained above, Ma has not alleged any representations with particularity, full or partial.

18  His omission-based claims therefore fail to the extent they are based on partial

19  misrepresentations. *See, e.g., Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x 680 (9th Cir.

20  Dec. 12, 2014) (agreeing that plaintiff failed to specify which representation was

21  incomplete); *Espineli v. Toyota Motor Sales, Inc.*, No. 2:17-cv-00698-KJM-CKD, 2019 WL

22  2249605, at *4-5 (E.D. Cal. May 24, 2019); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg Sales

23  Practices & Prod. Liab. Litig*, 295 F. Supp. 3d 927, 987-88 (N.D. Cal. 2018); *In re Apple Inc.

24  Device Perf. Litig*, 347 F. Supp. 3d 434, 462 (N.D. Cal. 2018); *Great Pac. Secur. v. Barclays PLC*,

25  No. CV 14-1210, 2016 WL 11502178, at *8-9 (C.D. Cal. Oct. 19, 2016); *Gomez v. Carmax Auto

26  Superstores Cal., LLC*, No. 2:14-CV-09019-CAS, 2015 WL 350219, at *1, 8-9 (C.D. Cal. Jan. 22,

27  2015); *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3

28  (C.D. Cal. Feb. 22, 2012).

**2.  Ma's "Active Concealment" Theory Fails for the Same Reason.**

As is often the case, Ma's "active concealment" theory is just the partial-misrepresentation theory with a different label. *See* SAC ¶¶ 51-52 (section captioned "Tesla's Active Concealment of the Suspension Defect"). According to Ma, in response to customer complaints about the Alleged Defect, Tesla "issued several Technical Service Bulletins to address customers' complaints" about the Alleged Defect rather than recalling the vehicles. *Id*. In other words, Tesla allegedly tried to "actively conceal" the defect by publicly stating one thing in the TSBs, but omitting material facts. That is the partial-misrepresentation theory, not active concealment.

As *LiMandri* makes clear, partial misrepresentation and active concealment are two different things. *LiMandri*, 52 Cal. App. 4th 336. Accordingly, courts have held that a claim of active concealment requires allegations of "affirmative acts on the part of the defendants in hiding, concealing or covering up" the alleged defect. *Herron v. Best Buy Co., Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) (quoting *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (1963). Ma alleges no such affirmative acts.

**3.  Ma's "Pure Omission" Claim is Inadequate.**

**A.  Ma Still Fails to Allege with Particularity Exactly What Tesla Should have Disclosed and How.**

Ma's remaining theory is that, at the time he purchased his vehicle, Tesla had superior knowledge of a material fact that he did not know. Because this does not depend on partial representations or acts of concealment, it is sometimes referred to as a "pure omission" claim. Like any other fraud claim, a "pure omission" claim must be pled with particularity. *See Kearns*, 567 F.3d at 1127 ("the contention that ... nondisclosure claims need not be pleaded with particularity is unavailing"); *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 907 (E.D. Cal. 2018). As this Court made clear in its prior order, to support his "pure omission" claim, Ma "at a minimum must describe the content of the omission and where the omitted information should or could have been revealed." *Williams 1*, 2021 WL 2531177 at * 7 citing *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). Ma must also "provide representative samples of advertisements, offers, or other representations that [he] relied on to make

his purchase and that failed to include the allegedly omitted information." *Id*. Again Ma's allegations fall decidedly short, and there is no way to discern "what, exactly," Ma believes Tesla should have disclosed. *Browning v. Am. Honda Motor Co*., No. 20-CV-05417-BLF, -- F.Supp.3d --, 2021 WL 3022007, at *12 (N.D. Cal. July 16, 2021) (dismissing similar generic omission claims because "Plaintiffs have not specifically alleged the content of the omission and where the omitted information should or could have been revealed . . . . Based on the complaint, the Court cannot tell what, exactly, Plaintiffs wanted AHM to disclose") citing *Shamamyan v. FCA US LLC*, No. CV 19-5422-DMG (FFMx), 2020 WL 3643481, at *7-8 (C.D. Cal. Apr. 1, 2020).

In its previous order, this Court dismissed all of Ma's claims based on an omission because: (1) Ma failed to allege he actually saw the Monroney sticker, where Ma contends the allegedly omitted information should have been disclosed, and (2) Ma "failed to plead with particularity exactly what he claims should have been disclosed, and how." *Williams I*, 2021 WL 2531177 at * 7. Ma still fails to allege what it is that should have been disclosed, and where and when it should have been disclosed.

