UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHERY WILLIAMS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TESLA, INC.,<br><br>    Defendant. | Case No. 20-cv-08208-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 58 |

This case was filed against Defendant Tesla, Inc. in November 2020.[1] After the Court granted Defendant's motion to dismiss Plaintiff Michael Ma's claims, *see* Dkt. No. 44, Plaintiffs filed a second amended complaint in July 2021, Dkt. No. 49 ("SAC"). Pending before the Court is Defendant's second motion to dismiss Plaintiff Ma's allegations, briefing for which is complete. *See* Dkt. Nos. 58 ("MTD"), 59 ("Opp."), 60 ("Reply"). The Court heard oral argument on the motion. *See* Dkt. No. 63. For the reasons stated below, the Court **GRANTS** the motion to dismiss.

**I.   BACKGROUND**

Defendant, using a direct-to-consumer business model, designs and manufactures Tesla-branded automobiles, including the "Tesla Model S and Model X vehicles," which are sold through Defendant's website. *See* SAC ¶¶ 1, 17-18. Plaintiff Ma "purchased a new 2014 Tesla Model S directly from Tesla online." *Id.* at ¶ 14. At the time he submitted his order, Plaintiff says

---

[1] The original complaint was brought by Plaintiff Zachery Williams individually and on behalf of all others similarly situated. Dkt. No. 1. Plaintiff Michael Ma joined Plaintiff Williams in the first amended complaint, Dkt. No. 7, and Plaintiff John Diteman joined Plaintiffs Williams and Ma in the second amended complaint, Dkt. No. 49. Plaintiff Williams' and Ditemans' claims are currently stayed, and the pending motion to dismiss concerns only Plaintiff Ma's claims. *See* Dkt. Nos. 57, 58.

he "reviewed specific website pages regarding the qualities and characteristics of the Tesla Model S, including information about the Model S vehicle's construction, features, and capabilities." *Id.* ¶ 60. In the fall of 2014, Plaintiff picked up his car from Defendant's factory in Fremont, California, where Defendant "provided [Plaintiff] with a tour . . . and provided additional instructions regarding the vehicle's features." *Id.* ¶ 61.[2] Around October 2019, he alleges he "began to hear a rattling noise emitting from the front of his 2014 Model S when driving on rough roads at a speed of 25 mph or more." *Id.* ¶ 62. Plaintiff says he "presented the vehicle to Tesla's service center in Palo Alto, California to diagnose and redress the issue" in November 2019 with 58,057 miles on the odometer. *Id.* ¶ 63. "To remedy the rattling problem," Tesla replaced the failed lower aft links "with a new front suspension aft link assembly." *Id.* ¶ 64. Plaintiff paid "$1,320.12 out-of-pocket for the cost of parts and labor." *Id.* Additionally, Plaintiff says his front lower fore links and strut bolts were replaced free of charge as a "goodwill" service under an "unidentified" technical service bulletin. *Id.* ¶ 65.

Plaintiff argues that the issues he experienced show a larger problem. He alleges that Model S and Model X vehicles produced between September 17, 2013 and October 15, 2018 (the "Class Vehicles") "suffer from one or more latent defects in their suspension system that cause the front and rear suspension control arm assembly components to prematurely loosen, wear, crack, and/or break (the 'Suspension Defect')." *Id.* ¶¶ 1-2. Plaintiff alleges that "the Suspension Defect unreasonably increases the risk of crash and threatens the health and safety of the drivers and passengers of the Class Vehicles" and affects the "use, enjoyment, safety, and value of the Class Vehicles." *Id.* ¶ 3.

Plaintiff alleges that at the time he purchased his vehicle Defendant "had significant and longstanding knowledge of the Suspension Defect through records of customer complaints, dealer repair records, records from NHTSA, warranty and post-warranty claims, internal pre-sale durability testing, and other various sources." *Id.* ¶ 36. Plaintiff also points to a safety recall in

---

[2] In the SAC, Plaintiff provides inconsistent dates. In paragraph 14, he alleges he purchased the car on September 6, 2014 and took delivery on September 9, 2014, but in paragraph 61 he alleges he picked up his car on August 28, 2014. Whether he took ownership of the car in August or September 2014 is irrelevant to the Court's analysis.

