Richard D. McCune (SBN 132124)
rdm@mccunewright.com
David C. Wright (SBN 177468)
dcw@mccunewright.com
Steven A. Haskins (SBN 238865)
sah@mccunewright.com
Mark I. Richards (SBN 321252)
mir@mccunewright.com
**MCCUNE WRIGHT AREVALO, LLP**
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Counsel for Plaintiffs and the Putative Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZACHERY WILLIAMS, MICHAEL MA, and JOHN DITEMAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TESLA, INC. and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.:  4:20-cv-08208-HSG <br><br> **THIRD AMENDED CLASS ACTION COMPLAINT** <br><br> 1. Violation of the California Consumer Legal Remedies Act, (Cal. Civ, Code § 1750, *et seq.*) <br> 2. Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) <br> 3. Violation of California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*) <br> 4. Violation of Oregon Unlawful Trade Practices Act (Or. Rev. Stat. §§ 646.605, *et seq.*) <br> 5. Revocation of Acceptance (Or. Rev. Stat. § 72.6080) <br> 6. Concealment by Fraud (Under Oregon Law) <br> 7. Unjust Enrichment (Under Oregon Law) <br><br> **DEMAND FOR JURY TRIAL** <br><br> Judge Assigned: Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

*Page*

I    INTRODUCTION ................................................................................................................. 1

II    JURISDICTION AND VENUE ........................................................................................ 2

III    INTRADISTRICT ASSIGNMENT................................................................................... 2

IV    PARTIES ............................................................................................................................. 3

V    GENERAL ALLEGATIONS ............................................................................................ 3

    A.    Tesla Online Ordering Process & Opportunity to Disclose Defects................................... 3

    B.    The Class Vehicles Suffer from a Dangerous Defect that Poses Danger to the Public ...... 4

        1.    China's Safety Recall of the Class Vehicles................................................. 8

        2.    Tesla's Misleading Public Statements Regarding the Suspension Defect.............. 9

    C.    Tesla's Knowledge of the Suspension Defect .................................................................. 11

        1.    Technical Service Bulletins ........................................................................ 12

        2.    NHTSA Complaints Establish the Persistence of the Defect Throughout the Class Period ......................................................................................... 17

    D.    Tesla's Active Concealment of the Suspension Defect ................................................... 18

VI    PLAINTIFF-SPECIFIC ALLEGATIONS ..................................................................... 19

    A.    Plaintiff Zachery Williams................................................................................................ 19

    B.    Plaintiff Michael Ma ........................................................................................................ 21

    C.    Plaintiff John Diteman ..................................................................................................... 22

VII    TOLLING OF STATUTES OF LIMITATIONS ............................................................ 25

VIII    CLASS ALLEGATIONS ................................................................................................. 25

IX    CAUSES OF ACTION ..................................................................................................... 28

    A.    Claims Brought on Behalf of the California Class ........................................................... 28

        COUNT I: VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")...................................................................................................... 28

        COUNT II: VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ............................................................................................ 30

i

COUNT III: VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW . 31

B.      Claims Brought on Behalf of the Oregon Class................................................ 33

COUNT IV: VIOLATION OF THE OREGON UNLAWFUL TRADE

PRACTICES ACT ................................................................................ 33

COUNT V: FRAUD BY CONCEALMENT ...................................................... 34

COUNT VI: UNJUST ENRICHMENT ............................................................. 36

X       PRAYER FOR RELIEF ............................................................................................. 37

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

## CLASS ACTION COMPLAINT

Plaintiffs ZACHERY WILLIAMS, MICHAEL MA, and JOHN DITEMAN ("Plaintiffs"), on behalf of themselves, other similarly situated individuals, and the general public complains of and alleges the following causes of action against Defendant TESLA, INC. ("Tesla") a Delaware Corporation; and DOES 1 through 10, inclusive, as follows:

### I       INTRODUCTION

1.     This Complaint seeks damages against Tesla for unfair and deceptive acts and practices pertaining to its design and manufacture of all Tesla Model S and Model X vehicles with a production date between September 17, 2013, and October 15, 2018 (the "Class Vehicles").

2.     The Class Vehicles suffer from one or more latent defects in their suspension systems that cause the front and rear suspension control arm assembly components to prematurely loosen, wear, crack, and/or break ("the Suspension Defect").

3.     As demonstrated herein, the Suspension Defect unreasonably increases the risk of crash and threatens the health and safety of the drivers and passengers of the Class Vehicles. Moreover, the Suspension Defect directly affects Plaintiffs' use, enjoyment, safety, and value of the Class Vehicles. Numerous owners and lessees of the Class Vehicles have experienced the Suspension Defect already, and Tesla is gambling with the lives and safety of hundreds of thousands of additional drivers and passengers whose vehicles' suspension parts are at an imminent risk of failure.

4.     For years, Tesla actively concealed the information regarding the Suspension Defect from its customers and regulators, withholding its knowledge because once known, the Suspension Defect would diminish the Class Vehicles' intrinsic and resale value and cause owners to demand immediate and costly repairs.

5.     On information and belief, Tesla has not only failed to disclose the existence of the Suspension Defect to Plaintiffs and the Class, but it has taken active measures to conceal its knowledge by misrepresenting the cause of the suspension components' failure. When consumers present their vehicles to Tesla's service centers to repair failed suspension components, Tesla routinely blames the failed parts on "driver abuse" or "normal wear and tear." Tesla has continued this practice despite

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

acknowledging that the Class Vehicles' suspension parts are prone to premature failure, a problem Plaintiffs allege is caused by an inherent defect.

6.     Tesla has acknowledged this defect through its recent safety recall of Model S and Model X vehicles in China, which were produced at same manufacturing facility in the United States as are the Model S and Model X vehicles sold in the United States, before being exported for sale in China.

7.     As a direct and proximate result of Tesla's unlawful and fraudulent concealment of the Suspension Defect, Plaintiffs and the Class members have suffered significant economic harm. Moreover, because Tesla has refused to acknowledge and disclose the Suspension Defect to its customers, many Class Vehicle owners are at a continued unreasonable risk of suffering serious bodily injury or death.

8.     For the forgoing reasons, Plaintiffs, on behalf of themselves and the putative Class, bring this class action against Tesla for monetary damages and equitable relief.

## II     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Tesla.

10.     This Court has personal jurisdiction over Defendant Tesla because its corporate headquarters and primary manufacturing facility are located in California, it conducts substantial business in this District, and because a substantial part of the acts and omissions complained of occurred in this District.

11.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 (a) and (b) because a substantial part of the events, acts and omissions giving rise to these claims occurred in the Northern District of California.

## III     INTRADISTRICT ASSIGNMENT

12.     Pursuant to Local Rule 3-5(b) and (d), assignment to the Oakland Division is proper, because a substantial part of the events or omissions giving rise to the claims occurred in this division.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

1

2    **IV      PARTIES**

3        13.     Plaintiff Zachery Williams ("Plaintiff Williams") is a citizen and resident of Alameda,

4    California. On or about August 20, 2019, Plaintiff Williams purchased a pre-owned 2016 Tesla Model S

5    directly from Tesla online. On August 31, 2019, Plaintiff Williams took delivery of the vehicle. At the

6    time of delivery, the vehicle had 54,492 miles on the odometer and was covered by Tesla's 2-

7    year/100,000 mile Used Vehicle Limited Warranty.

8        14.     Plaintiff Michael Ma ("Plaintiff Ma") is a citizen and resident of Los Altos, California.

9    On or around September 6, 2014, Plaintiff Ma purchased a new 2014 Tesla Model S directly from Tesla

10   online. On or about September 9, 2014, Plaintiff Ma took delivery of the vehicle. At the time of

11   delivery, the vehicle had approximately 50 miles on the odometer and was covered by Tesla's 4-

12   year/80,000-mile New Vehicle Limited Warranty.