Ma now generically alleges that "Tesla should have disclosed on its website and on its Monroney sticker the nature of the Suspension Defect—that the Class Vehicles' front and rear suspension control arm assembly components tend to loosen, wear, crack, and/or break." SAC ¶ 73. As the Court noted in its June 21, 2021 Order, "Plaintiff does not actually allege in the [FAC] that he reviewed the Monroney sticker prior to purchase." *Williams I,* 2021 WL at 2531177 at * 7. Ma fails once again to do so in the SAC despite alleging Tesla should have disclosed the omitted information on the Monroney sticker.

Ma fares no better claiming the Alleged Defect should have been disclosed on Tesla's website. In the SAC, Ma now alleges that he "reviewed specific website pages regarding the qualities and characteristics of the Tesla Model S, including information about the Model S vehicle's construction, features, and capabilities." SAC ¶ 60. These type of boilerplate allegations (the same boilerplate allegations as Plaintiffs Williams and Diteman (*id*. at ¶¶ 53, 68) that merely gesture generally at some channel are too vague to satisfy Rule 9(b). *Pelayo v. Hyundai Motor Am., Inc.*, No. 8:20-CV-01503-JLS-ADS, 2021 WL 1808628, at *6 (C.D. Cal. May 5, 2021); *Shamamyan*, 2020

6

1  WL 3643481, at *8. In order to assert omission-based claims, Ma needed to plead, what webpages

2  he actually saw, when he saw them, and that he relied on the information on the website in deciding

3  to purchase his vehicle. *Id*. Ma makes no such allegations. Thus, Ma still fails to allege an actionable

4  omission and all of his claims premised on Tesla's alleged omission should be dismissed. *Williams I*,

5  2021 WL at 2531177 at * 7.

6          **B.      Ma Fails to Adequately Allege Tesla's Pre-Sale Knowledge of the**

7          **Alleged Defect.**

8          Additionally, in order to plausibly allege an omission-based claim, Ma must allege facts that

9  make it plausible Tesla knew of the Alleged Defect at the time he purchased his vehicle—*i.e.*, by

10 September 6, 2014. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017).

11 "After all, how could [Tesla] have intended to conceal something that it did not know would be

12 material to car buyers?" *Roe v. Ford Motor Co.*, 2:18-cv-12528-LJM-APP, 2019 WL 3564589, at *6

13 (E.D. Mich. Aug. 6, 2019) (citing Restatement (Second) of Torts § 550 (1977) and dismissing

14 fraudulent concealment claim under California and other state laws due to plaintiffs failing to

15 properly plead Ford's knowledge of the alleged defect).

16         Ma relies primarily on NHTSA consumer complaints in his attempt to allege Tesla knew of

17 the Alleged Defect at the time he purchased his 2014 Model S vehicle. The earliest complaint Ma

18 points to in his attempt to identify pre-sale knowledge is from June 21, 2016—nearly two years *after*

19 his purchase. This attempt does not come close to creating a plausible inference that Tesla knew

20 about a material defect in Ma's vehicle at the time of sale. *Id.*; *see also In re Nexus 6P Prods. Liab.*

21 *Litig.*, 293 F. Supp. 3d 888, 909–10 (N.D. Cal. Mar. 5, 2018) (post-purchase complaints could not

22 establish defendant's pre-purchase knowledge of a defect).

23         The three Technical Service Bulletins ("TSB") Ma points to and attaches to the SAC as

24 Exhibits 4-6 do not support Ma's allegations of pre-sale knowledge of the Alleged Defect. Ma does

25 not identify a single pre-sale TSB relating to the model year vehicle he purchased. The only TSB

26 that arguably applies to his 2014 Tesla (depending on build date) is the TSB issued on January 3,

27 2019—*over four years* after his purchase. *See* SAC Ex. 6.