2

China and Defendant's technical service bulletins ("TSB") as further proof Defendant knew of the alleged Suspension Defect. *Id.* ¶¶ 25-28, 39-43, 51. Plaintiff argues that Defendant "has gone to great lengths to actively conceal its knowledge of the Suspension Defect" and tried to "avoid the financial fallout that would result from recalling the Class Vehicles by downplaying the dangerousness of the Suspension Defect and the scope of vehicles affected by it." *Id.* ¶ 51.

Plaintiff brings claims against Defendant for: (1) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*("UCL"); (3) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); and (4) fraudulent concealment under California law.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

3

Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. ANALYSIS

### A. Claims under the CLRA, UCL, and FAL

Plaintiff brings claims under the CLRA, UCL, and FAL. Under the CLRA, a manufacturer must disclose any defects that are contrary to a representation actually made by the manufacturer or any defects that pertain to a fact the manufacturer was obligated to disclose. *Smith v. Ford Motor Co.*, 749 F. Supp 2d 980, 987 (N.D. Cal. 2010). An obligation to disclose exists:

> "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."

*Id.* (citation omitted).

The UCL prohibits business acts or practices that are (1) fraudulent, (2) unfair, or (3) unlawful. *Daugherty v. American Honda Motor Co., Inc.* 144 Cal. App. 4th 824, 837 (Cal. Ct. App. 2d 2006). Plaintiff's claim that Defendant's actions were fraudulent and unfair are addressed here, and Plaintiff's "unlawful" allegations are addressed in a separate section below. Finally, the FAL prohibits the use of untrue or misleading statements in connection with the sale of property when those statements are "known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *See* Cal. Bus. & Prof. Code § 17500.

1    All these laws have a knowledge requirement. The Ninth Circuit has held that "[t]o state a
2 claim for failing to disclose a defect, a party must allege '(1) the existence of a design defect; (2)
3 the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect
4 and the alleged safety hazard; and that the *manufacturer knew of the defect at the time a sale was*
5 *made*." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025-26 (9th Cir. 2017) (emphasis
6 added) (citations omitted) (affirming dismissal of claims brought under the CLRA and UCL); *see*
7 *also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.5 (9th Cir. 2012) (noting that for a
8 UCL claim "the failure to disclose a fact that a manufacturer does not have a duty to disclose, *i.e.*,
9 a defect of which it is not aware, does not constitute an unfair or fraudulent practice."); *Punian v.*
10 *Gillette*, No. 14-cv-05028-LHK, 2015 WL 4967535, at *9 (N.D. Cal. August 20, 2015)
11 (dismissing CLRA, UCL, and FAL claims because the plaintiff failed to sufficiently allege that the
12 defendants had knowledge of the defect at the time the defendant made its advertising statements
13 or at the time of sale). At the hearing, Plaintiff's counsel agreed that he is required to plausibly
14 allege Defendant's knowledge of the defect. Moreover, a manufacturer's pre-sale knowledge must
15 go to the specific defect alleged. *See Victorino v. FCA US LLC*, No. 16-cv-1617-GPC (JLB),
16 2018 WL 1083395, at *7 (S.D. Cal. Feb. 27, 2018); *Stewart v. Electrolux Home Prod., Inc.*, 304 F.
17 Supp. 3d 894, 908 (E.D. Cal. 2018).

18    In *Wilson*, the Ninth Circuit considered whether a plaintiff plausibly alleged a defendant's
19 pre-sale knowledge. There, the plaintiff alleged that the defendant, a laptop manufacturer, was
20 aware of a laptop's defect because it had "access to the aggregate information and data regarding
21 the risk of overheating," there had been a lawsuit involving another of the manufacturer's laptops,
22 and several customers complained. 668 F.3d at 1146. However, the Ninth Circuit found that the
23 plaintiff's allegations were "merely conclusory" and therefore did not sufficiently allege that the
24 defendant knew of the defect at the time of sale. *Id.* at 1147. As the court explained, the allegation
25 that the defendant had "aggregate information and data" was "speculative and [did] not suggest
26 how any tests or information could have alerted [the defendant] to the defect." *Id.* Additionally,
27 the customer complaints were either undated or dated after the plaintiff's purchase, and the prior
28 lawsuit pertained to a different laptop model with unspecified defects. *Id.* at 1146-48.