13       15.     Plaintiff John Diteman ("Plaintiff Diteman") is a citizen and resident of Sherwood,

14   Oregon. On or around July 21, 2012, Plaintiff Diteman ordered a new 2013 Tesla Model S directly from

15   Tesla online. On or around February 19, 2013, Plaintiff Diteman purchased and took possession of a

16   new Tesla Model S in Portland, Oregon. At the time of delivery, the vehicle had nominal miles on the

17   odometer and was covered by Tesla's 4-year/80,000-mile New Vehicle Limited Warranty.

18       16.     Defendant Tesla, Inc., is a Delaware corporation with its headquarters located at 3500

19   Deer Creek Road, Palo Alto, California, 94304.

20   **V      GENERAL ALLEGATIONS**

21   **A.    Tesla Online Ordering Process & Opportunity to Disclose Defects**

22       17.     Unlike most automobile manufacturers who sell their vehicles through retail dealerships,

23   Tesla maintains close and direct line of communication with purchasers (including Plaintiffs) from the

24   time of ordering their vehicles, through the delivery process, and through the entire course of the

25   ownership of their vehicles. Tesla's direct to consumer business model is aimed at eliminating the

26   haggling and uncertainty that many consumers dread about the car buying process. Indeed, Tesla has

27   capitalized on its understanding that car buyers greatly value an ability to receive real time disclosures

28   regarding the benefits and drawbacks of a vehicle from the most reliable source of that information—the

     manufacturer.

     3

18.     Tesla customers who want to buy or lease a new or used vehicle can start that process by placing an order online through their desktop or mobile version of Tesla's website—Tesla.com. Customers can also place an order at a Tesla-owned store, but still must access the same online ordering process to make their purchase (for example, an internet-connected kiosk in the store). To place an order on Tesla's website, customers must select their vehicle (in the case of a used vehicle) or configure the vehicle by selecting various options for their vehicle (in the case of a new vehicle), enter payment details and other information, and click a button to place their order. After a customer completes the order process, they receive various documents in their Tesla Account (previously called the MyTesla account). The Tesla Account includes various materials and resources for Tesla owners, including vehicle guides and updates regarding customers' purchases and vehicles.

19.     Unlike the traditional car buying experience, Tesla customers typically do not take delivery of their vehicles immediately, but instead wait a period of days or weeks (sometimes months) while Tesla manufactures, transports, and/or otherwise prepares their vehicles for delivery. Between the initial order and delivery, customers must decide how to pay the balance due on their vehicles. Then after a vehicle is paid for and ready for delivery, purchasers have two options for retrieval: Pick the vehicle up from a Tesla owned showroom, or have Tesla deliver the vehicle directly to them on a flatbed truck. In both situations, prior to taking final delivery, a Tesla employee will perform a final walk-through with the customer to ensure that he or she understands the features and characteristics of the vehicle.

20.     Thus, unlike any other automobile manufacturer in history, Tesla has uniquely positioned itself to disclose material defects to consumers, if it so chooses.

**B.     The Class Vehicles Suffer from a Dangerous Defect that Poses Danger to the Public**

21.     The Class Vehicles suffer from a dangerous Suspension Defect that can manifest without warning and cause the sudden and unexpected loss of steering control.

22.     Plaintiffs are informed and believe, and thereon allege, that each of the Class Vehicles was defective at the time of its manufacture, design, development, production, assembly, building, testing, and selling. Each of the Class Vehicles likewise failed to meet the reasonable safety expectations of the class of persons of which Plaintiffs are members. That is because when the Suspension Defect

4

manifests, the rear or front control arms can separate from the steering knuckle and cause excessive negative camber[1] in the suspension. In less technical terms: The Suspension Defect causes the parts that connect the wheels to the Class Vehicles to detach, causing the affected wheel to fold inwards. In severe cases, some putative Class members have reported that the Suspension Defect causes the affected wheel of their vehicles to completely detach. The aforementioned defect creates substantial dangers to Plaintiffs, the putative Class, and the public in general that would not be recognized by the ordinary user, and Tesla has failed to give adequate warnings of these dangers.

23.     The components making up the front and rear suspension control arm assemblies in the Model Year 2012-2018 Model S vehicles are identical and in the Model Year 2016-2018 Model X vehicles are identical. Therefore, the Suspension Defect equally affects all of the Class Vehicles.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[1] "Camber" is the angle of the vehicle's wheel, measured in degrees, when viewed from the front of the vehicle. If the top of the wheel is leaning out from the center of the car, the camber is positive; if it leans in, the camber is negative.

5





| 2012-2021 Tesla Model S Front Suspension Control Arm Assembly | | |
|---|---|---|
| #Part | Name | Part[2] |
| 1 | FR UPR CTRL ARM, LEFT HAND, DUAL MOTOR | 1043965-00-B |
| 1 | FR UPR CTRL ARM, RH, DUAL MOTOR | 1043966-00-B |
| 6 | FORE LINK ASSEMBLY, LEFT HAND | 1420341-00-B |
| 6 | FORE LINK ASSEMBLY, RIGHT HAND | 1420346-00-B |
| 6 | FR SUSP FORE LINK ASSY RH | 6006664-00-C |
| 6 | FR SUSP FORE LINK ASSY LEFT HAND | 6007998-00-C |
| 11 | FR SUSP AFT LINK ASSY | 1027351-00-C |

//

//

---

[2] Plaintiffs allege that Tesla substituted various revisions of these part numbers (as indicated by the trailing letter of the part number) after the production of Plaintiffs' vehicles. Discovery is needed to ascertain the timing and nature of these revisions.

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22   //
23   //
24   //
25   //
26   //
27   //
28



| 2012-2021 Tesla Model S Rear Suspension Control Arm Assembly | | |
|---|---|---|
| #Part | Name | Part |
| 1 | RR SUSP LCA ASSY | 1021416-00-D[3] |
| 6 | RR SUSP INTEGRAL LINK ASSY PERF PLUS | 1021422-00-B |
| 6 | RR SUSP INTEGRAL LINK ASSY - S3, S2 | 6006895-00-A |
| 8 | RR SUSP TOE LINK ASSY | 1021420-00-B |
| 8 | REAR TOE LINK, X-AXIS | 1043964-00-C |
| 8 | RR SUSP TOE LINK ASSY - S3, S2 | 1027421-00-E |
| 16 | RR UPPER LINK ASSY | 1027421-00-E |
| 16 | REAR UPPER LINK SUSPENSION ASSEMBLY - DUAL MOTOR | 1027426-00-C |

[3] *See* fn. 2.

7

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG



| 2012-2021 Tesla Model S Front Knuckle | | |
|---|---|---|
| #Part | Name | Part[4] |
| 1 | FRONT LEFT SUSPENSION KNUCKLE ASSSEMBLY - DUAL MOTOR | 1030605-00-D |
| 1 | FRONT RIGHT SUSPENSION KNUCKLE ASSSEMBLY - DUAL MOTOR | 1030606-00-D |

24.     On October 22, 2020, the China State Administration for Market Regulation ("SAMR") announced that due to the Suspension Defect, Tesla would recall approximately 40,000 Class Vehicles exported to China and produced at Tesla's plant in Fremont, California, between September 13, 2013 and October 15, 2018.

1.     **China's Safety Recall of the Class Vehicles**

25.     In a press release, SAMR detailed its findings from the agency's investigation of the Suspension Defect, stating inter alia:

---

[4] *See* fn.2.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

When some of vehicles within the scope of the recall are subjected to a large external impact, the ball studs of the rear connecting rod of the front suspension will have initial cracks. The cracks may extend and cause the ball studs to break when the vehicle continues to be used. In extreme cases, the ball-end cone seat may come out of the steering knuckle, affecting the control of the vehicle, increasing the risk of accidents, and posing safety risks.