28

The only TSB that Ma points to as evidence of Tesla's alleged presale knowledge that was allegedly issued before Ma purchased his vehicle is TSB 13-31-003: Front Lower Control Arm Washer Installation.[4] TSB 13-31-003 is not evidence of the Alleged Defect in Ma's 2014 vehicle. TSB 13-31-003 relates to "2012-2013 Model S vehicles." Ma provides no basis, as he must, to conclude that the same installation issue occurred with the front lower control arm washer in his vehicle. *Aguila v. Gen. Motors LLC*, No. 1:13-CV-00437-LJO, 2013 WL 3872502, at *5 (E.D. Cal. July 25, 2013) (rejecting plaintiff's allegation of pre-sale knowledge based on a TSB because it was not issued for the class vehicles and only addressed "sounds or noise rather than the functionality or safety of the steering systems"). Additionally, even if Ma had alleged that the same installation issue occurred with the front lower control arm washer in his vehicle, at best, TSB 13-31-003 demonstrates Tesla's knowledge of a "non-safety related condition" that could cause "a clicking or clunking sound from the front suspension when driving over large bumps," that if not addressed, could cause accelerated wear on the ball joints and "premature replacement of components." TSB 13-31-003 in no way supports Ma's allegations of knowledge of "one or more latent defects in the suspension system that causes the front and rear suspension control arm assembly components to prematurely loosen, wear, crack and/or break," which "unreasonably increases the risk of crash and threatens the health and safety of the drivers and passengers of the Class Vehicles."  SAC ¶¶ 2, 3. Put another way, Tesla's alleged knowledge of a potential minor installation issue with a suspension system component (in non-class vehicles) does not demonstrate knowledge of the overarching Alleged Defect. *Mandani v. Volkswagen*, 17-cv-07287-HSG, 2019 WL 652867, at *7 (N.D. Feb. 15, 2019) (rejecting conclusory attempts to plead pre-sale knowledge, the Court admonished that it "cannot conclude that one TSB notice related to noise issues, standing alone, means that Defendants had knowledge of a more-serious safety defect."); *see also Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2018 WL 1083395, at *8 (S.D. Cal. Feb. 27, 2018) ("[w]hen addressing a defendant's pre-sale knowledge, courts have held that the defendant must have knowledge of the specific defect alleged, not a general defect.").

---

[4] It is worth noting that the copy of TSB-31-003 attached as Exhibit 4 is dated March 16, 2015, which is after Ma purchased his vehicle.

In an attempt to demonstrate presale knowledge, Ma also vaguely alludes to "dealer repair records, records from NHTSA, warranty and post-warranty claims, internal pre-sale durability testing, and other various sources." SAC ¶ 36. Nearly identical allegations have been held insufficient to state a fraud claim in similar cases. *Grodzitsky v. Am. Honda Motor Co., Inc.*, No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822, at *2 (C.D. Cal. Feb. 19, 2013). These allegations are especially deficient here because other than "pre-sale durability testing," Ma does not allege any of these sources provided Tesla knowledge *before* his September 2014 purchase.

Ma's assertion that Tesla would engage in pre-sale testing to identify problems with vehicles and then release vehicles for sale without addressing the problems identified through such testing makes no common sense and must be rejected. Under Ma's illogical theory, Tesla would have undertaken the time and expense of testing the suspension system in the putative class vehicles only to ignore the test results after (according to Ma) it identified a defect in the suspension system of those vehicles. Rather than supporting knowledge of a presale defect, the far more likely and logical inference from these facts is that prerelease testing did not identify the alleged defect. *Mandani,* 2019 WL 652867, at *8 (holding that "conclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient"); *Blissard v. FCA US LLC*, No. LA CV18-02765 JAK (JEMx), 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) (holding that "pre-sale testing" and the defendant's "own records" do not sufficiently plead knowledge); *Burdt v. Whirlpool Corp.*, No. C 15–01563 JSW, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015) (allegations that the defendant engaged in prerelease testing were insufficient to establish presale knowledge of a defect where the plaintiff did not provide any details about or dates of the alleged tests or exactly what the tests would have shown); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94, 104 (3d Cir. 2013) (same).

### C.     The Economic Loss Rule Bars Ma's Fraudulent Concealment Claim (Count IV).

The economic-loss rule provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (quoting *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 615

1    (Mich. 1992)). The doctrine hinges on a distinction between transactions involving the sale of goods

2    that fail to meet the buyer's economic expectations, and "those involving the sale of defective

3    products to individual consumers who are injured in a manner which has traditionally been remedied

4    by resort to the law of torts." *Id.* (also quoting *Neibarger*). A buyer who has suffered only "economic

5    loss due to disappointed expectations" is therefore generally required to seek recovery under contract

6    law, not tort law. *Id.* "Economic loss" means "damages for inadequate value [received], costs of

7    repair and replacement of the defective product or consequent loss of profits—without any claim of

8    "personal injury or damages to other property...." *Id.* (quoting *Jimenez v. Superior Court*, 29 Cal. 4th

9    473, 482 (2002)). The rule "bar[s] a plaintiff's tort recovery of economic damages unless such

10   damages are accompanied by some form *of physical harm* (i.e., personal injury or property

11   damage)." *North Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 777 (1997). In actions

12   arising from the sale or purchase of a defective product, "plaintiffs seeking economic losses must be

13   able to demonstrate that either physical damage to property (other than the defective product itself)

14   or personal injury accompanied such losses," or be limited to contractual remedies. *Id.* at 780.