5

Similar to the plaintiff in *Wilson*, Plaintiff here makes conclusory allegations and fails to plausibly allege Defendant had knowledge of the alleged defect when Plaintiff purchased his car in August 2014. First, Plaintiff makes speculative and vague allegations that Defendant knew of the alleged defect from unspecified dealer repair records, warranty and post-warranty claims, pre-sale durability testing, and "other various sources." SAC ¶ 75. As with the "aggregate information and data" alleged in *Wilson*, Plaintiff simply lists general sources of information then asserts that they must have put Defendant on notice, without offering any details about these records or explaining how they would have revealed the alleged defect. Notably, Plaintiff also does not explain why these records would have alerted Defendant to a problem in 2014, when in Plaintiff's own experience the issue took years to manifest in his 2014 Model S. *See id.* ¶ 62.

As to Plaintiff's allegations regarding Defendant's internal testing, similarly vague allegations of "pre-sale design and testing" have been found to be insufficient. *See Mandani v. Volkswagen Group of America, Inc.*, No. 17-cv-07287-HSG, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) ("Plaintiffs' conclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient."). Plaintiff needs to do more than allege that car manufacturers perform pre-sale testing. For example, to create a plausible inference, a plaintiff might allege *how* pre-sale testing would have alerted a defendant to the alleged defect. *Compare Grodzitsky v. American Honda Motor Co., Inc.*, No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) (referencing *Wilson* and finding the plaintiff's "generalized assertion" regarding "unspecified 'pre-release testing data' and 'aggregate data from Honda dealers'" to be insufficient because the plaintiff failed "to suggest how this information could have informed Defendant of the alleged defect at the time of sale") *with Kowalsky v. Hewlett-Packard Co.*, No. 10-cv-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (finding that the plaintiff sufficiently alleged defendant's pre-sale knowledge because the plaintiff alleged the defect was present "out of the box" and would have manifested in the "ISO/IEC 24734 and 24735 standards" testing the defendant said it performed). But Plaintiff has not adequately done so here.

Second, many of the records Plaintiff points to as supposed proof of knowledge post-date his purchase of the car. Plaintiff highlights a 2016 blog post by Defendant responding to a

6

1    customer's complaint of suspension failure, SAC ¶ 33; allegations from 2016 that Defendant was
2    requiring customers to sign non-disclosure agreements, *id.* ¶ 52; and the Chinese government's
3    recall of Tesla vehicles in 2020, *id.* ¶¶ 25-26.  These events all occurred years after Plaintiff
4    purchased his car in August 2014.  Plaintiff also includes in the Second Amended Complaint
5    dozens of copies of NHTSA complaints regarding various Tesla vehicles.  *See id.* at 13-82.  Every
6    complaint post-dates Plaintiff's purchase.  *See id.*  The earliest is from 2015, and the first
7    complaint regarding a 2014 Model S, the type of car Plaintiff bought, is from 2017.  *See id.*  These
8    post-purchase records do not suggest Defendant had knowledge of the alleged defect at the time of
9    sale.

Finally, the only record cited by Plaintiff that predates his purchase does not make
Plaintiff's allegation that Defendant knew of the alleged defect any more plausible.  "When
addressing a defendant's pre-sale knowledge, courts have held that the defendant must have
knowledge of the specific defect alleged, not a general defect."  *Victorino*, 2018 WL 1083395 at
*8 (citations omitted).  Plaintiff makes much of TSB-13-31-003, issued in 2013 regarding the
2012-2013 Model S vehicles, which warned:

> The front lower control arm ball joints might develop greater free play than is expected. This can result in a clicking or clunking sound from the front suspension when driving over large bumps. If left uncorrected, the ball joints could be subject to accelerated wear. Over time, the clicking or clunking noises will become louder as the ball joint wear increases, leading to required premature replacement of components.