. . .

When some vehicles within the scope of this recall are subjected to a large external impact, the upper connecting rod of the rear suspension may be deformed. When the vehicle is continued to be used, the component will be further weakened. In extreme cases, it may break and affect the control of the vehicle. Increase the risk of accidents, and there are hidden safety hazards.

(Ex. 1, China SAMR Statement on Tesla Suspension Recall.)

26.     In the United States, Tesla took a different stance, blaming the Suspension Defect on "driver abuse." (*See* Ex. 2, Tesla's Letter to NHTSA re: China Recall.) Writing to NHTSA, Tesla's corporate counsel contended that "driver usage and expectation for damageability is uniquely severe in the China market. If the customer inputs an abuse load (*e.g.*, curb impact, severe pothole strike, etc.), then the parts may be damaged, leading either to immediate failure or delayed failure from the compounding effects of the initial abuse and subsequent load input." (*See id.*)

27.     Tesla's willingness to blame drivers for the Suspension Defect is not surprising, however, given that, based on information and belief, Tesla has been instructing its service center technicians to conclude that snapped suspension arms are indicative of driver abuse, not a defect.

### 2.     Tesla's Misleading Public Statements Regarding the Suspension Defect

28.     Tesla has actively concealed the Suspension Defect from the public through misleading public statements. Tesla and its executives have gone to great lengths to convince the general public that the Class Vehicles are safe and are not plagued by the Suspension Defect.

29.     In 2012, Tesla released a teaser brochure for its upcoming Model S line of vehicles.[5]  In the brochure, Tesla promised that the Model S would deliver "structure, reimagined," promoting the

---

[5] https://www.auto-brochures.com/makes/tesla/Model%20S/Tesla_US%20ModelS-v2.pdf (last visited April 18, 2022).

9

premise that the "elegant structure [was] strong, rigid, and lightweight." It also stated that because of the vehicle's "body stiffness," the vehicle would be "surefooted" and solid."

30.     Tesla also released a 2012 Model S "Owner Safety Information" brochure, offering various information about the automobile's safety-related characteristics.[6] The brochure covers topics as diverse as adjusting the driver's seat, seat belts, child-seats, braking systems, and replacing the tires. The brochure did not, however, discuss any safety issues related to the Model S suspension system.

31.     In 2014, Tesla released a full-color brochure describing the characteristics of its Model S line of vehicles.[7] With regard to Model S performance, Tesla claimed that "a rigid body structure, nearly 50/50 weight distribution, and a remarkably low center of gravity" made for a vehicle with the "responsiveness and agility expected from the world's best sports cars." Tesla also singled out the Model S suspension system for mention, noting that it was "developed for the unique architecture of the Model S." Tesla claimed that the Class Vehicles' suspension system "works in harmony with the rigid and light Tesla platform to provide precision handling and optimum comfort." It further claimed that "the lightweight front suspension optimizes wheel control" and the "rear multi-link suspension is designed to seamlessly integrate with the powertrain." By this time, Tesla was bragging that "after hundreds of iterations affecting every detail of the suspension, our vehicle dynamics team was able to achieve the rare outcome of simultaneously improving performance, comfort and efficiency."

32.     In a June 9, 2016 blog post, Tesla argued that a particular customer's complaint of suspension failure—one that received widespread media attention—was "highly unusual" and that the failure had resulted from "abnormal rust." (*See* Ex. 3, Tesla Blog Post, dated June 9, 2016.) But several months before, Tesla had also already acknowledged in a 2015 Technical Service Bulletin (*discussed infra*) that the front and lower rear control arm assemblies on certain 2013 and 2014 Model S vehicles might crack and instructed its service centers to replace the failed components with "updated parts."

33.     Of course, Tesla's conflicting positions on the Suspension Defect are financially motivated. With its blog post, Tesla was attempting to fight a public relations battle to keep consumers

---

[6] https://ownersmanuals2.com/tesla/model-s-2012-owner-safety-information-31016 (last visited June 30, 2021).

[7] https://www.auto-brochures.com/makes/tesla/Model%20S/Tesla_US%20ModelS_2014.pdf (last visited June 30, 2021).

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

and the public in the dark about the Suspension Defect, but through its 2015 Technical Service Bulletin, Tesla had also attempted to remedy numerous customers complaints concerning the Suspension Defect. But Tesla cannot have its cake and eat it too.

34.     Tesla's misleading statements and continuous denial of the Suspension Defect pose a great danger to the public, especially when considering its sphere of public influence. Over the last decade, Tesla has gained a cultlike public following. When Tesla has a message to convey, it has the ability and platform to communicate it directly to the public at large. As an example, the Twitter account of Elon Musk, Tesla's CEO, has amassed 41 million followers. By comparison, Jim Fairly, the CEO of Ford Motor Company—the sixth largest auto manufacturer in the world by sales volume—currently has 5,559 followers on Twitter. In part, Tesla's fandom has resulted from its branding as a technology company rather than a car manufacturer. But despite its savvy branding tactic, the reality remains that Tesla *is* a car company. It puts thousands of vehicles on the road each year, all of which are regulated by motor vehicle safety standards and regulations. Those laws expressly require Tesla to disclose known safety defects to regulators and the public. By actively concealing the Suspension Defect, Tesla has knowingly placed public safety at risk.

C.     **Tesla's Knowledge of the Suspension Defect**

35.     At the time Plaintiffs and the Class members purchased their Class Vehicles, Tesla had significant and longstanding knowledge of the Suspension Defect through records of customer complaints, dealer repair records, records from NHTSA, warranty and post-warranty claims, internal pre-sale durability testing, and other various sources. Indeed, unlike traditional car manufacturers, Tesla sells its vehicles directly to consumers rather than through a network of third-party authorized dealers. Thus, more than any other automotive manufacturer, Tesla can, and does, vigorously monitor and control data reflecting the replacement rate of parts on its vehicles, customer complaints, and warranty and post-warranty claims.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

36.     While some of these sources of information are internal records within Tesla's exclusive control, a reasonable inference can be drawn from publicly available facts that Tesla knew about the Suspension Defect at the time of selling the Class Vehicles.[8]

37.     Tesla has issued at least three separate Technical Service Bulletins addressing the Suspension Defect, but each TSB fails to address the full scope of the vehicles affected by problems and altogether ignores the safety implications of the Suspension Defect.

**1.      Technical Service Bulletins**

38.     On Tesla December 10, 2013, Tesla issued TSB-13-31-003 for the 2012-2013 Model S vehicles, stating:

> The front lower control arm ball joints might develop greater free play than is expected. This can result in a clicking or clunking sound from the front suspension when driving over large bumps. ***If left uncorrected, the ball joints could be subject to accelerated wear***. Over time, the clicking or clunking noises will become louder as the ball joint wear increases, leading to ***required premature replacement of components***.

(*See* Ex. 4, TSB-13-31-003 (emphasis added).)

39.     On March 16, 2015, Tesla issued a revised version of TSB-13-31-003 acknowledging the premature wearing and loosening of suspension components in the 2012-2013 Model S. As part of the revised TSB, Tesla also advised its service technicians to use suspension components with new part numbers when repairing the problem.  Moreover, the updated TSB acknowledged that all Model S vehicles built before November 10, 2013 are prone to experience the identified front suspension defect.