15          That basic dichotomy—requiring purely economic damages to be sought in contract and

16   permitting recovery in tort only where the losses involve personal injury or harm to other property—

17   dates back to the California Supreme Court's decision in *Seely v. White Motor Co.,* 63 Cal. 2d 9

18   (1965), a case that involved a defective vehicle covered by a warranty. The court noted in *Seely* that

19   tort law had been expanding to deal with the problem of injuries caused by defective products. *Id.* at

20   15–16. The court refused, however, to expand it further to cover situations that involved only

21   economic loss. As the California Supreme Court explained, expanding tort liability was appropriate

22   in physical injury cases because of the severe consequences to the injured party and because the risk

23   could be insured against and then "distributed among the public [through increased prices] as a cost

24   of doing business." *Id.* at 18–19 (citation omitted). But "[t]hat rationale in no way justifies requiring

25   the consuming public to pay more for their products so that a manufacturer can insure against the

26   possibility" that some customers might incur a purely *economic* loss because its products failed to

27   meet expectations. *Id.* at 19. Recovery for economic loss was therefore limited to contractual

28   warranty law. *Id.*

10

After *Seely*, courts disagreed as to whether the economic-loss rule should apply to *fraud* claims between contracting parties. The California Supreme Court addressed this issue in *Robinson Helicopter*. *See* 34 Cal. 4th at 984–93. There, the plaintiff (a helicopter manufacturer) alleged that the defendant (a component supplier) issued false certificates of conformity to design specifications for the steel used in a helicopter clutch—conformance required to qualify the helicopter as "airworthy" under federal law. *Id.* The court held that the certificates were fraudulent representations *independent of the contract* between the manufacturer and supplier, conduct that exposed the manufacturer to potential liability for non-economic personal injury damages (potential crashes) and actual regulatory liability (a recall), and therefore fell outside the economic-loss rule. *Id.* at 991.

The *Robinson Helicopter* court laid out a three-pronged test for exempting a fraud claim from the economic-loss rule, explaining that the "narrow" exception it was creating was "limited to [1] a defendant's affirmative misrepresentations [2] on which a plaintiff relies and [3] which expose a plaintiff to liability for personal damages independent of the plaintiffs' economic loss." *Id.* at 993. The limited scope of this exception was in response to arguments that a broad exception for fraud claims would "open the floodgates to future litigation" in cases involving contracts. *Id.* at 993. The California Supreme Court explained that it did not believe this would happen because its holding was "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss," and because of the rule requiring fraud to be pled with particularity. *Id.*

The economic loss rule bars Ma's fraud claim for the reasons set forth in *Robinson Helicopter* and his claims do not meet the "narrow" exception. Ma has failed to identify an affirmative misrepresentation, let alone one he relied upon—and even if he had, he cannot identify any personal damages independent of his economic losses. Indeed, the overwhelming majority of courts that have examined this issue in similar automotive defect cases agreed that the economic loss rule bars the type of fraud claim Ma attempts to assert. This is because the plaintiffs (like Ma) either failed to plausibly plead they relied on an affirmative misrepresentation, or, even if they did, they could not (again like Ma) plausibly plead alleged damages beyond the economic losses resulting from the alleged vehicle defect. *See, e.g., Macias v. Fiat Chrysler*, ED CV 17-511, 2020 WL

11

4723976, *1-2 (C.D. Cal. Aug. 13, 2020) (where consumers contend they "were duped into ... deals" by a defendant that "allegedly failed to disclose important information about the car … the overwhelming majority of district court decisions resoundingly conclude that the nature of the 'fraud' claims in these types of actions are, in substance, contract-type cases that don't justify tort relief."); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 847-850 (C.D. Cal. 2020) (applying economic loss rule to bar California common law fraud claims).

Because (as discussed above) Ma cannot identify an affirmative misrepresentation, he must claim an omission, and courts generally decline to extend the economic loss rule exception to any fraud claims based on an *omission. See, e.g. Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2020 WL 1955643, at *23–24 (N.D. Cal. Apr. 23, 2020) ("<u>Robinson</u> and the weight of authority within the Ninth Circuit suggest that the economic loss rule applies to fraudulent omission claims …."); *Hsieh v. FAC US LLC*, No. 19-cv-01691-W-AHG, 2020 WL 835310, at *3–4 (S.D. Cal. Feb. 20, 2020) (same); *Mosqueda v. Am. Honda Motor Co., Inc.*, No. SACV 19839-MWF-MAAX, 2020 WL 1698710, at *12–13 (C.D. Cal. Mar. 6, 2020) (same). Ma also cannot plausibly identify any damages independent of his economic losses from an allegedly defective vehicle. This, too, provides an independent basis to apply the economic loss rule to dismiss Ma's fraudulent concealment claim.[5] *Nafisi v. Mercedes-Benz USA, LLC*, CV 20-9309 PA (MAAx), 2021 WL 2525454 at *3 (C.D. Cal. March 31, 2021) ("Plaintiff's well-pleaded allegations do not include allegations that Plaintiff suffered any personal injury or other damages separate and apart from the economic damages associated with his warranty claims.").[6]