Dkt. No. 49, Ex. 4.  However, the clicking defect caused by large bumps described in this 2013
TSB is not the same as Plaintiff's allegations regarding rattling noises when driving over the speed
of 25 mph and a suspension defect that "unreasonably increases the risk of crash and threatens the
health and safety of the drivers and passengers."  *See* SAC ¶¶ 2-3, 62; Mot. at 8; *Mandani*, 2019
WL 652867 at *7 (holding that a single TSB which noted "[c]lacking or knocking noises directly
after a load change" did not mean the defendants had knowledge of the "bucking and jerking"
defect later experienced by the plaintiff).  Moreover, the 2013 TSB is about 2012-2013 Model S
cars.  Plaintiff owns a 2014 Model S.[3]  The 2013 TSB does not plausibly support an inference that

---
[3] Plaintiff, in his response to Defendant's motion to dismiss, argues that the parts in a 2014 Model

Defendant knew of the alleged Suspension Defect at the time Defendant sold Plaintiff a 2014 Model S car.

Because Plaintiff fails to plausibly allege that Defendant knew, or should have known, of the alleged Suspension Defect before selling Plaintiff the car, Plaintiff's claims under the CLRA and FAL and claims for fraudulent and unfair business practices under the UCL are **DISMISSED** with leave to amend.[4]

### B. Claims under the UCL for unlawful business practices

The UCL prohibits business acts or practices that are (1) fraudulent, (2) unfair, or (3) unlawful. *See* Cal. Bus. & Prof. Code § 17200; *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010). As discussed above, Plaintiff fails to plausibly allege Defendant had pre-sale knowledge of the alleged defect and therefore fails to plausibly allege claims for fraudulent or unfair business practices under the UCL. Plaintiff's claim under the "unlawful" prong of the UCL is derivative of his CLRA, FAL, and fraudulent concealment claims. *See Wilson*, 668 F.3d at 1145-46 ("An action under the UCL's unlawful prong 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'") (citing *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). Because Plaintiff has failed to state a claim under those laws, his claim under the "unlawful" prong of the UCL also fails.

Plaintiff's claim under the UCL for unlawful business practices is **DISMISSED** with leave to amend.

---

S are identical to the parts in a 2012 or 2013 Model S, Opp. at 5, but Plaintiff did not include any such allegations in his complaint, first amended complaint, or second amended complaint.

[4] In *Resnick v. Hyundai Motor America, Inc.*, the court noted that it is unclear whether "the Ninth Circuit permits a 'should have known' standard" for CLRA, UCL, and fraudulent concealment claims, as *Wilson* states that "knowledge" is required. No. CV 16-00593-BRO, 2017 WL 1531192, at *14 (C.D. Cal. April 13, 2017). That said, the FAL imposes liability if a false statement "should be known" to be untrue by the exercise of reasonable care. Even to the extent a "should have known" standard could apply, for the same reasons that Plaintiff fails to plausibly allege actual knowledge, he also fails to plausibly allege that Defendant should have known of the alleged defect. As discussed, the alleged defect manifested after many years of use, and there is nothing to suggest Defendant should have known it might develop at the time of sale.

8

### C. Claim for fraud by concealment

Plaintiff also alleges that Defendant fraudulently concealed the alleged defect, inducing him to purchase his car. SAC at ¶ 7. Under California law, the elements of a cause of action for fraudulent concealment are: "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1011-12 (9th Cir. 2011). Plaintiff's failure to plausibly allege Defendant knew of the defect, as explained above, is fatal to his claim. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564-65 (N.D. Cal. 2019) (noting that for a claim for fraudulent concealment under California law, a defendant "must have known of the defect at the time of sale"). After all, Defendant could not have had an "intent to defraud" without first knowing of the alleged Suspension Defect.

However, as urged by Defendant, Plaintiff's fraudulent concealment claim is also barred by the economic loss rule. *See* Mot. at 9-12, 60 at 9-11. The economic loss rule provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Economic losses include damages for inadequate value, the costs of repair or replacement, and any consequent lost profits. *Id.* at 989. The rule "bar[s] a plaintiff's tort recovery of economic damages unless such damages are accompanied by some form of *physical* harm (i.e., personal injury or property damage)." *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 777 (Ct. App. 2d Dist. 1997) (emphasis in original).