40.     About two years later, Tesla issued TSB-17-31-001 for the 2016 Model S and Model X stating, that "[s]ome Model S and Model X vehicles may have been manufactured with front suspension fore links that may not meet Tesla's strength specifications." (*See* Ex. 5 TSB-17-31-001.) Tesla then

---

[8] Tesla, unlike traditional car manufactures, sells its vehicles directly to consumers rather than through a network of third-party authorized dealers. Thus, arguably more than any other auto manufacturer, Tesla vigorously monitors and controls the data reflecting the rate of replacement of parts of its vehicles, customer complaints, and warranty claims. Tesla has in fact bragged about its level and knowledge over such information, stating: "[s]ince we own all of our service centers, . . . we are aware of every part that gets replaced." (*See* Ex. 3.)

12

1  downplayed the safety implications of this finding, explaining only that "[i]n the event of link failure,

2  the driver can still maintain control of the vehicle but the tire may contact the wheel arch liner." (*See id.*)

3       41.    On January 3, 2019, Tesla issued TSB-19-31-001 for the 2013 and 2014 Model S, stating

4  that "[o]n certain Model S vehicles, lower rear control arm might crack, causing excessive negative

5  camber of the rear suspension." (*See* Ex. 6, TSB-19-31-001.) TSB-19-31-001 instructs Tesla's service

6  advisers to repair the affected vehicles by replacing the failed control arm(s) with new control arms

7  bearing the associated part number 1027459-99-A. (*See id.*)

8       42.    On information and belief, Tesla issued each of these TSBs in a piecemeal fashion to

9  avoid an all-out recall of the Class Vehicles. A recall would have been particularly damaging to Tesla's

10  reputation during the alleged Class Period, as Tesla was attempting an aggressive growth strategy to

11  support its stock price and get ahead of potential entrants in the luxury electric vehicle market.

12       43.    On further information and belief, Tesla has silently redesigned and strengthened the

13  suspension components subject to failure as a result of the Suspension Defect but has failed to inform

14  Plaintiffs and the Class of these improvements, much less install them on previously-sold Class

15  Vehicles. Moreover, even if Tesla has the necessary parts to correct the Suspension Defect, it continues

16  to conceal such information from prospective purchasers of its vehicles and existing Class Vehicle

17  owners. Indeed, this is evident from Plaintiffs' experiences.[9]

18       44.    While the earliest of these TSBs references 2012-2013 Tesla vehicles, it also references

19  the same parts constituting the suspension in Ma's 2014 Model S. Tesla's online parts catalog groups

20  Tesla Model S vehicles into three groups: vehicles produced from February 2012 to March 2016;

21  vehicles produced from April 2016 to January 2021; and vehicles produced from February 2021 to the

22  present.  Within each of these groups, Tesla does not differentiate between the various model year

23  vehicles relating to the parts intended for those vehicles.  Currently, in 2021, the part number for the

24

25

26  [9] One reporter reports that Tesla can make "hundreds or even thousands of engineering changes . . . " to

27  its cars on a "weekly" basis. Whatever the effect on the automobiles' operation, regulators are blind to whether any particular defect is manifesting at a rate significant enough to be considered material. Edward Niedermeyer, LUDICROUS: THE UNVARNISHED STORY OF TESLA MOTORS, p. 157.  As a result,

28  Tesla effectively abides by its own law. Facts such as these make it all the more important that Plaintiffs take discovery into Tesla's actions with regard to the Suspension Defect.

13

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

1   "Front Knuckle LH" is 1043052-00-A—a different part number than part number 1013184-00-A.  But

2   when Tesla issued an update of its 2013 TSB in March 2015, it still instructed dealers to replace the

3   "Front Suspension Knuckle Assembly LH" with part number 1013184-00-A.  Because the Tesla Parts

4   Catalog does not differentiate between Model S vehicles from February 20212 to March 2016, it was the

5   same front suspension knuckle that Tesla installed on all Model S vehicles produced as of at least March

6   2016, including Ma's vehicle.

7       45.    The same is true of all the remaining parts of the suspension Tesla installed in Ma's

8   vehicle. In each case, Tesla makes no differentiation between any of the parts used in the Model S

9   suspension for the time period from February 2012-March 2016.



20      46.    Tesla's online parts catalogue confirms that Tesla used the same parts on the Model S at

21  least through 2016 (and perhaps longer). Tesla lists all the following parts as being the same for all

22  2012-2016 Model S vehicles:

23      •   Front Air Spring

24      •   Front Stabilizer Bar and Links

25      •   Front Coil Spring and Damper

26      •   Front Suspension Arms

27      •   Front Knuckle – Hub and Bearing

28      •   Rear Coil Spring and Damper

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

- Rear Stabilizer Bar and Links
- Rear Coil Spring and Damper
- Rear Suspension Arms
- Rear Knuckle – Hub and Bearing
- Module – Air Suspension
- Air Suspension Pressure Lines
- Air Suspension Compressor and Reservoir
- Height Controller and Sensors

47.     All of these parts are listed under Section 31 – "Suspension," the same section referenced by the 2013 TSB, as updated in 2015.

48.     Though on its face the 2013 TSB applies only to 2012-2013 Model S vehicles, there would have been no reason for Tesla to believe that the same suspension defect did not exist in Model S 2014-2015 vehicles. And because Tesla was aware of the Suspension Defect as early as 2013, Tesla's pre-sale design, testing, and research efforts all must have addressed this particular defect. Later events such as the signing of NDAs and the regulatory action by the Chinese government merely demonstrate that whatever Tesla has attempted to do to resolve the defect (if anything) has failed.[10] One online publication, Business Insider, claims that it has viewed documents provided to it demonstrating that Tesla engineers have been tracking "suspension issues in the Model S since at least 2013, and later tracked similar problems in the Model X."[11]

49.     In November 2020, the National Highway Traffic Safety Administration opened a Preliminary Evaluation into 2015-2017 Tesla Model S and 2016-2017 Model X vehicles on the basis of "43 complaints alleging failure of the left or right front suspension fore links in Tesla model year (MY) 2015 through 2017 and MY 2016 through 2017 Model X vehicles." The NHTSA referenced Tesla's

---

[10] As noted previously, Tesla's recall efforts resulting from China's action against it led to the recall of vehicles Tesla built between September 2013 and January 2018.

[11] Linette Lopez, Business Insider, "'Aladdin' star says a defect in his Tesla Model 3 led to his car wreck, and it comes from a problem area the company has known about for years," at https://www.businessinsider.com/aladdin-stars-problem-with-tesla-known-as-whompy-wheels-2019-6 (June 5, 2019, last visited April 18, 2022)

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

2017 TSB when opening the evaluation. Again, Tesla markets these parts as the same for all years from at least 2012 to 2016, meaning that it is likely that the same defect affects Plaintiff's 2014 vehicle in the same manner as other model year vehicles with the same parts. The NHTSA investigation remains open.

50.     In Plaintiff Williams' case, when his Tesla 2016 Model S experienced failure of the lower rear control arm, Tesla's service advisers replaced the failed lower rear control arm on his 2016 Model S vehicle. To repair Plaintiff Williams' Model S vehicle, Tesla used the same lower control arm replacement part called for by TSB-19-31-001. (*See* Ex. 7, Plf. Williams's Tesla Service Invoice.) From this, it would appear that Tesla is aware of the fact that TSB 19-31-001 (issued January 3, 2019) should be expanded to cover later model years including the 2016 Model S, but fails to acknowledge it. Indeed, Tesla's financial incentives to keep this information concealed and limit the scope of the TSB is high. While many, if not all of the 2013 and 2014 Model S vehicles aged out of the stated new vehicle limited warranty period while Tesla concealed the information regarding the Suspension from Tesla owners, many later model years—like Plaintiff Williams' 2016 Model S—are still within their warranty periods.

51.     In Plaintiff Ma's case, Tesla replaced front suspension components on his 2014 Model S "with updated parts to prevent premature failure of the links," but did so only ***after*** he complained of a rattling noise coming from the vehicle's front end and charging him $1,320.12 for the repairs. (*See* Ex. 8, Plf. Ma's Tesla Service Invoice.) This further indicates that Tesla knows that certain suspension parts of the Class Vehicles are prone to premature failure but has simply refused to notify its customers and the public of this information.

52.     In Plaintiff Diteman's case, Tesla replaced the front suspension components on his 2013 Model S with updated components—several bearing identical parts numbers as were used to repair Plaintiff Ma's vehicle—after he complained of a grinding noise coming from is vehicle. (*See* Ex. 9, Plf. Diteman's Tesla Service Invoice.) To have these repairs performed, Plaintiff Diteman paid Tesla $2,858.85 for parts and labor. Plaintiff Diteman's experience further demonstrates how Tesla has continued to be unjustly enriched by its active concealment of the Suspension Defect. On the front end Tesla has saved warranty claim costs by refusing to notify consumers of the Suspension Defect. And on the back end, Tesla has reaped the financial reward from charging its customers to repair the defect.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

**2.      NHTSA Complaints Establish the Persistence of the Defect Throughout the Class Period**

53.      One of the most important sources of field data regarding this issue is the National Highway Traffic Safety Administration's Consumer Complaint Database. This publicly available database contains all motor vehicle-related consumer complaints submitted to NHTSA since January 2000. Consumers submit what is called a "Vehicle Owner Questionnaire," in which they are asked to provide information including the make, model, and model year of the vehicle, the approximate incident date, the mileage at which the incident occurred, whether the incident involved a crash or a fire, whether any persons were injured or killed in the incident, the speed of the vehicle at the time of the incident, and a description of the incident along with a description of the vehicle components the complainant believes were involved in the incident. The majority of consumer complaints are submitted online at www.safercar.gov, where consumers can input this information directly into the database through their computer. They can also submit complaints by telephone through the Auto Safety Hotline, through submitting a paper Vehicle Owner Questionnaire form, and by submitting consumer letters to NHTSA by mail. This information is then entered into NHTSA's ARTEMIS database where it can be searched and reviewed by the general public and vehicle manufacturers alike, by make, model, model year, and component. NHTSA promotes this database as a valuable consumer informational tool.

54.      Class Vehicle owners and lessees have made numerous complaints to NHTSA about the effects of the Suspension Defect occurring while driving their vehicles.

55.      To the present day, NHTSA has received what appear to be 152 first-hand complaints by Tesla owners relating to various aspects of the Suspension Defect in Model S and Model X vehicles (122 complaints relating to the Model S and 30 complaints relating to the Model X, the latter of which only entered widespread distribution in 2016).[12]

//

//

//

---

[12] These complaints exclude complaints made by individuals other than the owners or operators of the Tesla vehicles about which the complaint is being filed.

17

| Tesla Suspension Defect-related Complaints Submitted to NHTSA | | |
|---|---|---|
| Year | Model S | Model X |
| 2012 | 1 | N/A |
| 2013 | 13 | N/A |
| 2014 | 16 | N/A |
| 2015 | 27 | N/A |
| 2016 | 33 | 26 |
| 2017 | 31 | 3 |
| 2018 | 1 | 1 |
| 2019 | 0 | 0 |
| 2020 | 0 | 0 |
| 2021 | 0 | 0 |
| Total | 122 | 30 |

56.     Reproductions of these complaints are attached *verbatim* to this Complaint as Exhibit 10. The number of first-hand owner complaints has nearly disappeared since 2018, suggesting that Tesla has attempted to resolve the Suspension Defect over time, but without disclosure, oversight, or any resolution for those purchasers of early model-year automobiles subject to the defect.

**D.     Tesla's Active Concealment of the Suspension Defect**

57.     Tesla has gone to great lengths to actively conceal its knowledge of the Suspension Defect. Tesla has not performed a recall to correct the Suspension Defect in the United States. Instead, it has issued several Technical Service Bulletins to address customer complaints about the Suspension Defect, including those discussed above. Tesla, however, has attempted to avoid the financial fallout that would result from recalling the Class Vehicles by downplaying the dangerousness of the Suspension Defect and the scope of vehicles affected by it. In reality, these TSBs are truly aimed at addressing a uniform safety defect in front and rear suspension components that equally affects all of the Class Vehicles.

58.     As more of the affected vehicles began demonstrating the failures associated with the Suspension Defect, it became harder for Tesla to hide them. In or around 2016, there were online reports

18

1   that Tesla was requiring its customers to sign non-disclosure agreements in exchange for "goodwill

2   repairs" to correct the failed suspension components of their vehicles.[13] Tesla ultimately ceased this

3   practice under significant pressure from NHTSA. However, on information and belief, Tesla's use of

4   non-disclosure agreements has suppressed the number of publicly available complaints, including

5   NHTSA complaints, concerning the Suspension Defect.

6   **VI   PLAINTIFF-SPECIFIC ALLEGATIONS**

7   **A.   Plaintiff Zachery Williams**

8          59.   On August 23, 2019, Plaintiff Williams purchased his used 2016 Model S by accessing

9   Tesla's website and making an online order. At the time, Plaintiff Williams reviewed specific website

10  pages on Tesla's website, Tesla.com, regarding the qualities and characteristics of the Tesla Model S,

11  including information about the Model S vehicle's construction, features, and capabilities. Despite

12  discussing many of the features regarding the Model S vehicle, nowhere did Tesla reveal to Plaintiff

13  Williams that certain suspension system components on the Model S were prone to abnormal wearing

14  and loosening that would lead to premature catastrophic failure of the suspension system. Nor did Tesla

15  warn Plaintiff Williams of the increased safety risk resulting from the Suspension Defect.

16         60.   On the evening of February 2, 2020, Plaintiff Williams was driving his 2016 Model S

17  (hereinafter "the vehicle") home from work on an interstate highway at approximately 65 miles per

18  hour. During the trip, Plaintiff Williams noticed a wobbling sensation coming from the vehicle that he

19  had not experienced before.

20         61.   Upon arriving at his residence in Alameda, California, Plaintiff Williams slowly backed

21  into a parallel parking spot, and while doing so, he heard a grinding noise emit from the vehicle.

22  Plaintiff Williams inspected the vehicle and discovered that the rear passenger side lower control arm

23  had broken off the steering knuckle and caused the wheel to fold inward.

24

25  ───────────────

26  [13] *See* https://www.nytimes.com/2016/06/11/business/tesla-motors-model-s-suspension.html (last accessed November 20, 2020); *see also* https://dailykanban.com/2016/06/08/tesla-suspension-breakage-not-crime-coverup/ (last accessed July 19, 2021); Niedermeyer, *supra* n.6, p. 155 ("Because Tesla's

27  NDAs prevented both reporting of defects and reporting of the very existence of the company's 'Goodwill Agreements,' it was all but impossible to get a solid read on how many defects Tesla owners

28  may have endured even before factoring in the self-imposed and self-enforced culture of non-disclosure.").

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   62.   At this time, Plaintiff Williams' vehicle had 62,602 miles on its odometer and was

18   covered by Tesla's Used Vehicle Limited Warranty period.

19   63.   On February 3, 2020, Plaintiff Williams had the vehicle towed to Tesla's service center in

20   Berkeley, California for repairs. At Tesla's service center, Plaintiff Williams told one of the service

21   advisors, Matt Brown, that he believed the rear lower control arm resulted from a defect and should be

22   repaired or replaced under warranty.

23   64.   After inspecting the vehicle, the service manager informed Plaintiff Williams that Tesla

24   would not repair the vehicle under its warranty. According to the advisers, this was because Tesla had

25   determined that the damage had not resulted from a defect, but from a pothole or damage caused by the

26   previous owner.

27   65.   Accordingly, Plaintiff Williams had to pay $2,090.00 out-of-pocket to repair the damage

28   the Suspension Defect caused to his vehicle.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

1

**B.      Plaintiff Michael Ma**

2        66.      Plaintiff Ma paid a $2,500 deposit to reserve his new 2014 Tesla Model S, by accessing

3    Tesla's website and making an online order. At the time, Plaintiff Ma reviewed specific website pages

4    on Tesla's website regarding the qualities and characteristics of the Tesla Model S, including

5    information about the Model S vehicle's construction, features, and capabilities. On August 14, 2014,

6    Plaintiff Ma completed the purchase of his vehicle. Despite discussing many of the features regarding

7    the Model S vehicle, Tesla did not reveal to Plaintiff Ma that certain suspension system components on

8    the Model S were prone to abnormal wearing and loosening that would lead to premature catastrophic

9    failure of the suspension system. Nor did Tesla warn Plaintiff Ma of the increased safety risk resulting

10   from the Suspension Defect.

11       67.      In or around August 28, 2014, Plaintiff Ma retrieved his vehicle directly from Tesla's

12   factory in Fremont, California. At that time, Tesla provided Mr. Ma with a tour of its Fremont factory

13   and provided additional instructions regarding the vehicle's features. Despite having ample

14   opportunities, not a single Tesla employee disclosed that the suspension system components on his

15   vehicle were prone to abnormal wearing and loosening that would lead to premature failure of the

16   suspension system.

17       68.      In or around October 2019, Plaintiff Ma began to hear a rattling noise emitting from the

18   front of his 2014 Model S when driving on rough roads at a speed of 25 mph or more.

19       69.      On November 6, 2019, Plaintiff Ma presented the vehicle to Tesla's service center in Palo

20   Alto, California to diagnose and redress the issue. At that time, the vehicle had 58,057 miles on the

21   odometer.

22       70.      At Tesla's service center, one of Tesla's technicians test drove the vehicle and was able

23   to confirm Plaintiff Ma's complaint of the rattling noise. And upon further visual inspection, the

24   technician determined that the "lower aft fore links were shown to not be performing as expected." (*See*

25   Ex. 8, Plf. Ma's Tesla Service Invoice.). To remedy the rattling problem, Tesla removed the failed lower

26   aft links on the vehicle and replaced them with a new front suspension aft link assembly, bearing the

27   part number 1027351-00-C. Plaintiff Ma paid $1,320.12 out-of-pocket for the cost of parts and labor to

28   remove and replace the aft link assembly on his vehicle.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

71.     In addition to the aforementioned repairs, Tesla's service technician also "performed a Tesla service bulletin regarding the front lower fore links being damaged by the strut bolt and removed and replaced both front fore links [with part number 6007998-00-C] and strut bolts with updated parts to prevent premature failure of the links." Tesla, however, did not charge Plaintiff Ma for these repairs but instead covered the costs as a "goodwill" service pursuant to an unidentified TSB.[14]

**C.      Plaintiff John Diteman**

72.     In early 2012, Plaintiff Diteman began searching for a new vehicle—among his chief considerations was the 2012 Tesla Model S. But prior to arriving at a final purchase decision, on July 21, 2012, Plaintiff Diteman visited Tesla's showroom in Portland, Oregon to test drive the Model S and learn more about its benefits and potential drawbacks.

73.     At Tesla's showroom, Plaintiff Diteman spoke with Tesla's sales representatives who provided him with information regarding the vehicle's features and benefits, all of which further enticed his buying interest. At no point did Tesla's sales representatives disclose to Plaintiff Diteman certain suspension system components on his vehicle were prone to abnormal wearing and loosening that would lead to premature failure of the suspension system.

74.     On December 3, 2012, Plaintiff Diteman purchased his 2013 Tesla Model S by accessing Tesla's website and making an online order. At the time, Plaintiff Diteman reviewed specific website pages regarding the qualities and characteristics of the Tesla Model S, including information about the Model S vehicle's construction, features, and capabilities. Despite discussing many of the features regarding the Model S vehicle, nowhere did Tesla reveal or disclose to Plaintiff Diteman certain suspension system components on the 2013 Model S were prone to abnormal wearing and loosening that would lead to premature failure of the suspension system. Nor did Tesla warn Plaintiff Diteman of the increased risk resulting from the Suspension Defect.

75.     On February 19, 2013, Tesla directly delivered the vehicle to Plaintiff Diteman's residence in Sherwood, Oregon. At that time, Tesla's delivery driver provided a walkthrough of the

---

[14] Curiously, Tesla has never notified NHTSA of service bulletin or communication to service centers addressing premature wear in the front suspension aft link assembly in its 2014 Model S vehicles. TSB-13-31-003 is the only Tesla service bulletin to address such issues, but it is limited to the 2012-2013 model year Model S vehicles.

vehicle and provided additional instructions regarding the vehicle's features. But Tesla's delivery driver never disclosed to Plaintiff Diteman that certain suspension system components on his Model S vehicle were prone to abnormal wearing and loosening that would lead to premature failure of the suspension system. Nor did Tesla warn Plaintiff Diteman of the increased safety risk resulting from the Suspension Defect.

76.    In or around June 2020, Plaintiff Diteman began hearing a squealing and grinding noise emitting from the front end of his vehicle during normal operation. At first, these sounds were faint and hardly noticeable, but they became progressively worse over time, leading Plaintiff Diteman to become concerned over the vehicle's safety and reliability.

77.    On April 13, 2021, Diteman presented his vehicle to a Tesla service center in Portland, Oregon, requesting a diagnosis for the squealing and grinding noises he was hearing from the vehicle. Following a vehicle inspection, a Tesla service technician informed Plaintiff Diteman that the vehicle's front suspension links components—namely, the front aft-link assembly and front fore-link assembly— had failed and needed to be replaced. At the same time, the service technician informed Plaintiff Diteman that failure of the said components "just seemed to happen on the first generation models."

78.    As a result of the failed suspension components Plaintiff Diteman paid nearly $3,000 to replace the front suspension linkage components on the vehicle. (*See* Ex. 9, Plf. Diteman's Tesla Service Invoice.) Tesla has not offered to reimburse Plaintiff Diteman for any of these expenses.

**D.    Plaintiffs Have Been Harmed By Tesla's Actions**

79.    In the case of each Plaintiff, Tesla should have disclosed on its website and on its Monroney sticker the nature of the Suspension Defect--that the Class Vehicles' front and rear suspension control arm assembly components tend to loosen, wear, crack, and/or break. This defect increases the risk of driving the Class Vehicles in a manner that also should have been disclosed to each of the Plaintiffs.

80.    The latent defects in the design, manufacture, configuration, and assembly of the Class Vehicles were a substantial factor in causing each of Plaintiffs' vehicles to experience suspension failure.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

81.     Prior to the sale and distribution of the Class Vehicles, Defendants Tesla and DOES 1 through 10, inclusive, knew the Class Vehicles were defective for the reasons described. Further, Defendants, through their officers, directors and managing agents, had prior notice and knowledge from several sources, including, but not limited to, the SAMR findings described previously in this complaint, records of customer complaints, dealer repair records, records from NHTSA, warranty and post-warranty claims, internal pre-sale durability testing that the vehicles were defective and presented a substantial and unreasonable risk of harm to the American motoring public, including each of the Plaintiffs, in that said defects unreasonably subjected occupants to injury. As described above, Tesla knew at least as early as 2013 that the Suspension Defect afflicted the Class Vehicles but withheld that knowledge so it could continue selling automobiles.

82.     Had Plaintiffs been informed of the Suspension Defect in the Class Vehicles, each Plaintiff avers they would not have purchased or leased their Class Vehicles, or they would have paid substantially less for their vehicles.

83.     As a result of the conduct of said Defendants, each Plaintiff incurred property and other pecuniary losses as a result of the actions and inactions herein described.

84.     As a further result of the conduct of said Defendants, each Plaintiff suffered both past and future economic damages as a result of the actions and inactions herein described.

E.      **Allegations Regarding Equitable and Injunctive Relief**

85.     Tesla's misrepresentations to Plaintiffs do not merely require monetary damages to resolve. Because of Tesla's misrepresentations, Plaintiffs (and others) are continuing to drive vehicles that are prone to the Suspension Defect and therefore unsafe for the uses for which Plaintiffs purchased the vehicles. An injunction is necessary to ensure the safety of Tesla's vehicles.

86.     Furthermore, Plaintiffs each purchased Tesla vehicles in large part because they support environmentally sound vehicles, particularly vehicles that are fully electrically-powered. While manufacturers are releasing new electric-powered models on a regular basis, Plaintiffs Williams, Ma, and Diteman would each be interested in considering Tesla vehicles for purchase in the future. As such, Plaintiffs (as well as the general public) have an ongoing interest in ensuring that Tesla advertises its vehicles accurately.

24

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

Case 4:20-cv-08208-HSG   Document 65   Filed 04/18/22   Page 28 of 41


VII     TOLLING OF STATUTES OF LIMITATIONS

87.     Any applicable statute(s) of limitations have been tolled by Tesla's knowledge and active concealment and denial of the facts alleged herein. Plaintiffs and Class members could not have reasonably discovered the true, latent nature of the Suspension Defect until shortly before this class action litigation was commenced.

88.     For instance, Plaintiff Diteman could not have known of any kind of suspension problem with his vehicle until June 2020, when the vehicle started exhibiting squealing and grinding noises during operation. He only became aware of the source of the problem when the Tesla service technician explained that the early Tesla vehicles often had suspension problems.

89.     In addition, even after Plaintiffs and Class members contacted Tesla and sought repairs for the Suspension Defect, Tesla routinely told them that the Class Vehicles were not defective, as set forth above, even though the true reason for the resulting suspension failures resulted from the Suspension Defect.

90.     Tesla was and remains under a continuing duty to disclose to Plaintiffs and the members of the Class the true character, quality, and nature of the Class Vehicles; that they will require costly repairs; pose safety concerns, and; diminish the resale value of the Class Vehicles. As a result of Tesla's active concealment of the Suspension Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

VIII    CLASS ALLEGATIONS

91.     Plaintiffs bring this action on their own behalf, and on behalf of a class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3).

92.     Pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiffs seek to represent the following classes of consumers:

**California Class:**

All persons or entities in the state of California who are current or former owners and/or lessees of a Class Vehicle.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

**Oregon Class**:

> All persons or entities in the state of Oregon who are current or former
> owners and/or lessees of a Class Vehicle.

93.     Together, the California and the Oregon Class shall be collectively referred to herein as the "Class." Excluded from the Class are Tesla, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

94.     **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all Class Members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in Tesla's sole possession and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in states that are the subject of the Class.

95.     **Existence and Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to, whether:

     a)     The Class Vehicles were sold with the Suspension Defect;

     b)     Tesla knew about the Suspension Defect but failed to disclose it and its consequences to Tesla customers;

     c)     Tesla misrepresented the safety of the Class Vehicles based on its knowledge of the Suspension Defect;

     d)     A reasonable consumer would consider the Suspension Defect or its consequences to be material;

     e)     Tesla should be required to disclose the Suspension Defect's existence and its consequences; and

     f)     Tesla's conduct violates the California and Oregon statutes alleged herein.

96.     **Typicality:**  All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased their vehicles with the same Suspension Defect and defective vehicle design and/or suspension component design as other Class members. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Tesla's wrongful conduct. Plaintiffs advance the same claims and legal theories on behalf of themselves and all absent Class members.

97.     **Adequacy:**  Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained counsel who are competent and highly experienced in complex class-action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel are well-suited to fairly and adequately protect the interests of the Class.

98.     **Superiority:**  A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation Tesla's conduct would otherwise necessitate. It would be virtually impossible for Class members on an individual basis to effectively redress the wrongs done to them. Even if Class members could afford such individual litigation, the courts cannot. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, individual Class members can be readily identified and notified based on, *inter alia*, Tesla's vehicle identification numbers, warranty claims, registration records, and database of complaints.

99.     Tesla has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

## IX    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the California Class**

### COUNT I

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")

### (Cal. Civ. Code § 1750, *et seq.*)

**(By Plaintiffs Williams and Ma on Behalf of the California Class)**

100.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

101.    Plaintiffs Williams and Ma (for purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and on behalf of the Members of the California Class.

102.    Tesla is a "person" as that term is defined in California Civil Code § 1761(c).

103.    Plaintiffs and the Class members are "consumers" as that term is defined in California Civil Code § 1761(d).

104.    Tesla engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

- Representing that goods or services have sponsorships, characteristics, uses, benefits, or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

- Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

- Advertising goods and services with the intent not to sell them as advertised.

28

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

105.     Tesla's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

106.     Tesla knew that the Class Vehicles were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use of providing safe and reliable transportation. Tesla nevertheless failed to warn Plaintiffs and the Class members about these inherent dangers of the Suspension Defect, despite having a duty to do so.

107.     Tesla had the duty to Plaintiffs and the Class members to disclose the Suspension Defect and the defective nature of the Class Vehicles because:

        a)     Tesla was in a superior position to know the true state of facts about the Suspension Defect and associated repair costs in the Class Vehicles;

        b)     Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until the defects became manifest;

        c)     Tesla knew that Plaintiffs and the Class members could not reasonably have been expected to learn about or discover the Suspension Defect and its associated repair costs;

        d)     Tesla actively concealed the Suspension Defect, its causes, and resulting effects through deceptive marketing campaigns designed to hide the life-threatening problems from Plaintiffs; and/or

        e)     Tesla made incomplete representations about the safety and reliability of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

108.     In failing to disclose the Suspension Defect and its associated safety risks and repair costs, Tesla has knowingly and intentionally concealed material facts and breached its duty to disclose.

109.     The fact Tesla concealed or did not disclose to Plaintiffs and the Class members is material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known the

29

Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

110.   Plaintiffs Williams and Ma provided Tesla with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) on November 20, 2020 and November 24, 2020, respectively.

111.   Tesla's fraudulent and deceptive business practices proximately caused injuries to Plaintiffs and the other Class members.

112.   Pursuant to Cal. Civ. Code § 1780, Plaintiffs Williams and Ma seek equitable relief, actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

## COUNT II

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code § 17200)

### (By Plaintiffs Williams and Ma on Behalf of the California Class)

113.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

114.   Plaintiffs Williams and Ma bring this claim on behalf of themselves and on behalf of the Members of the California Class.

115.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

116.   Tesla has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and other Class members that the Class Vehicles suffer from the Suspension Defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Tesla should have disclosed this information because it was in a superior position to know the true facts related to the Suspension Defect, and Plaintiffs and Class members could not have been reasonably expected to learn about or discover these true facts.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

117.    The Suspension Defect constitutes a safety issue triggering Tesla's duty to disclose.

118.    By its acts and practices, Tesla has deceived Plaintiffs and is likely to have deceived the public. In failing to disclose the Suspension Defect and suppressing other material facts from Plaintiffs and other Class members, Tesla breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class members. Tesla's omissions and acts of concealment pertained to information material to Plaintiffs and other Class members, as it would have been to all reasonable consumers.

119.    The injuries Plaintiffs and the Class members suffered greatly outweigh any potential countervailing benefit to consumers or to competition, and they are not injuries that Plaintiffs and the Class members could or should have reasonably avoided.

120.    Tesla's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

121.    Plaintiffs seek to enjoin Tesla from further unlawful, unfair, and/or fraudulent acts or practices, to obtain restitutionary disgorgement of all monies and revenues Tesla has generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

122.    Plaintiffs and the Class members are entitled to seek equitable relief because monetary damages are an inadequate remedy. Indeed, as described herein, the Suspension Defect poses a threat to the health and safety of drivers of the Class Vehicles and Tesla has failed to notify its customers of these dangers. On information and belief, the Suspension Defect is latent in thousands of Class Vehicles. As such, monetary damages are insufficient to remedy the health and safety risks that the Suspension Defect poses to drivers of the Class Vehicles and the general public.

## COUNT III

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

### (By Plaintiffs Williams and Ma on Behalf of the California Class)

123.    Plaintiffs Williams, Ma, and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

31

124.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

125.   California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

126.   Tesla caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Tesla should have known to be untrue and misleading to consumers, including Plaintiffs and other Class members.

127.   Tesla has violated section 17500 because its misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles were material and likely to deceive a reasonable consumer.

128.   Plaintiffs and the other Class members have suffered injuries in fact, including the loss of money or property, resulting from Tesla's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class members relied on Tesla's misrepresentations and/or omissions with respect to the Class Vehicles' safety and reliability. Tesla's representations were untrue because it distributed the Class Vehicles with the Suspension Defect. Had Plaintiffs and the other Class members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiffs and the other Class members did not receive the benefit of their bargain.

129.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Tesla's business. Tesla's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

130.     Plaintiffs, on behalf of themselves, the Class members, and the public, request that the Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices, and restore to Plaintiffs and the other Class members any money Tesla acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**B.     Claims Brought on Behalf of the Oregon Class**

**COUNT IV**

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**

**(Or. Rev. Stat. §§ 646.605, *et seq.*)**

**(By Plaintiff John Diteman on Behalf of the Oregon Class)**

131.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

132.     Plaintiff Diteman (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the Members of the Oregon Class.

133.     The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that . . . goods . . . have . . . characteristics . . .  uses, benefits, . . . or qualities that they do not have; (g) Represent[ing] that . . . goods . . . are of a particular standard [or] quality . . . if they are of another; and (i) Advertis[ing] . . . goods or services with intent not to provide them as advertised." Or. Rev. Stat. § 646.608(1).

134.     Tesla is a person within the meaning of Or. Rev. Stat. § 646.605(4).

135.     The Class Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

136.     In the course of Tesla's business, it willfully failed to disclose and actively concealed the Suspension Defect. Accordingly, Tesla engaged in unlawful trade practices, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; and advertising Class

33

Vehicles with the intent not to sell them as advertised. Tesla knew or should have known that its conduct violated the OUTPA.

137.   As a result of these unlawful trade practices, Plaintiff and the Oregon Class have suffered ascertainable loss.

138.   Tesla engaged in a deceptive trade practice when it failed to disclose material information concerning the Class Vehicles. Tesla deliberately withheld information about the Suspension Defect in order to ensure that consumers would purchase the Class Vehicles.

139.   The Suspension Defect was material to Plaintiff and the Oregon Class. Had Plaintiff and the Oregon Class known that the Class Vehicles had these serious safety defects, they would not have purchased the Class Vehicles.

140.   Plaintiff and the Oregon Class suffered ascertainable loss caused by Tesla's failure to disclose material information. Plaintiff and the Oregon Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of the Class Vehicles has diminished now that the safety issues have come to light, and Plaintiff and the Oregon Class owns vehicles that are not safe.

141.   Plaintiff are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1). Plaintiff and the Oregon Class are also entitled to punitive damages because Tesla engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

142.   Pursuant to Or. Rev. Stat. § 646.638(2), Plaintiff will mail a copy of the complaint to Oregon's attorney general.

**COUNT V**

**FRAUD BY CONCEALMENT**

**(Based on Oregon Law)**

**(By Plaintiff John Diteman on Behalf of the Oregon Class)**

143.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

144.   Plaintiff Diteman brings this claim on behalf of himself and on behalf of the Members of the Oregon Class.

145.     As set forth above, Tesla concealed and/or suppressed material facts concerning the safety of their vehicles.

146.     Tesla had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Tesla's highest corporate priorities. Once Tesla made representations to the public about safety, it was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

147.     In addition, Tesla had a duty to disclose these omitted material facts because they were known and/or accessible only to Tesla, and Tesla knew those facts were not known to or reasonably discoverable by Plaintiff and the Oregon Class. These omitted facts were material because they directly impact the safety of the Class Vehicles.

148.     Whether or not a vehicle accelerates only at the driver's command, and whether a vehicle will stop or not upon application of the brake by the driver, are material safety concerns. Tesla possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

149.     Tesla actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Oregon Class to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

150.     Tesla still has not made full and adequate disclosure and continue to defraud Plaintiff and the Oregon Class.

151.     Plaintiff and the Oregon Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff's and the Class' actions were justified. Tesla was in exclusive control of the material facts and such facts were not known to the public or the Oregon Class.

152.     As a result of the concealment and/or suppression of the facts, Plaintiff and the Oregon Class sustained damage. For those of the Oregon Class, including Plaintiff, who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiff and the Oregon

Class paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those of the Oregon Class, including Plaintiff, desiring to rescind the purchase, then those persons are entitled to restitution and consequential damages.

153.    Tesla's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Oregon Class' rights and well-being to enrich Tesla. Tesla's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VI**

**UNJUST ENRICHMENT**

**(Based On Oregon Law)**

**(By Plaintiff John Diteman On Behalf of the Oregon Class)**

154.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

155.    Plaintiff Diteman brings this claim on behalf of himself and on behalf of the members of the Oregon Class.

156.    Tesla had knowledge of the Suspension Defect, which it failed to disclose to Plaintiff and the Oregon Class.

157.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Tesla charged a higher price for the Class Vehicles than their true value and thus Tesla obtained monies which rightfully belong to Plaintiff and the Oregon Class.

158.    Tesla appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiff and the Oregon Class, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Tesla to retain these wrongfully obtained profits.

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG

159.    Plaintiff and the Oregon Class, therefore, are entitled to restitution and seek an order establishing Tesla as constructive trustees of the profits unjustly obtained, plus interest.

## X       PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Class similarly situated, respectfully request that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and issue an order certifying one or more Classes as defined above;

B.     appoint Plaintiffs as the representatives of the Class(es) and their counsel as Class counsel;

C.     award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class members are entitled;

D.     award pre-judgment and post-judgment interest on such monetary relief;

E.     grant appropriate injunctive and/or declaratory relief and public injunctive relief, including, without limitation, an order that requires Tesla to repair, recall, and/or replace the defective suspension components of the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence of the Suspension Defect;

F.     award reasonable attorneys' fees and costs; and

G.     grant such further relief that this Court deems appropriate.


Dated:  April 18, 2022                              Respectfully submitted,

MCCUNE WRIGHT AREVALO, LLP

By:   /s/ David C. Wright
                                                    David C. Wright

                                                    Richard D. McCune, State Bar No. 132124
                                                    rdm@mccunewright.com
                                                    David C. Wright, State Bar No. 177468
                                                    dcw@mccunewright.com

37

Steven A. Haskins, State Bar No. 238865
sah@mccunewright.com
Mark I. Richards, State Bar No. 321252
mir@mccunewright.com
**MCCUNE WRIGHT AREVALO LLP**
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Counsel for Plaintiffs and the Putative Class*

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  April 18, 2022                           Respectfully submitted,

                                                 MCCUNE WRIGHT AREVALO, LLP

                                          By:   /s/ *David C. Wright*
                                                 David C. Wright

                                                 *Counsel for Plaintiffs and the Putative Class*

Third Amended Class Action Complaint
Case No.: 4:20-cv-08208-HSG