---

[5] In the analogous negligent misrepresentation context, this Court has previously conducted a detailed analysis and similarly concluded that even if an affirmative misrepresentation is pled, a plaintiff must also demonstrate that "reliance on those representations opened them up to independent personal liability." *Crystal Springs Upland School v. Fieldturf USA*, Inc., 219 F. Supp. 3d 962 (N.D. Cal. Nov. 7, 2016). This Court's analysis in *Crystal Springs* is consistent with Tesla's arguments here and supports dismissal of Ma's fraudulent concealment claim.

[6] *See also Bui v. Mercedes-Benz USA, LLC*, No. 20-cv-1530-CAB, 2021 WL 242936, at *3–4 (S.D. Cal. Jan. 25, 2021) ("Here, the complaint does not allege any personal injury to Plaintiff or damage to physical property (independent of the Vehicle itself) . . . . and because Plaintiff's damages are strictly economic and arise out of the same conduct as the breach of warranty claims, no amendment

12

## II.     Ma's Claims for Equitable Relief Fail.

Ma seeks equitable relief, now primarily focused on future injunctive relief, pursuant to his CLRA, UCL, and FAL claims. SAC ¶¶ 106 (CLRA), 116 (UCL), 124 (FAL) and Prayer for Relief at 102 at E ("Equitable Relief Claims"). These claims must be dismissed for two reasons. First, under *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, at 839–44 (9th Cir. 2020), Ma was required to plausibly plead that he has no adequate remedy at law, and thus, he was entitled to the vague injunctive relief he requests. *Williams I*, 2021 WL at 2531177 * 9 (applying *Sonner* to require Ma to adequately plead "that [his] remedies at law are inadequate and to support his claim to any form of equitable or injunctive relief."). Second, even if Ma plausibly pled facts showing that his remedies at law are inadequate thus justifying injunctive relief, he must also demonstrate that he has standing to pursue his injunctive relief claims. A failure to meet either requirement warrants dismissal of his equitable claims. Ma fails to meet both.

### A.      Ma Does Not Plausibly Allege Legal Remedies Would be Inadequate so as to Justify His Claim for Injunctive Relief or any Other Equitable Relief.

Ma's equitable relief claims must be dismissed because Ma fails to plead facts that, if proven, would show legal remedies would be inadequate. *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, at 839–44 (9th Cir. 2020).

In *Sonner*, plaintiff alleged class claims under the UCL and CLRA, seeking both equitable remedies and legal remedies (damages for failing to correct CLRA violations). *Sonner*, 971 F.3d at 838. Plaintiff later dismissed her damages claim. *Id.* at 837–38. The district court then granted defendant's motion to dismiss on the grounds that Sonner's remaining UCL and CLRA claims were subject to California's inadequate-remedy-at-law doctrine. *Id.* at 838. Sonner appealed, arguing "the

---

to the complaint would be able to avoid this outcome"); *Thompson v. BMW of N. Am., LLC*, No. SACV 17-01912-CJC, 2019 WL 988694, at *5 (C.D. Cal. Jan. 10, 2019) (similarly holding that plaintiff asserting concealment of oil-consumption defect did not allege "that he was exposed to any liability for personal damages independent of his economic loss"); *Stewart v. Electrolux Home Products, Inc.*, 304 F. Supp. 3d 894, 904–05 (E.D. Cal. 2018) (holding ELR applied partly because "Plaintiffs were not exposed to any personal injury damages independent of the economic loss that was foreseeable from a defective oven...."); *Traba v. Ford Motor Co.*, No. 2:18-cv-00808-SVW-GJS, 2018 WL 6038302, at *3-4 (C.D. Cal. June 27, 2018); *Zagarian v. BMW of N. Am., LLC*, No. CV 18-4857-RSWL, 2019 WL 6111731, at *3 (C.D. Cal. Oct. 23, 2019).

13

California legislature [had] abrogated the ... doctrine for claims seeking equitable restitution under the UCL and CLRA." *Id.* at 839. But the Ninth Circuit affirmed dismissal of the amended complaint on the basis of "federal equitable principles." *Id.* The court explained, "even if a state authorizes its courts to provide equitable relief when an adequate legal remedy exists, such relief may be unavailable in federal court because equitable remedies are subject to traditional equitable principles unaffected by state law." *Id.* at 841 (citing *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105–06, n. 3 (1945)). Thus, the Ninth Circuit held "that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844.

Under *Sonner*, there is no doubt that the inadequate legal remedy doctrine applies to Ma's UCL and FAL claims in the entirety (both the equitable restitution and injunctive relief claims), as well as any injunctive relief sought under his CLRA claim. Further, the question is not whether Ma is likely to succeed on his legal claims (as shown above, he is not). The question is whether, assuming Ma prevailed, would the legal remedies he requests—benefit-of-the-bargain and contract-like damages (SAC, ¶¶ 7, 78)—be adequate. Ma provides only conclusory assertions that he is entitled to equitable relief in the form or restitution based on the purported economic harms he has received, or for some unspecified injunctive relief claim. SAC ¶¶ 115, 116, 124.

But as numerous courts have held since *Sonner*, such allegations are insufficient. *See, e.g.*, *Clark v. American Honda Motor Co., Inc.*, CV 20-03147 AB, -- F.Supp.3d --, 2021 WL 1186338 at * 8-9 (C.D. Cal. Mar. 25, 2021) (dismissing plaintiffs' claims and requests for equitable relief after "consider[ing] *Sonner*, both parties' arguments, and numerous district, court orders applying *Sonner*," "the Court therefore agrees with its colleagues that, under *Sonner*, Plaintiffs must allege that they lack an adequate remedy at law to seek injunctive relief"); *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *1, 4 (N.D. Cal. Oct. 13, 2020) (applying *Sonner* to dismiss UCL claim and CLRA claim to the extent it seeks equitable relief, stating "[b]ecause Plaintiffs' claims rest on their alleged overpayments and Apple's failure to issue refunds, the Court finds that monetary damages would provide an adequate remedy for the alleged injury."); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC-GJSX, 2020 WL 5492990, at *3 (C.D. Cal.

14

Sept. 9, 2020) ("[t]here is nothing in the [complaint] to suggest that monetary damages would not make Plaintiff or the putative class whole. Indeed, throughout the [complaint] Plaintiff repeatedly alleges that he and the putative class 'lost money or property' as a result of Jaguar's wrongful conduct."); *Klaehn v. Cali Bamboo, LLC*, No. 19CV1498-LAB (KSC), 2020 WL 3971518, at *9 (S.D. Cal. July 13, 2020) (dismissing UCL claim under *Sonner* because the plaintiffs did not "specifically allege the equitable relief they are seeking and why legal relief is not adequate to address [their] alleged harms").

As this Court recognized in its June 21, 2021 Order, "it appears Plaintiff concedes that the doctrine bars any request for restitution," and "instead focuses his argument on his allegations relating to injunctive relief." *Williams I*, 2021 WL at 2531177 * 7. The SAC appears similarly to acknowledge Ma's inability to plead restitution or other forms of equitable relief based on past alleged harms. SAC ¶¶ 79-80. While arguing that "Tesla's misrepresentations to Plaintiffs do not merely require monetary damages," Ma protests that "an injunction is necessary to ensure the safety of Tesla's vehicles," *Id.* ¶ 79, and that, "the Suspension Defect poses a threat to the health and safety of drivers of the Class Vehicles and Tesla has failed to notify its customers of these dangers." *Id.* ¶ 116. Ma, however, falls well short of pleading that he is entitled to injunctive relief.

To begin with, Ma requests an injunction to remedy past conduct that allegedly harmed Ma rather than prospective relief to address future conduct. *See Watkins v. MGA Ent., Inc.,* No. 21-CV-00617-JCS, -- F.Supp.3d --, 2021 WL 3141218, at *17 (N.D. Cal. July 26, 2021) (Plaintiffs' equitable-relief claim requires them to plead facts that, if proven, would show legal remedies would be inadequate; that their request for prospective injunctive relief requires allegation of facts showing Plaintiffs or their daughters are likely to be harmed in the future). And there is no plausible allegation to justify such past injunctive relief for Ma, who purchased his 2014 Model S in 2014, had it repaired in 2019, and complains about being out of pocket for the $1,320.12 he paid to repair his vehicle. SAC ¶¶ 60-65. Nowhere is there a plausible allegation that justifies prospective injunctive relief because of potential harm in the future; nor can there be as Ma is not seeking any injunctive relief for future model year vehicles—he only seeks injunctive relief for "vehicles with a production date between September 17, 2013, and October 15, 2018." SAC ¶ 1. Ma has not and cannot plausibly

15

allege that he has no adequate remedy at law to remedy his complaints about his 2014 vehicle purchase or his complaints about his legal damages incurred paying out of pocket to repair the Alleged Defect in 2019.

As for any future injunctive relief claim, even if the SAC could be amended to plausibly include future model year vehicles, those damages are easily quantifiable in vehicle defect cases, such as here, where there is "no such difficulty in quantifying the damages here, which arise from an allegedly defective product." *Clark*, 2021 WL 1186338, at *8. Indeed, as the *Clark* court explained in that automotive defect class action, future purchases will have their own legal damages claims.[7] *Clark*, 2021 WL 1186338, at *8 ("Plaintiffs' argument about future purchasers is also unavailing: nothing suggests that damages will not be adequate for future purchasers simply because they have not purchased their vehicles yet. Once those future purchasers purchase their vehicles, damages will be as adequate a remedy for them as it will be for currently-existing purchasers.")

For similar reasons, in the automotive class-action context, nearly every California state and federal district and appellate court to have squarely addressed the adequate remedy at law doctrine has rejected equitable relief, including injunctive relief, in the motor vehicle context. *See, e.g.*, *Philips v. Ford Motor Co.*, No. 14–CV–02989–LHK, 2015 WL 4111448, *16 (N.D. Cal. July 7, 2015), *aff'd*, 726 F. Appx. 608 (9th Cir. 2018) (affirming on *de novo* review dismissal of all UCL and other equitable claims, including injunctive relief claims, based on the adequate remedy at law doctrine); *Consumer Advocs. v. DaimlerChrysler Corp.*, No. G029811, 2005 WL 327053, at *13 (Cal. Ct. App. Jan. 31, 2005) (unpub.) (reversing injunction under UCL because damage remedies under Song-Beverly Act were adequate to protect consumer); *Pelayo,* 2021 WL 1808628, at *9 (dismissing CLRA and UCL claims, including for injunctive relief, because "Plaintiffs have not pointed the Court to any factual allegations demonstrating the inadequacy of legal remedies."); *Drake v. Toyota Motor Co.*, No. 2:20-cv-01421-SB, 2020 WL 7040125, at *14 (C.D. Cal. Nov. 23, 2020); *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-00750-VAP, 2020 WL 4187918, at *8 (C.D. Cal. Apr. 10, 2020); *Loo v. Toyota Motor Sales, USA, Inc.,* No. 819CV00750VAPADSX,

---

[7] Unlike here, *Clark*, when filed, in early 2020, included the recently released 2020 model year that was still being sold.

2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019); *Gonzalez v. Ford Motor Co.,* No. CV 19-652 PA (ASX), 2019 WL 1364976, at *6 (C.D. Cal. Mar. 22, 2019); *Gibson v. Jaguar Land Rover N. Am.,* LLC, Case No. 20-CV-769-CJC, 2020 WL 5492990, at *3 (C.D. Cal. Sep. 9, 2020); *Nguyen v. Nissan N. Am., Inc.,* No. 16-CV-05591-LHK, 2017 WL 1330602, at *5 (N.D. Cal. Apr. 11, 2017); *Durkee v. Ford Motor Co.,* 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014); *Stockinger v. Toyota Motor Sales USA Inc.,* No. LACV1700035VAPKLSX, 2017 WL 10574372, at *22 (C.D. Cal. July 7, 2017); *Brand v. Nissan North America, Inc.,* No. CV 16-07378-BRO (SKx), 2017 WL 11610901 (C.D. Cal. Feb. 24, 2017); *Salas v. Toyota Motor Sales, U.S.A., Inc.,* No. CV 15-8629 FMO (EX), 2016 WL 7486600, at *13 (C.D. Cal. Sept. 27, 2016).)[8]

In short, Ma fails to plead facts that, if proven, would show legal remedies would be inadequate. This is reason alone his claims for equitable and injunctive relief should be dismissed.

**B.   Ma Also Fails to Establish Standing for His Injunctive Relief Claim.**

Even if Ma had plausibly pled that he is entitled to seek equitable/injunctive relief claims under the adequate remedy at law doctrine, he must separately plead facts demonstrating standing to pursue injunctive relief. *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 966 (9th Cir. 2018), *cert. denied,* 139 S. Ct. 640 (2018) *accord TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021). To demonstrate standing, Ma must articulate facts showing he is likely to be harmed in the future, and the threat of injury is "actual and imminent, not conjectural or hypothetical." *Id. Davidson,* 889 F.3d at 966 (allegations of *possible* injury are insufficient); *TransUnion LLC,* 141 S. Ct. at 2199 (for injunctive relief in the federal courts, plaintiff must plead risk of "imminent and substantial" harm). Here, just as in his First Amended Complaint, Ma falls decidedly short of this standard, failing to

---

[8] In any case, because the injunctive relief claims are tied to the consumer protection claims, the same 9(b) scrutiny applies to the requirement that any injunctive relief claim involving an attempt to compel speech must describe the purely factual and uncontroversial information it seeks to compel. *See* generally Fed. R. Civ. P. 65(d) (stating that every order granting an injunction "must (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."); *Cal. Chamber of Commerce, v. Xavier Becerra,* No. 2:19-cv-02019-KJM-EFB, 2021 WL 1193829 (E.D. Cal. March 30, 2021) (for any injunction mandating speech, the disclosures must be "purely factual and uncontroversial information only," which is justified, not unduly burdensome, and does not leave a misleading impression about the dangers actually faced).

17

1   articulate any purported misrepresentation or omission by Tesla relating to the Alleged Defect that is
2   likely to cause him any "imminent and substantial" harm.

3        As this Court noted in footnote 4 of *Williams I*, Ma failed to address this argument in his
4   prior briefing. *Williams* I, 2021 WL at 2531177 at *8 n.4. Ma now alleges that "[b]ecause of Tesla's
5   misrepresentations, Plaintiffs (and others) are continuing to drive vehicles that are prone to the
6   Suspension Defect and therefore unsafe for the uses for which Plaintiffs purchased the vehicles. An
7   injunction is necessary to ensure the safety of Tesla's vehicles." SAC ¶ 79. Yet Ma provides no
8   allegations to support this conclusory statement. Ma bought his 2014 Model S vehicle in for
9   maintenance to correct "the rattling noise when driving on rough roads at speeds of 25 mph or more"
10  in November of 2019. SAC ¶ 64. Not only was Ma provided new parts a year before filing this
11  lawsuit, but he provides no allegations whatsoever to suggest that this maintenance was unsuccessful
12  in any way. *See Watkins*, 2021 WL 3141218, at *17 (finding plaintiffs did not allege they "are likely
13  to face any future danger from the alleged defect, which…has now been fixed.") The only alleged
14  harm Ma identifies resulting from the repair is the $1,320.12 he was charged. SAC ¶ 45. Even if
15  Ma's allegations were otherwise actionable, as discussed above, such an amount would be wholly
16  redressable at law through monetary damages.

17       In attempting to argue that legal remedies are insufficient and that he should be entitled to an
18  injunction, Ma also asserts that he would "be interested in considering Tesla vehicles for purchase in
19  the future." SAC ¶ 80. To the extent Ma is alleging he "would be interested in considering"
20  purchasing the 2013 through 2018 model S and X vehicles that are the subject of this lawsuit, there
21  is no imminent harm requiring injunctive relief. Ma does not allege that these vehicles are still being
22  advertised or marketed by Tesla. Even if Ma had alleged this, and even if the Court were to accept
23  that Ma was interested in purchasing a 2013-2018 MY vehicle, he would already be aware of the
24  Alleged Defect and could not be deceived on the basis of any misrepresentation or omission relating
25  to the Alleged Defect. Courts have repeatedly rejected attempts to plead injunctive relief based on
26  advertising of products whose characteristics are already known to the plaintiff. *See Nestle USA,*
27  *Inc.*, 1:13-CV-00437, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020); *Hawyuan Yu v. Dr Pepper*
28  *Snapple Group, Inc.*, No. 18-cv-06664-BLF, 2020 WL 5910071 at *7 (N.D. Cal. Oct. 6, 2020)

18

("Given what Plaintiff knows … the Court does not find it plausible that he would be misled into purchasing these Products in the future."); *Shanks v. Jarrow Formulas, Inc*., Case No. LA CV 18-09437, 2019 WL 7905745, *5 (C.D. Cal. Dec. 27, 2019); *Yothers v. JFC International, Inc*., Case No. 20-cv-01657-RS, 2020 WL 5015262 at *5 (N.D Cal. May 14, 2020).

To the extent Ma is alleging he "would be interested in considering" purchasing newer models, those models are not the subject of this lawsuit. The "Class Vehicles" that Ma's attempted claims relate to are "Tesla Model S and Model X vehicles with a production date between September 17, 2013, and October 15, 2018." SAC ¶ 1. Ma's claims do not include vehicles produced after 2018, and he does not assert that any vehicle with a production date of October 16, 2018 or later suffer from the Alleged Defect.

Thus, Ma also fails to allege standing to pursue his request for injunctive relief, and for this reason as well, his equitable/injunctive relief claims should be dismissed.

<h2 style="text-align:center">CONCLUSION</h2>

Ma has been provided two opportunities to plead his claims against Tesla in this matter. In the SAC he has once again failed to do so. Accordingly, Tesla respectfully requests that the Court dismiss all of Ma's claims in their entirety and with prejudice.

Dated: August 23, 2021

Respectfully Submitted,
SHOOK, HARDY & BACON L.L.P.

By: */s/ Rachel A. Straus*
    Amir Nassihi
    Michael L. Mallow
    Rachel A. Straus
    Jason M. Richardson

    Attorneys for Defendant
    TESLA, INC.