The California Supreme Court limited the economic loss rule in *Robinson Helicopter Co. v. Dana Corporation*, 34 Cal. 4th 979, 988 (2004). In that case, even though the plaintiff had suffered purely economic harm, the Court permitted the plaintiff to recover on claims of fraudulent concealment because the defendant made intentionally false, affirmative representations. *Id.* at 988, 991. The case involved a defendant who supplied helicopter parts. *Id.*

9

at 985.  With each delivery of parts, the defendant provided certificates confirming that the parts had been manufactured in conformance with the plaintiff's written specifications, which was untrue.  *Id.* at 986.  The California Supreme Court found that the false certifications were affirmative representations that the plaintiff relied on to its detriment, such that the representations were tortious conduct separate from the breach of the contract itself.  *Id.* at 990-91.  Crucially, the state Supreme Court further explained that "[b]ecause [defendant's] affirmative intentional misrepresentations of fact (i.e., the issuance of the false certificates of conformance) are dispositive fraudulent conduct related to the performance of the contract, we need not address the issue of whether [defendant's] intentional concealment constitutes an independent tort."  *Id.*

Plaintiff argues that this Court should view *Robinson* not as an exception to the economic loss rule but as a part of a broader principle that the economic loss rule does not apply to torts arising from a duty "independent" of the contract.  Dkt. No. 59 at 15.  In making this argument, Plaintiff asks the Court to ignore what Plaintiff acknowledges are "several federal district court decisions agreeing with [Defendant's] conclusion that *Robinson* constituted a limited exception to the economic loss rule."  Dkt. No. 59 at 13.  Plaintiff cites to a California Supreme Court case decided prior to *Robinson*, lower court cases predating *Robinson*, a single California Court of Appeals case decided after *Robinson*, and cases from other states.  Dkt. No. 59 at 15-17.  But as Plaintiff acknowledges, federal courts applying *Robinson* have generally found that the case creates an exception to the economic loss rule that does not extend to omission-based fraud claims.  *See, e.g.*, *In re Ford Motor Co.*, 483 F. Supp. 3d 838, 849 (C.D. Cal. 2020) (concluding the plaintiff's claims regarding an allegedly defective car transmission were barred by the economic loss rule because "*Robinson Helicopter* provides that a claim for fraud by *affirmative misrepresentation* may avoid the economic loss rule, but it does not establish any other exception, such as . . . for a claim for fraud by omission, as Plaintiff argues for in this case") (emphasis in original); *Stewart v. Electrolux Home Products, Inc.*, 304 F. Supp. 3d at 904-05 (concluding the plaintiff's fraudulent concealment claim was barred by the economic loss rule and *Robinson* did not apply because plaintiff did not articulate any affirmative misrepresentations).  Like the court in *In re Ford Motor Co.*, this Court finds that "to the extent lower court cases arguably reflect some

10

uncertainty about the scope of the *Robinson Helicopter* exception, 'federal courts are bound by the pronouncements of the state's highest court on applicable state law.'" 483 F. Supp. 3d at 849 (citation omitted). California has a clear law barring recovery in tort for economic losses suffered as a result of a defective product unless the plaintiff also alleges personal injury, damage to other property, or affirmative misrepresentations. *Robinson*, 34 Cal. 4th at 988-91. The Court agrees with the majority position on this point.

In this case, Plaintiff's asserts fraud based on omission and claims that he suffered an economic loss. Despite his allegations that the alleged defect creates a safety risk, Plaintiff does not actually allege personal injury or damage to other property. Plaintiff is "frustrated because the product he bought is not working properly," but he has suffered only economic losses, which means the economic loss rule bars his fraudulent concealment claim. *See Robinson*, 34 Cal. 4th at 988. The Court thus **DISMISSES** Plaintiff's fraudulent concealment claim with leave to amend. To the extent Plaintiff can truthfully do so, to be viable any amended claim must allege personal injury or damage to other property, or identify specific affirmative misrepresentations.

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss with leave to amend. Any amended complaint must be filed within 21 days of this order. This is the last opportunity Plaintiff Ma will be given to state a viable claim. If he again fails to do so, the Court will dismiss his claims with prejudice. It is inefficient and a poor use of Court and party resources for Plaintiff to repeatedly reference facts not actually pled in the complaint, resulting in prolonged pleading litigation. Plaintiff must plead his best case now, and the Court will disregard any further representations in any future opposition about what else he could plead if given the opportunity.

**IT IS SO ORDERED.**

Dated: 3/28/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge